Elissa D. Miller (CA Bar No. 120029)
  elissa.miller@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Global One Financial, a division
of Synovus Bank

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:23-bk-11082-VK |
| Philip M. Lawrence, II, | Chapter 7 |
| Debtor. | **OPPOSITION OF GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK TO TRUSTEE'S SECOND MOTION FOR ORDER EXTENDING TIME TO FILE AVOIDANCE ACTIONS UNDER 11 U.S.C. §546 AND REQUEST FOR DETERMINATION THAT FIRST MOTION DID NOT APPLY TO GLOBAL ONE; DECLARATIONS OF JONATHAN T. EDWARDS AND ELISSA D. MILLER IN SUPPORT THEREOF** |
| | Date:  October 22, 2025<br>Time:  1:30 p.m.<br>Place:  21041 Burbank Boulevard<br>Woodland Hills, CA 91367-6603<br>Zoom.gov |

**TO THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY**

**JUDGE AND TO ALL PARTIES IN INTEREST:**

Global One Financial, a division of Synovus Bank ("Global One"), hereby opposes

the "*Trustee's Second Motion For Order Extending Time To File Avoidance Actions*

*Under 11 U.S.C. §546 and Request for Determination that the First Motion Did Not Apply*

*to Global One*" (the "Second Motion") [Dkt. No. 386] filed by David K. Gottlieb, Chapter 7

1   Trustee (the "Trustee"). Global One submits that there is no legal basis on which this

2   Court can or should have extended the Section 546 deadline and, even if there were, the

3   Trustee failed to submit any argument or evidence that cause exists to do so as to Global

4   One. For the same reasons, Global One respectfully requests that the Court find that the

5   Order entered on July 24, 2025, on the First Motion to Extend the Deadline (the "First

6   Motion") [Dkt. No. 374] did not apply to any putative avoidance claim which the Trustee

7   could have filed against Global One. Specifically, no factual or legal basis was even

8   mentioned by the Trustee or exists to support the extension of the Avoidance Limitations

9   as to Global One in either the First or Second Motion.

10         **PLEASE TAKE FURTHER NOTICE** that any reply to this Opposition must be filed

11  with the court and served on the responding party not later than 7 days prior to the

12  hearing on the motion.

13  DATED:  October 8, 2025              **GREENSPOON MARDER LLP**

14

15

16                                 By:   ____/s/ Elissa D. Miller_____
                                        Elissa D. Miller
17                                      Attorneys for Global One Financial, a Division
                                        of Synovus Bank
18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION
TO EXTEND SECTION 546 DEADLINE TO FILE AVOIDANCE ACTIONS**

**I.**

**PREFATORY STATEMENT**

The Second Motion filed by the Trustee, like the First Motion, seeks an extension of the Statute of Limitations to File Avoidance Actions as prescribed by Section 546 (the "Avoidance Limitations"). The Trustee contends that the Court can do so for "cause" under Federal Rule of Bankruptcy Procedure 9006(b). The "cause" described in the Second Motion is that the Trustee has been unable to obtain necessary financial records in time to file avoidance actions from the Debtor's former business manager.

Despite the fact that the Trustee was appointed just over one month after the case was filed, and it has now been over two years since that date, he seeks this extraordinary relief for all future avoidance actions without identifying any actual or potential defendants or any discussion of what potential claims he may have against any of the unnamed entities and individuals.  Both motions are silent on this issue.

In the blanket request for an extension of the Avoidance Limitations, in both Motions the Trustee ignores the applicable case law holding that the Federal Rules of Bankruptcy Procedure, Rule 9006(b) does not provide the Court with authority to judicially extend the statutes of limitations set by Congress.  This relief was recently considered and squarely denied by another Bankruptcy Court in this district in the well-reasoned opinion *In re Cramer*, 636 B.R. 830, 831 (Bankr. C.D. Cal. 2022). The *Cramer* court expressly held that there is no basis in law or procedure that supports the judicial modification of congressionally mandated statutory deadlines under the Bankruptcy Code.

The Trustee ignores *Cramer,* instead urging the Court to adopt the contrary analysis endorsed by the Eleventh Circuit in *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 (11th Cir. 2005), and also relies on *In re Raymor,* 617 F.3d 1065, 1070-71 (8th Cir. 2010) and *In re QMect, Inc,*. 349 B.R. 620 (Bankr. N.D. Cal. 2006). However, as discussed

below, the Trustee's reliance on these cases is misplaced, and even lower courts in the Eleventh Circuit have refused to apply the ruling *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 because of its flawed logic.

Finally, even if the Trustee could legally extend the Avoidance Limitations, which Global One submits he cannot, the motion should not be granted as to Global One. The Trustee has completely failed to meet his burden of showing any cause to extend the Avoidance Limitations as to Global One. The factual basis on which the Trustee supports his request—lack of financial records—is inapplicable to the purported issue the Trustee has stated he "may" have with Global One. Not only has Global One not withheld any records or interfered with the Trustee's investigation but counsel for the Trustee acknowledged that the sole basis for the requested extension as to Global One in a potential issue with Global One's perfection of its security interest in its collateral. Global One is not even mentioned in the Motion.

The Trustee's putative dispute with Global One's perfection is not a new issue. It is one which the Trustee raised in January 2024, more than a year and ten months ago and more than a year and eight months before the original Avoidance Limitations date in this case. The Issue was raised by the Trustee in a Stipulation For Relief From Stay (the "Stipulation") entered between Global One and the Trustee in January 2004, in the following two paragraphs:

> D.  Global One did not file UCC-1 financing statements with respect to the Policies or the Other Collateral; provided, however, that nothing in this paragraph D is an admission by Global One or gives rise to any implication that a UCC-1 financing statement is required.

> E.  Global One contends that the Alleged Collateral (including the Policies) were collaterally assigned by the Trust and/or Debtor, all of which are allegedly subject to the loan documents that Global One has provided to the Trustee. However, the Trustee is still investigating, among other things, whether: (1) the documents that allegedly assigned the Alleged Collateral to Global One (the "Assignment Documents") are valid and enforceable; (2) the Assignment Documents could have assigned the Alleged Collateral belonging to the Debtor, and not the Trust, to Global One; and (3) Global One properly perfected its security interests in the

1                     Alleged Collateral.  The Trustee and Global One hereby
reserve any and all of their rights and arguments with respect
2                     to these issues and arguments.

3   [Dkt. No. 154, p. 2:19-25].

4         The next contact Global One had from the Trustee regarding this issue was an

5 email exchange dated September 29, 2025, wherein the Trustee requested an extension

6 of the Avoidance Limitations. When asked why, the Trustee admitted that whether Global

7 One was properly perfected and received more funds than it was owed were the grounds

8 for a requested extension. In other words, the Trustee admitted that basis for the

9 requested extension as to Global One has nothing to do with the Trustee's ability to

10 obtain financial records. (**Exhibit 2** to Miller Decl.)

11         Thus, even if the Trustee had a basis to challenge Global One's perfection, which

12 he does not, the Trustee cannot do so now. The Avoidance Limitations ran on any claim

13 as to Global One on the original deadline date of August 22, 2025.

14         For the reasons set forth herein, the Court should deny the Second Motion and

15 confirm that the extension granted by First Motion does not apply to any putative claim

16 against Global One.

17                                           **II.**

18                       **PERTINENT FACTS AND PROCEDURE**

19       **A.**       **Prepetition Life Insurance Loan and the Bankruptcy Case.**

20         As set forth in the attached Declaration of Jonathan T. Edwards ("Edwards Decl."),

21 before the Petition Date, on or about December 22, 2016, the Debtor obtained two whole

22 life policies from Life Insurance Company of the Southwest ("LSW"), one policy on the

23 Life of the Debtor in the face amount of $50,000,000 (Insurance Contract No.

24 LS0539064) and the second policy on the life of Urbana Chapa in the face amount of

25 $10,000,000 (Insurance Contract No. LS 0539030) (jointly the "Policies").

26         The premiums for the Policies were financed pursuant to a loan from Global One

27 to the Debtor's living trust, PLII Living Trust (the "Trust"), and secured by: (1) collateral

28 assignments of the Policies; and (2) posted cash or other collateral held in escrow (the

"Other Collateral." Pursuant to California Law, Global One properly perfected its security interest in the policies, the escrow account and surrender value of the policies by providing notice to the Insurer of the Collateral Assignment on the insurer's form, controlling the escrow account, and taking possession of the original policies. Indeed, not only did the insurance carrier receive notice, LSW specifically acknowledged the collateral assignments, which granted Global One all right, title, and interest in and to the policies.

On August 3, 2023, Debtor filed a petition under Title 11, Chapter 11 commencing the instant case. Just over one month later, on September 12, 2023, the case was converted to one under Chapter 7 [Dkt. No. 72], and the Trustee was appointed on September 14, 2023 [Dkt. No. 73].

Approximately four months after the Trustee was appointed, on January 10, 2024, the Trustee and Global One entered into a Stipulation for Immediate Relief from Stay so that Global One could foreclose on its Collateral, the Policies and the escrow fund. [Dkt. No. 154]  On January 16, 2024, the Court entered the Order Granting the Stipulation. [Dkt. No. 157]  On January 17, 2024, Global One submitted the required surrender documents to LSW. While legally an insurer can hold funds for up to six months after receiving a notice of surrender, on February 27, 2024, Global One received the wire for the surrender value of the Chapa Policy and on February 29, 2024, the wire for the Debtor's policy. After applying all amounts received (including the escrow funds), Global One was still owed $206,681.49 and issued a 1099 for the debt forgiveness to the Debtor. (**Exhibit 1** to Edwards Decl.)

Global One advised the Trustee of the termination of the Policies, the receipt of the payments, and the shortfall on February 29, 2024, and the Trustee acknowledged receipt of the Notice. (See **Exhibit 3** to Declaration of Elissa D. Miller ("Miller Decl."). As such, contrary to his eleventh hour email on September 29, 2025, the Trustee knew that Global One did not receive more funds than it was entitled.

**B.**    **Request to Extend Avoidance Claim Statute of Limitations**.

On September 29, 2025, Jeffery Kwong, attorney for the Trustee sent an email to Elissa D. Miller, attorney for Global One as follows:

> Hi Elissa – I hope you're doing well. As you may remember, your client (Global One) and the Trustee entered into a relief from stay stipulation for, among other things, termination of the policies without prejudice to any avoidance and other claims that the Lawrence Estate may have against Global One. The 546 deadline is 11/3, and we're still investigating. We're hoping to avoid having to file a 546 extension motion this Wednesday. Can you see if your client will agree to a 60 day extension of the 546 deadline?

After reviewing the Docket as Ms. Miller believed the deadline had already expired on August 22, 2025, and finding the First Motion which was filed on July 24, 2025, and the Order thereon entered on the same date,[1] Ms. Miller responded:

> Hi Jeff -Global One was secured so not sure what avoidance claim you could bring against them. Before I reach out, can you please give me a bit more information as to why you need an extension as to them?

Mr. Kwong responded:

> Hi Elissa – thanks for the quick response.
>
> In previous emails, we had some discussions about whether Global One properly perfected its alleged security interest (is the filing of a UCC-1 required; and relatedly, whether the loan documents and assignment documents are valid/enforceable). We're working with special counsel on this matter who is looking into any claims that the Estate may have against Global One. Among other things, because stay relief was granted for Global One to surrender/terminate the policies, there's a potential constructive fraudulent conveyance claim if, for example, the value of the collateral substantially exceeded the amount of Global One's alleged claim (on the basis that any portion of it, such as interest, is invalid or not secured). I've been told that special counsel is also missing some documents related to the loan, and the Estate may have to request such documents and/or request them through a 2004 motion.

---

[1] Ms. Miller was on a short vacation in the San Juan Islands, Washington State (on a whale watching Boat) on the day the First Motion was filed and the Order entered.

1

2

       Hopefully, the extension will give the Estate more time to take a look into, and for us to speak about these issues. Thank you.

3

Ms. Miller again responded:

4

5

6

7

8

       Jeff - Regarding the cash surrender value and funds in the possession of Global One, they were secured pursuant to the collateral assignments with LSW. Thus, not only did the carrier have notice of the assignment, Global One used its assignment forms, which create a contractually binding obligation on the carrier and assigned all right, title, and interest in the policy to Global One. We provided you copies of the collateral assignment and notice on January 4, 2024.

9

10

11

12

13

14

15

       In addition, Global One took physical possession of the original policy and stored the same in its vault and had control of the escrowed funds. In other words, the security interest was properly perfected by the collateral assignments, notice to the carriers, the escrowed funds as well as control over the policy itself. Moreover,  the collateral was not sufficient to fully repay Global, so your constructive fraudulent transfer claim under 548 or 544 is wholly without merit and would not survive a Rule 9011 challenge. Indeed, Global One issued a 1099 for cancellation of indebtedness income to the Trustee of the Trust. Let us know if you need a copy of the 1099.

16

17

       Global One has cooperated with the Trustee to date. The Stipulation was entered and granted over 15 months ago. Had you needed additional documents, you could have simply asked or filed a 2004 exam at any point as your position was clearly outlined in the Stipulation.

18

19

20

21

       As such and since Global One contends there is no basis to file any 544 or 548 claims against it; it therefore declines to extend the statutory deadline, and if any claim is asserted on these non-meritorious threats, Global One will vigorously defend the suit and, as appropriate, seek redress from the court.

22

Mr. Kwong responded:

23

24

25

26

27

28

       Hi Elissa – we're still looking into this, and am not determining one way or the other. In any event, to give the Estate more time and for preventative measure, we're filing a 546 extension motion today (its generic and seeks a general extension of 1 month, and does not specifically mention Global One as there are other parties that the Estate may have avoidance actions against).  I was just reaching out to see if parties will agree to stipulate.

1    Special Counsel was retained by the Trustee in December 2023, and the order

2    approving that retention was entered on January 4, 2024. [Dkt. Nos. 129 and 152]

3    Moreover, as noted above, the Trustee was first in possession of the Notices on January

4    4, 2024, the Stipulation was entered in January 2024 in which the Trustee identified the

5    same issue for which he now claims he requires an extension, and he was advised in

6    February 2024 of the shortfall. And yet, at no time between January 2024 and the date of

7    filing of this Opposition did the Trustee request any information as to perfection or seek to

8    discuss the issue with Global One.[2]

9                                    **III.**

10    **THE TIME SET FORTH IN 11 U.S.C. §546 TO COMMENCE AVOIDANCE ACTIONS**

11    **IS A STATUTE OF LIMITATIONS WHICH CAN NOT BE EXTENDED THROUGH**

12    **THE USE OF FEDERAL RULES OF BANKRUPTCY PROCEDURE 9006(b)**

13    The Trustee's attempt to extend the congressionally mandated limitations period

14    under Section 546 for "cause" under Rule 9006(b) of the Federal Rules of Bankruptcy

15    Procedure (the "Bankruptcy Rules") is unsupported by the law, and the factual record

16    does not come close to establishing the evidentiary predicate for "cause" under Rule

17    9006(b). The Avoidance Limitations is a jurisdictional bar that cannot be extended

18    through the use of Rule 9006. See *In re Cramer*, 636 B.R. 830, 831 (Bankr. C.D. Cal.

19    2022), a case with the Trustee ignores. *See also*, *In re Petty*, 93 B.R. 208, 211 (9th Cir.

20    B.A.P. 1988) ("If the trustee's complaint to avoid a preferential transfer is not timely filed

21    in accordance with Section 546(a) then the bankruptcy court has no jurisdiction to hear

22    the complaint.)  and *In re Walnut Hill, Inc.*, No. 16-20960 (JJT), 2018 WL 2672242

---

[2] In February 2024, the Trustee, through his Special Counsel, filed a Motion in the Superior Court for the State of California to Compel Global One, a Subpoenaed Non-Party Witness to Produce Documents Pursuant to a Subpoena which had already been Quashed by a State Court in the State of Georgia as overbroad burdensome and oppressive, the State in Which the Subpoena was Issued. The Subpoena was not seeking documents regarding Global One's perfection. The Motion in the California Court was denied. (Miller Decl.¶5).

1  (Bankr. D. Conn. June 1, 2018).[3] ("By its plain language, Rule 9006(b) only applies to

2  deadlines set 'by these rules or by a notice given thereunder[,] [sic] or by order of court'.

3  Nowhere in the Rule does it mention statutory deadlines.")

4           The Trustee's reliance on Rule 9006(b) to contend that the Avoidance Limitations

5  may be extended for "cause" is misguided. The plain language of Rule 9006(b) only

6  applies to deadlines proscribed by court order or under the Rules. Rule 9006(b) provides,

7  in pertinent part:

8               [W]hen an act is required or allowed to be done at or within a
               specified period by these rules or by a notice given thereunder
9               or by order of court, the court for cause shown may at any
               time in its discretion.
10

11          Fed. R. Bankr. P. 9006(b)(1) (emphasis added). Thus, the type of extensions

12  contemplated under Rule 9006(b) involve those relating to deadlines for responding to a

13  motion, attending a hearing, or other deadlines set forth under the Bankruptcy Rules.

14  *See, e.g.*, *Willms v. Sanderson*, 723 F.3d 1094, 1100 (9th Cir. 2013) (adjudicating motion

15  for extension of deadline of time for filing a complaint objecting to the discharge of a debt

16  due to fraud under § 523(a)(2), where the time period for filing such complaint is

17  governed by Rule 4007(c)). Rule 9006(b) does not mention *statutory* deadlines. Section

18  546(b) is a statute, not a rule. Thus, by its plain language, Rule 9006(b) applies only to

19  deadlines set by the Court and by the Bankruptcy Rules, not to Section 549 or 549, or

20  other statutorily proscribed deadlines.[4]  *See, e.g.*, *In re Damach, Inc.*, 235 B.R. 727, 731

21  (Bankr. D. Conn. 1999) (Rule 9006(b) "permit[s] modification only of time limitations

22  imposed by other rules or by the court"); *In re Colad Group, Inc.*, 324 B.R. 208, 225

23

_____

24  [3] A true and correct copy of *Walnut Hill* is attached hereto as **Exhibit B.**

25  [4] While the Legislative History of the 1994 amendments to Section 546 include that "[t]he
    time limits set forth therein are not intended to be jurisdictional and can be extended
26  by stipulation between the necessary parties to the action or proceeding." See 140 Cong.
    Rec. H. 10752, H10768 (daily ed. Oct. 4, 1994), it specifically only refers to stipulations,
27  i.e., where a party to the proposed action agrees. It does not provide for a motion to
28  extend without notice to the targeted parties.

1    (Bankr. W.D.N.Y. 2005) ("Bankruptcy Rule 9006 allows an enlargement or reduction of

2    many of the time limits in the Bankruptcy Rules but does not allow an enlargement of the

3    time set forth in Section 546(a) as it is a statute, not a rule holding that the court did not

4    have the authority to act under Rule 9006 relative to statutory deadlines.")[5]

5    See also., *In re No. 1 Contracting Corp.*, No. BR 5-10-BK-01755-JJT, 2012 WL

6    4114818, at *1 (Bankr. M.D. Pa. Sept. 19, 2012), a copy of which is attached hereto as

7    **Exhibit A,** (Court denied motion for blanket extension of Avoidance Limitations

8    distinguishing *In re Int'l Admin. Servs.*, 408 F.3d 689 and holding that while it could

9    equitably toll the statue if the target acted inequitably, it could not extend as to unknown

10   targets who are not alleged to have committed any wrongdoing.") and *In re Walnut Hill,*

11   *Inc.*, supra, (Although the Court followed *In re Int'l Admin. Servs.*, 408 F.3d 689 for the

12   purposes of equitable tolling, it specifically ruled that "Rule 9006(b) cannot apply to

13   Section 546(a) without violating the separation of powers preserved in the Constitution.

14   Where the legislature has spoken authoritatively, it is not within the province of the

15   judiciary to modify its determination. As Rule 9006(b) does not apply to Section 546(a), it

16   is unnecessary for this Court to determine whether cause was shown for an extension of

17   the statutory deadline.")

18   The cases on which the Trustee relies to support his claim that he can unilaterally

19   and without adequate notice extend the deadline are unavailing. In *In re United Ins.*

20   *Mgmt.*, 14 F.3d 1380 (9th Cir. 1994), the issue was whether equitable tolling applied to

21   Section 546(a)(1), not whether the Avoidance Limitations may be extended for "cause"

22   under Rule 9006(b). *See id.* at 1384-85. In *In re QMect, Inc.*, 349 B.R. 620 (Bankr. N.D.

23   Cal. 2006), the issue was whether to grant the committee's motion to amend its complaint

24   under Rule Fed. R. Civ. 15(a) to include mostly non-substantive changes, including

25

26   [5] These rulings are consistent with Congressional Intent in enacting the 1977 changes to
     the Bankruptcy Code and Rules when it stated, "Congress has dictated that the
27   Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C.
     § 2075. Where the Rules and Code are inconsistent, the statutory Code controls. H.R.
28   Rep. No. 95-595, pt. 1, at 449 (1977)

1  restructuring paragraphs and adding "certain clarifying language to certain claims." *Id.* at

2  622. The court granted the motion, finding that "motions to amend should be granted

3  liberally absent undue prejudice. Given the repeated allegations in the Complaint that the

4  Defendants' liens were unperfected and therefore avoidable, the addition of the prayer for

5  avoidance should come as no surprise." *Id.* at 625. The *QMect* court also rejected

6  defendants' argument that their stipulated agreement to extend the deadline for filing

7  avoidance actions pursuant to Section 546(a) was "meaningless." On this point, the court

8  noted that the time periods under Section 546(a) can be extended by stipulation between

9  the necessary parties to the action or proceeding. Id. at 625.

10       Here, the issue is not whether the Trustee can amend a previously filed complaint

11  under Fed. R. Civ. P. 15 or whether an agreement between the parties to toll deadlines is

12  effective. Thus, *QMect* is thus inapplicable.

13       The Trustee's remaining case cites are not binding on this Court, and are, in any

14  event, factually inapposite. In *In re Raymor,* 617 F.3d 1065 (8th Cir. 2010*),* while the *court*

15  did state that Section 546(a) is not jurisdictional, its ruling was based on a finding that an

16  avoidance action filed on the two year anniversary of the filing of the Chapter 7 Case was

17  timely. In *In re Int'l Admin. Servs.*, 408 F.3d 689 (11th Cir. 2005), the court found that a

18  bankruptcy court properly extended the trustee's motion to extend the time to file

19  avoidance actions where an adverse party hampered the trustee's ability to investigate

20  the claims by delaying document production, withholding discovery responses, and losing

21  records. See id. at 696. In other words, *Int'l Admin* is really an equitable tolling case after

22  a complaint was filed, not a case to globally extend the Avoidance Limitations before any

23  complaint has been filed or the targets identified.

24       Likewise, *In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 789 (Bankr.

25  M.D. Fla. 2013) allowed an extension in a situation akin to tolling, The Court found

26  "cause" was shown for enlargement of limitations period under Section 546 where

27  trustee's investigation has been delayed due to targets' "active opposition to her

28  discovery efforts.". Here, unlike in those cases, the Trustee does not assert, or adduce

1  any evidence, that Global One—or any potential targets of claims—actively or negligently

2  concealed information from the Trustee, hampered the Trustee's investigation, or

3  otherwise failed to cooperate with the Trustee in his investigation. Indeed, as to Global

4  One, no such facts can be alleged.

5        Thus, in the event the Court applies Rule 9006(b)'s "cause" standard to analyze

6  the Motion, the Trustee does not come close to showing that "cause" is warranted under

7  these circumstances, especially as to Global One.

8  **IV.**

9  **EVEN IF THE STATUTE OF THE LIMITATIONS COULD BE EXTENDED**

10  **FOR CAUSE WHICH GLOBAL ONE DISPUTES, THE TRUSTEE FAILED**

11  **TO DEMONSTRATE WHATSOEVER ANY CAUSE LET ALONE GOOD**

12  **CAUSE TO JUSTIFY EXTENDING THE AVOIDANCE DEADLINE WITH**

13  **RESPECT TO ANY PUTATIVE CLAIM AGAINST GLOBAL ONE**

14  A.    **The Trustee Has Not Demonstrated Cause to Extend the Statute of**

15      **Limitations as To Global One.**

16        Quoting *Fundamental Long Term Care, Inc.*, 501 B.R. 784, 789 (Bankr. M.D. Fla.

17  2013), the Trustee argues that extending the Avoidance Limitations is within the courts'

18  discretion and that evidence of active or negligent concealment sufficient causing delay

19  of the Trustee's investigation would "ordinarily be sufficient to establish cause' to

20  equitably toll the two-year limitations period."

21        The Trustee asserts that such cause exists here because of the number of bank

22  accounts maintained by the Debtor and the difficulties he has had obtaining necessary

23  financial documents and information from the Debtor's business manager, Thomas St.

24  John, Inc..

25        However, this is not a tolling case. The Trustee seeks to extend the deadline

26  without any showing that any potential defendant has hampered his investigation, except

27  perhaps Thomas St. John, Inc. The Trustee has not alleged that Global One has actively

28  or negligently concealed any documents or evidence nor could he as the Trustee has not

1    requested documents from Global One regarding the perfection of its security interest.

2    Global One is not even mentioned in the Motion. Moreover, perfection is a legal issue,

3    not factual. Global One admitted in the Stipulation that it did not file a UCC-1 in California,

4    stating it did not need to do so. It provided the Collateral Agreement and the Notice to

5    LSW of same in January 2024, the Stipulation also recited that funds were held by Global

6    One in an escrow account and by email, and in February 2024, advised the Trustee that

7    it had received the insurance proceeds and there was a shortfall of over $200,000.

8    Moreover, Global One recently advised the Trustee that it had and still has the original

9    Policies in its possession, custody, and control.

10    The Trustee had all the information he required by, at the latest, February 2004, to

11    determine if Global One was properly perfected and contest its position. That the Trustee

12    did not even raise the issue for over 22 months after knowing of these facts and then only

13    in an email, not in the First or Second Motion, militates against a finding of cause to

14    extend the Avoidance Limitations as to Global One.

15    **B.    The Court Should Reconsider its Ruling on the First Extension Motion**

16    **as to Global One on the Grounds of Mistake, Inadvertence or Excusable**

17    **Neglect and Lack of Appropriate Notice that the Motion Applied to**

18    **Global One.**

19    As noted in Footnote No. 2 of *In re Cramer,* 636 B.R. 8730, "Lack of notice is a

20    basis to challenge a federal court order."  Here, there was no notice to Global that it was

21    to be included in the unidentified potential targets of future avoidance claims. The entirety

22    of the Trustee's stated basis for cause to extend the Avoidance Limitations in both the

23    First and Second Motions is the lack of financial documents. As discussed above, this is

24    not the basis or the reason the Trustee requested an extension from Global One. For this

25

26

27

28

1    reason alone, this Motion should be denied, and the Court should enter an order finding

2    that the order on the First Motion does not apply to Global One.[6]

3      For this same reason, Global One asks the Court to grant it relief from the order on

4    the First Motion extending the Avoidance Limitations to November 3, 2025, based on

5    mistake, inadvertence and excusable neglect and lack of adequate notice pursuant to

6    Fed. R. Civ.Pro.. 60(b)(1) and (6). From July 23, 2025, through July 26, 2025, Global

7    One's counsel Elissa Miller was on a short vacation in Seattle and the San Juan Islands,

8    Washington. On July 24, 2025, from approximately 8:00 to early afternoon, Ms. Miller

9    was on a whale-watching trip at times without connectivity. The First Motion was filed at

10   approximately 11:00 a.m. accompanied by an Application for Order Shortening Time.

11   [Dkt. Nos. 372 and 373]. The Order was entered four hours later without any time for any

12   opposition at 3:00 p.m. Ms. Miller was not even aware of the First Motion and then when

13   she reviewed same, she did not believe it applied to Global One for the reasons stated

14   herein. It was only after she received the Trustee's email requesting Global One stipulate

15   to an extension that she realized the motion had been filed and that the Trustee believed

16   that the First Motion even applied to Global One.[7]

17     For these reasons Global One requests that the Court enter an order denying the

18   relief requested as to Global One in the instant Motion and find that the Order on the First

19   Motion does not apply to Global One.

20

21

22

23   _____

[6] The utter failure to raise even one shred of evidence of cause to extend the deadline as
24   to Global One is a violation of Rule 9011. Global One submits that the Court should issue
     an OSC re sanctions to the Trustee and his counsel, *sua sponte,* under its inherent
25   power.

26   [7] Query. If the Trustee believed that the First Motion and therefore the Second Motion
     would apply to Global One even though they were not mentioned therein, why did he
27   request that Global One stipulate to an extension and before filling the Second Motion
     and not just file the Motion as he did with the First Motion.
28

# V.

## **CONCLUSION**

For the reasons set forth herein, Global One Financial, a division of Synovus Bank respectfully requests that the Court deny the Motion as to Global One and further confirm that the extension granted by the First Motion did not apply to Global One.

DATED:  October 8, 2025          **GREENSPOON MARDER LLP**

By:          /s/ *Elissa D. Miller*
                 _____
                 Elissa D. Miller
                 Attorneys for Global One Financial, a
                 Division of Synovus Bank

1

## DECLARATION OF JONATHAN T. EDWARDS

2      I, Jonathan T. Edwards, declare:

3      1.      Since 2021, I have the President of the Specialty Finance Division, which

4  includes Global One Financial, a division of Synovus Bank ("Global One"). I am also an

5  attorney licensed to practice law in the State of Georgia and the State of New York. I

6  make this Declaration in Support of the I make this Declaration in Support of the

7  "Opposition Of Global One Financial. A Division Of Synovus Bank To Trustee's Second

8  Motion For Order Extending Time To File Avoidance Actions Under 11 U.S.C. §546 And

9  Request For Determination That First Motion Did Not Apply To Global One; Declarations

10 Of Jonathan T. Edwards And Elissa D. Miller In Support Thereof."

11     2.      In my role as the President of the Specialty Finance Division, my

12 responsibilities included overseeing individuals who manage the relationship with the

13 Debtor and the financing of the Policies from inception through collection. I know all of the

14 facts set forth herein of my own personal knowledge and if called as a witness could and

15 would competently testify hereto.

16     3.      On or about December 22, 2016, the Debtor obtained two whole life policies

17 from Life Insurance Company of the Southwest ("LSW"), one policy on the Life of the

18 Debtor in the face amount of $50,000,000 (Insurance Contract No. LS0539064) and the

19 second policy on the life of Urbana Chapa in the face amount of $10,000,000 (Insurance

20 Contract No. LS 0539030) (jointly the "Policies").

21     4.      The premiums for the Policies were financed pursuant to a loan from Global

22 One to the Debtor's living trust, PLII Living Trust (the "Trust"), and secured by: (1)

23 collateral assignments of the Policies; and (2) posted cash or other collateral held in

24 escrow (the "Other Collateral"). Pursuant to California Law, Global One properly

25 perfected its security interest in the policies, the escrow account and surrender value of

26 the policies by providing notice to the Insurer of the Collateral Assignment on the

27 insurer's form, controlling the escrow account, and taking possession of the original

28

1 policies. LSW specifically acknowledged the collateral assignments, which granted

2 Global One all right, title, and interest in and to the policies.

3      5.     Following the Court's entry of the Order granting the Stipulation for Relief

4 From Stay between Global One and the Trustee, on January 17, 2024, Global One

5 submitted the required surrender documents to LSW. While legally the insurer can hold

6 the funds for up to six months after receiving a notice of surrender, on February 27, 2024,

7 Global One received the wire for the surrender value of the Chapa Policy and on

8 February 29, 2024, the wire for the Debtor's policy. After applying the amounts received,

9 (including the escrow funds) Global One was still owed $206,681.49 and issued a 1099

10 for the debt forgiveness to the Debtor. A true and correct copy of the 1099 with PII

11 redacted is attached hereto as **Exhibit 1.**

12      6.     In January 2005, Global One received several emails from Debtor's special

13 counsel regarding deposing a representative of Global One in litigation pending in the

14 State of California to which Global One is not a party. Special counsel never took Global

15 One's deposition, nor did they even notice it.

16      I declare under penalty of perjury under the laws of the United States of America

17 that the foregoing is true and correct.

18      Executed October 8, 2025, in Cobb County, Georgia.

19

20                                 _____

21                                   Jonathan T. Edwards, President
Specialty Finance Division

22

23

24

25

26

27

28

### DECLARATION OF ELISSA D. MILLER

I, Elissa D. Miller, declare:

1.      I am an attorney licensed to practice in the State of California and before this Court. I am a member of Greenspoon Marder LLP, attorneys of record for Global One Financial, a division of Synovus Bank ("Global One"). I know all of the facts set forth herein of my own personal knowledge and if called as a witness could and would competently testify hereto. I make this Declaration in Support of the "Opposition Of Global One Financial. A Division Of Synovus Bank To Trustee's Second Motion For Order Extending Time To File Avoidance Actions Under 11 U.S.C. §546 And Request For Determination That First Motion Did Not Apply To Global One; Declarations Of Jonathan T. Edwards And Elissa D. Miller In Support Thereof."  I have been the attorney responsible for representing Global One in this Case from January 2024 through present.

2.      On September 29, 2025, at 10:31 a.m. I received an email from Jeffery Kwong asking if Global One would stipulate to an extension of the Avoidance Limitations. After requesting more information as to why which Mr. Kwong provided, Global One declined to do so. A true and correct copy of my email string with Jeffery Kwong is attached hereto as **Exhibit 2.**

3.      The last communication I had with Mr. Kwong prior to his September 29, 2025, email was on February 29, 2024. At that time, I advised Mr. Kwong that the Policies had been terminated and that after application of the collateral, Global One had a shortfall of $206,681.49. Mr. Kwong responded stating, "Thanks for the Update, Elissa." A true and correct copy of my email without attachments is attached hereto as **Exhibit 3**.

4.      From July 23 through July 27, 2025, I was on a short vacation with my Daughter in Seattle and the San Juan Islands in the state of Washington. Specifically on July 24, 2025, I was on a whale watching boat operated by Maya's Legacy Whale Watching from approximately 8:00 a.m. through early afternoon. I did not always have connectivity and did not see that the Trustee had filed his first Motion. I also did not see that the Order was entered just four hours after the First Motion was filed. I respectfully

submit that based on the foregoing and the timing of the First Motion and the Entry of the Order there on Global One's failure to timely respond to the First Motion (which did not even mention Global One) was excusable and the result of my inadvertence.

5.      In February 2024, I represented Global One in opposing a Motion in the Superior Court for the State of California to Compel Global One, a Subpoenaed Non-Party Witness to Produce Documents Pursuant to a Subpoena which had already been Quashed by a State Court in the State of Georgia as overbroad burdensome and oppressive, the State in Which the Subpoena was Issued. The Motion was filed by the Trustee, through his Special Counsel. The Subpoena was not seeking documents regarding Global One's perfection. The Motion in the California Court was denied.

6.      Other than the above-described Motion and the stated intent to depose Global One, which never occurred, no attorney, either the General Counsel or Special Counsel, has contacted Global One requesting documents related to perfection, payment or cancellation of the Polices since the entry of the Order approving the Stipulation for Relief from Stay in January 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 8, 2025 at Los Angeles, California.

_/s/ Elissa D. Miller_____
Elissa D. Miller

# EXHIBIT 1

```
SYNOVUS BANK                    165I0610000001000   2024 CANCELLATION OF DEBT
P O BOX 120                                         FORM  1099-C
COLUMBUS GA 31902                                   COPY B,  FOR DEBTOR
                                                    OMB No.  1545-1424
FOR ASSISTANCE CALL: (800) 334-9007

CREDITOR'S TIN                  ██ ███████    PAGE       1
```

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE
SERVICE.  IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER
SANCTION MAY BE IMPOSED ON YOU IF TAXABLE INCOME RESULTS FROM THIS TRANSACTION AND
THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED.

```
     PLII LIVING TRUST                      DEBTOR'S TIN
     ATTN THOMAS ST JOHN                    ████████████
██████████████████████████
```

2024 FORM 1099-C: CANCELLATION OF DEBT

| Account Number | IRS Description | IRS Box# | Amount |
|---|---|---|---|
| 400020 | LOAN PAYOFF SHORTFALL | 4 | |
| | Date of identifiable event | 1 | 02/29/2024 |
| | Amount of debt discharged | 2 | 206,681.49 |
| | Was debtor personally liable for repayment of the debt | 5 | NO |
| | Identifiable event code | 6 | F |
| TOTALS: | Amount of debt discharged | 2 | 206,681.49 |
| | Interest if included in box 2 | 3 | 0.00 |
| | Fair market value of property | 7 | 0.00 |

# EXHIBIT 2

| | |
|---|---|
| **From:** | Jeffrey S. Kwong <JSK@lnbyg.com> |
| **Sent:** | Wednesday, October 1, 2025 10:13 AM |
| **To:** | Elissa Miller |
| **Cc:** | Joseph M. Rothberg; Ron Bender |
| **Subject:** | RE: Lawrence - Global One |

[External Sender]

Hi Elissa – we're still looking into this, and am not determining one way or the other.  In any event, to give the Estate more time and for preventative measure, we're filing a 546 extension motion today (its generic and seeks a general extension of 1 month, and does not specifically mention Global One as there are other parties that the Estate may have avoidance actions against).  I was just reaching out to see if parties will agree to stipulate.  Thanks for responding.

**JEFFREY S. KWONG, Esq.**

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**

**2818 La Cienega Avenue | Los Angeles, CA   90034**

**Phone  310 229 1234  |  Direct  310 229 3337  |  Fax  310 229 1244**

**jsk@lnbyg.com  |  www.lnbyg.com [lnbyg.com]**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm [lnbyg.com].

 **Please consider the environment before printing this email**

[**PLEASE NOTE THE NEW OFFICE ADDRESS**]

**From:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Sent:** Wednesday, October 1, 2025 10:07 AM
**To:** Jeffrey S. Kwong <JSK@lnbyg.com>
**Cc:** Joseph M. Rothberg <jmr@lnbyg.com>; Ron Bender <RB@lnbyg.com>
**Subject:** RE: Lawrence - Global One

Jeff - Regarding the cash surrender value and funds in the possession of Global One, they were secured pursuant to the collateral assignments with LSW. Thus, not only did the carrier have notice of the assignment, Global One used its assignment forms, which create a contractually binding obligation on the carrier and assigned all right, title, and interest in the policy to Global One.  We provided you copies of the collateral assignment and notice on January 4, 2024.

In addition, Global One took physical possession of the original policy and stored the same in its vault and had control of the escrowed funds.  In other words, the security interest was properly perfected by the collateral assignments, notice to the carriers, the escrowed funds as well as control over the policy itself.  Moreover,  the collateral was not sufficient to fully repay Global, so your constructive fraudulent transfer claim under 548 or 544 is wholly without merit and would not survive a Rule 9011 challenge. Indeed, Global One issued a 1099 for cancellation of indebtedness income to the Trustee of the Trust. Let us know if you need a copy of the 1099.

Global one has cooperated with the Trustee to date.  The Stipulation was entered and granted over 15 months ago. Had you needed additional documents, you could have simply asked or filed a 2004 exam at any point as your position was clearly outlined in the Stipulation.

022

As such and since Global One contends there is no basis to file any 544 or 548 claims against it; it therefore declines to extend the statutory deadline, and if any claim is asserted on these non-meritorious threats, Global One will vigorously defend the suit and, as appropriate, seek redress from the court.

Elissa

**From:** Jeffrey S. Kwong <JSK@lnbyg.com>
**Sent:** Monday, September 29, 2025 12:09 PM
**To:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Cc:** Joseph M. Rothberg <jmr@lnbyg.com>; Ron Bender <RB@lnbyg.com>
**Subject:** RE: Lawrence - Global One

Hi Elissa – thanks for the quick response.

In previous emails, we had some discussions about whether Global One properly perfected its alleged security interest (is the filing of a UCC-1 required; and relatedly, whether the loan documents and assignment documents are valid/enforceable).  We're working with special counsel on this matter who is looking into any claims that the Estate may have against Global One.  Among other things, because stay relief was granted for Global One to surrender/terminate the policies, there's a potential constructive fraudulent conveyance claim if, for example, the value of the collateral substantially exceeded the amount of Global One's alleged claim (on the basis that any portion of it, such as interest, is invalid or not secured).  I've been told that special counsel is also missing some documents related to the loan, and the Estate may have to request such documents and/or request them through a 2004 motion.

Hopefully, the extension will give the Estate more time to take a look into, and for us to speak about these issues.  Thank you.

**JEFFREY S. KWONG, Esq.**
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
**2818 La Cienega Avenue | Los Angeles, CA  90034**
**Phone  310 229 1234   |   Direct  310 229 3337   |   Fax  310 229 1244**
**jsk@lnbyg.com   |   www.lnbyg.com [lnbyg.com]**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik L.L.P.'s
 email policies which can be found at http://www.lnbyg.com/disclaimers.htm [lnbyg.com].
 Please consider the environment before printing this email

[**PLEASE NOTE THE NEW OFFICE ADDRESS**]

**From:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Sent:** Monday, September 29, 2025 10:59 AM
**To:** Jeffrey S. Kwong <JSK@lnbyg.com>
**Cc:** Joseph M. Rothberg <jmr@lnbyg.com>
**Subject:** RE: Lawrence - Global One

Hi Jeff -Global one was secured so not sure what avoidance claim you could bring against them.  Before I reach out, can you please give me a bit more information as to why you need an extension as to them?

Elissa

**From:** Jeffrey S. Kwong <JSK@lnbyg.com>
**Sent:** Monday, September 29, 2025 10:31 AM
**To:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Cc:** Joseph M. Rothberg <jmr@lnbyg.com>
**Subject:** Lawrence - Global One

Hi Elissa – I hope you're doing well.  As you may remember, your client (Global One) and the Trustee entered into a relief from stay stipulation for, among other things, termination of the policies without prejudice to any avoidance and other claims that the Lawrence Estate may have against Global One.  The 546 deadline is 11/3, and we're still investigating.  We're hoping to avoid having to file a 546 extension motion this Wednesday.  Can you see if your client will agree to a 60 day extension of the 546 deadline?

Thanks so much.

**JEFFREY S. KWONG, Esq.**

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
**2818 La Cienega Avenue | Los Angeles, CA  90034**
**Phone  310 229 1234  |  Direct  310 229 3337  |  Fax  310 229 1244**
**jsk@lnbyg.com  |  www.lnbyg.com [lnbyg.com]**

**The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik L.L.P.'s email policies which can be found at http://www.lnbyg.com/disclaimers.htm [lnbyg.com].**
 **Please consider the environment before printing this email**

**[**PLEASE NOTE THE NEW OFFICE ADDRESS**]**

GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that purpose if we are attempting to collect a debt from you.

024

# EXHIBIT 3

**Cheryl Caldwell**

| | |
|---|---|
| **From:** | Jeffrey S. Kwong <JSK@lnbyg.com> |
| **Sent:** | Thursday, February 29, 2024 11:52 AM |
| **To:** | Elissa Miller |
| **Cc:** | Ron Bender |
| **Subject:** | RE: Global One - Lawrence - Withdrawal of Claim No. 23(56975628.1).pdf |

**[External Sender]**

Thanks for the update, Elissa.
**JEFFREY S. KWONG, Esq.**
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
**2818 La Cienega Avenue | Los Angeles, CA 90034**
**Phone 310 229 1234 | Direct 310 229 3337 | Fax 310 229 1244**
**jsk@lnbyg.com | www.lnbyg.com [lnbyg.com]**
**The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Brill L.L.P.'s**
**email policies which can be found at http://www.lnbyg.com/disclaimers.htm [lnbyg.com].**
🌎 **Please consider the environment before printing this email**

**From:** Elissa Miller
**Sent:** Thursday, February 29, 2024 11:43 AM
**To:** Jeffrey S. Kwong ; Ron Bender
**Cc:** Christopher Coleman
**Subject:** Global One - Lawrence - Withdrawal of Claim No. 23(56975628.1).pdf
Jeffery and Ron. In accordance with the stipulation, Global One terminated the policies and received payment
from the insurance policies on February 28 and 29th, 2024. After application of all collateral to the amounts due on
its notes Global One has a balance of interest remaining as of February 28, 2024 of $206,681.49. Thus, there is no
excess to pay over to the estate.
Also in accordance with the Stipulation, attached is a copy of the notice of withdrawal of claim No. 23 which will
be filed today, if not tomorrow depending on my secretaries workload.
Elissa Miller



Elissa D. Miller
Greenspoon Marder LLP
Partner
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Office – 213-617-5234– Cell: 818-519-2932
Email Address: elissa.miller@gmlaw.com
www.gmlaw.com



GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that purpose if we are attempting to collect a debt from you.

026

# EXHIBIT A

2012 WL 4114818
Only the Westlaw citation is currently available.
United States Bankruptcy Court,
M.D. Pennsylvania.

In re NO. 1 CONTRACTING CORPORATION,
Debtor.

No. 5–10–bk–01755–JJT.
|
Sept. 19, 2012.

**Attorneys and Law Firms**

Ronald V. Santora, Bresset and Santora, Forty Fort, PA, for
Debtor.

David J. Harris, Wilkes–Barre, PA, Michael G. Oleyar, Hazle
Township, PA, Myles P. McAliney, McAliney & McAliney,
Pittston, PA, for Trustee.

Gregory Benjamin Schiller, U.S. Department of Justice,
Office of the U.S. Trustee, Harrisburg, PA, for Asst. U.S.
Trustee.

**OPINION** [1]

JOHN J. THOMAS, Bankruptcy Judge.

**\*1** Michael G. Oleyar, Esquire, the Chapter 7 Panel Trustee
appointed in the above-captioned Chapter 7 case has filed a
Motion for Enlargement of Time in Which to Commence
Avoidance Proceedings and Other Actions (Doc. # 160).
Several creditors to the above estate filed an Objection to
this Motion (Doc. # 164). The Motion alleges that the
Debtor's principal has failed to cooperate with the Trustee by
not providing information and documentation requested by
the Trustee through his repeated demands. Trustee further
alleges Debtor's principal has failed to respond to questions
at "numerous continued creditor meetings held under Section
341" and has invoked his right not to respond to the Trustee's
questions by asserting protection under the 5th and 14th
Amendments of the United States Constitution. As a result of
this alleged failure to cooperate with the Trustee, the Trustee
asserts that he cannot determine whether there are avoidance
and/or other related actions including preferential and

fraudulent transfer actions that can be asserted on behalf of
the Debtor's estate. The Trustee cites Rule 9006(b) of the
Federal Rules of Bankruptcy Procedure and the case of In re
International Administrative Services, Inc., 408 F.3d 689
(11th Cir.2005) as support for this Court's authorization to
enlarge the time in which to file avoidance actions and
extend the statute of limitations as provided by 11 U.S.C. §
546.

At the time of the hearing on the underlying Motion, the
Court expressed concern several times that, while a trial
court could rule that a statute was tolled over a period of
time in regard to a particular defendant, could it extend the
statute with regard to unnamed and unidentified defendants
when there was no case or controversy before the Court?

The Doctrine of Equitable Tolling applies to every federal
statute of limitations. Holmberg v. Armbrecht, 327 U.S. 392,
66 S.Ct. 582, 90 L.Ed. 743 (1946). Unquestionably, I have
authority to equitably toll the statute of limitations as
provided under 11 U.S.C. § 546(a). Pugh v. Brook (In re
Pugh), 158 F.3d 530 (11th Cir.1998); In re M & L Business
Mach. Co, Inc., 75 F.3d 586 (10th Cir.1996); In re United
Ins. Management. Inc., 14 F.3d 1380 (9th Cir.1994); In re
International Administrative Services, Inc., 408 F.3d 689
(11th Cir.2005). The only support cited by the Trustee as to
whether I can equitably toll a statute when there is no case or
controversy pending was the In re International
Administrative Services, Inc. case. Id. That case is
distinguishable, however, from the facts presented by the
instant Motion in that there was a pending action before the
Bankruptcy Court at the time the Trustee filed his request to
extend the time within which to file claims against potential
future defendants. Though the Trustee filed adversary
complaints against several defendants in the In re
International Administrative Services, Inc . case after the
Bankruptcy Court extended the time in which to file those
complaints, the appeals court writes that the Trustee's ability
to investigate transfers were hampered by delayed document
production and withheld discovery responses. Unlike that
case, there is no action in any form pending before this
Court. It is unknown whether future defendants will even
assert the statute of limitations defense. It is for this reason
that the Court will deny the Trustee's request to extend the
time in which to file complaints and equitably toll the statute
of limitations in 11 U.S.C. § 546(a), without prejudice to
raise equitable tolling should the Trustee file adversary
complaints.

In re No. 1 Contracting Corp., Not Reported in B.R. (2012)

**\*2** An Order will follow.

**All Citations**

Not Reported in B.R., 2012 WL 4114818

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

In re No. 1 Contracting Corp., Not Reported in B.R. (2012)

---

**Footnotes**

[1]    Drafted with the assistance of Richard P. Rogers, Law Clerk.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

029

# EXHIBIT B

Case 1:23-bk-11082-VK    Doc 394    Filed 10/08/25    Entered 10/08/25 15:43:51    Desc
Main Document    Page 35 of 39

In re Walnut Hill, Inc., Not Reported in B.R. Rptr. (2018)

KeyCite Yellow Flag

Disagreed With by *In re Kwok*, Bankr.D.Conn., February 15, 2024

2018 WL 2672242
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. Connecticut,
Hartford Division.

IN RE: WALNUT HILL, INC., Debtor.

CASE No. 16–20960 (JJT)
|
Signed 06/01/2018

**Attorneys and Law Firms**

Joel M. Grafstein, Grafstein & Arcaro, Farmington, CT, for Debtor.

**MEMORANDUM OF DECISION ON THE TRUSTEE'S MOTION FOR EXTENSION <u>OF DEADLINE TO FILE AVOIDANCE ACTIONS GOVERNED BY 11 U.S.C. § 546(a)</u>**

James J. Tancredi, United States Bankruptcy Judge

**\*1** Pending before the Court is the Motion for Extension of Deadline to File Avoidance Actions Governed by 11 U.S.C. § 546(a) ("Motion") (ECF No. 195) filed by the Chapter 7 Trustee ("Trustee") and the corresponding Objections filed by APEX Healthcare Partners, LLC (ECF No. 210), Annemarie Griggs (ECF No. 211), and Grand Street Nursing, LLC (ECF No. 212). For the reasons set forth below, the Court denies the Motion.

## I. DISCUSSION

The Court must decide whether Rule 9006(b) of the Federal Rules of Bankruptcy Procedure applies to 11 U.S.C. § 546(a), providing the bankruptcy court with the authority to enlarge the Section 546(a) deadline for commencing avoidance actions. If Rule 9006(b) does not apply, then the Court must determine whether the doctrine of equitable tolling can be properly invoked before an adversary proceeding has been commenced. The Trustee has proffered facts to show cause for an extension under Rule 9006(b). In

this instance, however, the Court can rule on the Motion as a matter of law before the questions of fact are resolved.

*a. Application of Rule 9006(b) to 11 U.S.C. § 546(a)*

Section 546(a) of the U.S. Bankruptcy Code provides a two-year limitation to exercise avoidance powers. The Trustee has asked the Court to extend the statutory limitation by applying Rule 9006(b) of the Bankruptcy Rules to Section 546(a). Rule 9006(b) allows for enlargement of extension of certain deadlines when cause is shown.

By its plain language, Rule 9006(b) only applies to deadlines set "by these rules or by a notice given thereunder[,] [*sic*] or by order of court". Nowhere in the Rule does it mention statutory deadlines.

This Court (Krechevsky, J.) has addressed this issue in the past and held that Rule 9006(b) does not "permit[ ] a court to extend a time limitation set by Congress in a statute". *In re Damach, Inc.*, 235 B.R. 727, 731 (Bankr. D. Conn. 1999). Instead, it "permit[s] modification only of time limitations imposed by other rules or by the court." *Id.* In *In re Colad Group, Inc.*, 324 B.R. 208, 225 (Bankr. W.D.N.Y. 2005), the court held that "Bankruptcy Rule 9006 allows an enlargement or reduction of many of the time limits in the Bankruptcy Rules. However, [S]ection 546 (a) [*sic*] is a statute, not a rule." Consequently, the court held that it did not have the authority to act under Rule 9006 relative to statutory deadlines.[1]

While Judge Krechevsky, in dicta, in the *Matter of Sutera*, 157 B.R. 519, 523 (Bankr. D. Conn. 1993) also stated "that Congress intended that the Federal Rules of Bankruptcy Procedure be applicable in full, and without exception, to all provisions of the Bankruptcy Code", that decision only addressed the application of Rule 9006(a) to 11 U.S.C. § 546(a), *not* the reach of Rule 9006(b). Rule 9006(a) plainly provides that it applies to "*any statute* that does not specify a method of computing time." (Emphasis added.) However, Rule 9006(b) is noticeably missing the same, or similar, language involving its application to a statute. This distinction is highlighted by the fact that Judge Krechevsky six years later held that Rule 9006(b) could not modify substantive deadlines established by Congress. *In re Damach, Inc.*, 235 B.R. at 731.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

**\*2** Lastly, Congress has dictated that the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. Where the Rules and Code are inconsistent, the statutory Code controls. H.R. Rep. No. 95–595, pt. 1, at 449 (1977).

Rule 9006(b) cannot apply to Section 546(a) without violating the separation of powers preserved in the Constitution. Where the legislature has spoken authoritatively, it is not within the province of the judiciary to modify its determination. As Rule 9006(b) does not apply to Section 546(a), it is unnecessary for this Court to determine whether cause was shown for an extension of the statutory deadline.

### *b. Equitable Tolling*

The Trustee has also asked the Court to equitably toll the statute of limitations in Section 546(a) in conjunction with the request for a deadline extension under Rule 9006(b). These issues are separate and distinct.

Procedurally, the doctrine of equitable tolling is recognized as a response to a statute of limitations defense asserted in a pending litigation. *Long v. Abbott Mortg. Corp.*, 459 F. Supp. 108, 113 (D. Conn. 1978). The Trustee points to a case from the Eleventh Circuit Court of Appeals where the court held that Rule 9006(b) applies to all Federal Rules of Bankruptcy Procedure and seemingly relied upon Rule 9006(b) to justify its decision in enlarging the Section 546(a) deadline for starting avoidance actions. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 (11th Cir. 2005). The Court rejects that conclusion. Upon closer examination, the holding of the Circuit Court relied upon the doctrine of equitable tolling, which had been interposed after a statute of limitations defense was asserted in a pending adversary proceeding.

Section 546(a) is a statute of limitations, and like any statute of limitations, is subject to equitable tolling. *Id.* at 699. Where there was "fraud or extraordinary circumstances beyond the trustee's control, equitable tolling prevents the expiration of § 546(a)'s limitations period". *Id.*

All parties to this case acknowledge that an adversary proceeding has not been filed at this time. Pursuant to Section 546(a), the Trustee's statute of limitations for filing an adversary proceeding will expire on June 14, 2018, which has not yet come to pass. It is wholly premature and

procedurally flawed to address equitable tolling outside the context of an evidentiary hearing on the facts and circumstances to be proven in the adversary proceeding against specific defendants, once a statute of limitations defense has been asserted.

### II. CONCLUSION

The plain language of Rule 9006(b) prohibits this Court from enlarging the Section 546(a) statute of limitations. Additionally, reaching the issue of equitable tolling is premature and procedurally inappropriate at this time.

Accordingly, the Motion is denied, and the Objections are sustained consistent with this decision.

IT IS SO ORDERED in Hartford, Connecticut on this 1st day of June 2018.

**All Citations**

Not Reported in B.R. Rptr., 2018 WL 2672242

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

### Footnotes

[1]  This Court rejects the notion that Rule 9006(b) would support an extension of time for the expiration of the statute of limitations premised upon the fact that the statute of limitations in Section 546(a) terminates two years after an <u>order</u> for relief.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK TO TRUSTEE'S SECOND MOTION FOR ORDER EXTENDING TIME TO FILE AVOIDANCE ACTIONS UNDER 11 U.S.C. 546 AND REQUEST FOR DETERMINATION THAT FIRST MOTION DID NOT APPLY TO GLOBAL ONE; DECLARATIONS OF JONATHAN T. EDWARDS AND ELISSA D. MILLER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 8, 2025  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that

the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Ron Bender**    rb@lnbyg.com
- **Debra Brand**    brandlawcorp@gmail.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **David Keith Gottlieb (TR)**    dkgtrustee@dkgallc.com, dgottlieb@iq7technology.com,rjohnson@dkgallc.com,akuras@dkgallc.com;ecf.alert+Gottlieb@titlexi.com
- **Alan A Greenberg**    AGreenberg@GGTrialLaw.com, LRodriguez@GGTrialLaw.com
- **Eric P Israel**    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Sheryl K Ith**    sith@cookseylaw.com
- **Lance N Jurich**    ljurich@loeb.com, pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
- **Jason B Komorsky**    ecf@bg.law, jkomorsky@bg.law
- **Jeffrey S Kwong**    jsk@lnbyg.com, jsk@ecf.inforuptcy.com
- **Steven Todd Lowe**    steven@lowelaw.com
- **Elissa Miller**    elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com
- **Steven A Morris**    morris@quantumlawgroup.com, gsuchniak@quantumlawgroup.com,mbigaud@quantumlawgroup.com,deer@quantumlawgroup.com
- **Lorenzo Nunez**    CSBK@GMFINANCIAL.COM
- **David L Oberg**    david@oberglawapc.com
- **Madison B Oberg**    madison@oberglawapc.com
- **Matthew D. Resnik**    matt@rhmfirm.com, roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com
- **Gregory A Rougeau**    grougeau@brlawsf.com
- **Charles Shamash**    cs@locs.com, generalbox@locs.com
- **Wendy Thomas**    wendyt@ttelawgroup.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Herlinda Rebeca Vasquez**    rebecavasquezesq@gmail.com
- **Robert M Yaspan - SUSPENDED BK -**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

☐ Service information continued on attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2.  SERVED BY UNITED STATES MAIL**:

On (*date*) October 8, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Victoria S. Kaufman
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 354
Woodland Hills, CA 91367

☐ Service information continued on attached page.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 8, 2025 | Cheryl Caldwell | */s/ Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                             **F 9013-3.1.PROOF.SERVICE**