1  Elissa D. Miller (CA Bar No. 120029)
    elissa.miller@gmlaw.com
2  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
3  Los Angeles, California 90067
   Telephone: 213.626.2311
4  Facsimile: 954.771.9264

5  Attorneys for Global One Financial, a division
   of Synovus Bank
6

7                 **UNITED STATES BANKRUPTCY COURT**

8                 **CENTRAL DISTRICT OF CALIFORNIA**

9                 **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 10  In re | Case No. 1:23-bk-11082-VK |
| 11  Philip M. Lawrence, II, | Chapter 7 |
| 12          Debtor. | **GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK NOTICE OF MOTION AND MOTION TO QUASH 2004 SUBPOENA AND FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF JAMES J. McBRAYER, ALAN G. SNIPES AND ELISSA D. MILLER IN SUPPORT HEREOF** |
| | **[Declaration of Thomas F. Gristina Filed Concurrently Herewith]** |
| | Production Date:  November 19, 2025 (Pursuant to Agreement) |
| | **Hearing** |
| | Date:      November 12, 2025 |
| | Time:      1:30 p.m. |
| | Place:     Courtroom 301 or by Zoom |
| |            21041 Burbank Boulevard |
| |            Woodland Hills, CA 91367 |

EDM 62588901v1

**TO THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY
JUDGE AND TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on November 12, 2025 at 1:30 p.m. or as soon
thereafter as this matter may be heard in the above Courtroom 301 or by Zoom in the
above entitled Court, the Honorable Victoria Kaufman, United States Bankruptcy Judge
presiding, Global One Financial, a division of Synovus Bank ("Global One"), moves this
Court pursuant to FRBP 7026 and F.R.Civ.P. 26(c), made applicable by LBR 2004-1(f),
and F.R.Civ.P. 45(c) made applicable by FRBP 9016, for a protective order and for an
order quashing the subpoena which is attached hereto as **Exhibit 1** (the "2004
Subpoena").[1]

Global One moves for relief on two grounds. First, the Trustee's requests are
overbroad, burdensome, and oppressive; he seeks the production of thousands of
documents, many of which have already been provided to the Trustee's counsel and the
reproduction of which would take hundreds of hours. Second, the Trustee's requests for
Global One's underwriting practices (both in general and in connection with the loan to
the Debtor), seek Global One's confidential trade secrets.

This Motion is based on this Notice and Motion for Protective Order and to Quash
2004 Subpoena, the Attached Memorandum of Points and Authorities and Declarations
of James J. McBrayer and Alan G. Snipes and Elissa D. Miller; the Declaration of
Thomas F. Gristina filed concurrently herewith, all pleadings and papers filed in this
Bankruptcy Case and on such other evidence and argument as made be presented at
the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that in accordance with LBR 2024-1(f), this
Motion is served and filed not less than 14 days before the date of the examination and

---

[1] The 2004 Subpoena was authorized by an order entered October 23, 2025. On October
28, 2025 [Dkt. No. 406], the Trustee agreed in writing to move the production date to
November 19, 2025. See **Exhibit 8** to Declaration of Elissa D. Miller ("Miller Decl.")
Therefore, this Motion is timely filed by November 5, 2025, and must be heard not later
than November 17, 2025, pursuant to LBR 2004-1(f).

1   set for hearing not less than 2 days before the scheduled examination. (The date set is

2   the last court date currently available on the Court's calendar for a hearing before the

3   scheduled production date of November 19, 2025.)

4   DATED:  October 28, 2025                    **Respectfully Submitted,**

5                                               **GREENSPOON MARDER LLP**

6

7                                               By:  _____/s/ Elissa D. Miller_____

8                                                    Elissa D. Miller
                                                     Attorneys for Global One Financial, a Division
9                                                    of Synovus Bank

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES IN

## SUPPORT OF MOTION TO QUASH AND FOR A PROTECTIVE ORDER

### I.

### PREFATORY STATEMENT

By his 2004 Subpoena, the Trustee seeks thousands of pages of documents, most of which have already been provided to the Trustee's counsel and the reproduction of which would take hundreds of hours. More seriously, the Trustee demands extremely confidential trade secrets—Global One's underwriting guidelines—and insists on sharing these trade secrets with his expert witness Steven Roth. This is particularly problematic because Mr. Roth currently serves as an expert witness in unrelated litigation against Global One in which the plaintiff was unable to obtain these guidelines from Global One. For these reasons, the Court should quash the 2004 Subpoena. At a minimum, however, the Court should issue a protective order that protects Global One's confidential trade secrets, particularly from being abused by Mr. Roth in the unrelated litigation.

### II.

### PERTINENT FACTS

#### A.    Prepetition Life Insurance Loan and the Bankruptcy Case.

As set forth between Global One and the Trustee for Relief from Stay [Dkt. No. 154], the underlying facts are not in dispute and are as follows:

Prior to the filing of this case, on December 22, 2016, the Debtor obtained two whole life insurance policies from Life Insurance Company of the Southwest (the "Insurer"), one policy on the life of the Debtor in the face amount of $50,000,000 (Insurance Contract No. LS0539064) and the second policy on the life of Urbana Chapa in the face amount of $10,000,000 (Insurance Contract No. LS 0539030) (jointly, the "Policies" and each, a "Policy").

The Policy premiums were financed by a loan from Global One to the Debtor's living trust, PLII Living Trust (the "Trust"), and secured by: (1) collateral assignments of the Policies; and (2) posted cash or other collateral held in escrow (the "Other

1   Collateral"). Pursuant to California Law, Global One properly perfected its security

2   interest in the Policies, the escrow account and surrender value of the Policies by

3   providing notice to the Insurer of the Collateral Assignment on the Insurer's form, taking

4   control of the escrow account, and taking possession of the original policies. The Insurer

5   specifically acknowledged the collateral assignments, which granted Global One all right,

6   title, and interest in and to the Policies.

7        On August 3, 2023, Debtor filed a Chapter 11 bankruptcy petition, commencing

8   this case (the "Petition Date"). The case was converted to Chapter 7 just over one month

9   later, on September 12, 2023. [Dkt. No. 72] The Trustee was appointed on September

10  14, 2023. [Dkt. No. 73]

11       Approximately four months after the Trustee was appointed, on January 10, 2024,

12  the Trustee and Global One entered into the Stipulation for Immediate Relief from Stay

13  so that Global One could foreclose on its Collateral, the Policies, and the escrow fund.

14  [Dkt. No. 154] Shortly thereafter, Global One submitted the required surrender

15  documents to the Insurer and the Insurer wired Global One the surrender value of the

16  Policies which Global One received on February 27, 2024 (Chapa's Policy) and February

17  29, 2024 (Debtor's Policy). After applying all amounts received (including the escrow

18  funds), Global One still had a deficiency of $206,681.49, but, in connection with the

19  Stipulation for Immediate Relief from Stay, Global One had already waived its right to a

20  deficiency claim in the bankruptcy.

21       On February 29, 2024, Global One advised the Trustee of the termination of the

22  Policies and the receipt of the payments. (See **Exhibit 4** to  Miller Decl.

23       **B.**     **The 2004 Subpoena Is The Third "Bite At The Apple"--Prior Discovery**

24            **Efforts.**

25       As explained below, the 2004 Subpoena is at least the third "bite at the apple" with

26  respect to this discovery. In 2021, the Debtor sued the Insurer and Policy broker (Stan

27  Magnus/Stan Magnus Insurance Agent, Inc.) in the Los Angeles Superior Court (Case

28  No. 21SMCV01770, the "State Court Litigation") [**Exhibit 9** to Miller Decl.). In that action,

1    the Insurer issued a third-party subpoena to Global One pursuant to which Global One

2    produced approximately 2,500 pages of documents initially to the insurer.  On March 15,

3    2023 and April 25, 2023, the first approximately 284 pages were forwarded by the Insurer

4    to Debtor's counsel and on September 19, 2023, Global One forwarded a share file of the

5    documents to the Debtor's attorney—Jason Komorsky of BG Law LLP (Snipes Decl. ¶4

6    and **Exhibits 2 and 3)**

7            On September 14, 2023, upon his appointment, the Trustee succeeded to the

8    Debtor's interests in the State Court Litigation. By Order dated January 4, 204 [Dkt. No.

9    152], the Trustee employed the Debtor's counsel—BG Law LLP (Jason Komorsky) and

10   Engstrom, Lipscomb & Lack (Steven Shuman)—to continue the State Court Litigation as

11   his special litigation counsel ("Special Counsel"). Shortly after the Trustee's appointment,

12   on or about October 20, 2023, Special Counsel issued a third-party subpoena (the "3rd

13   Party Subpoena") to Global One seeking extensive policy, financing, servicing,

14   communications, compensation, and underwriting materials concerning the Debtor's

15   premium-financed policies (34 categories in total). Importantly, as detailed in the meet

16   and confer emails between Elissa D. Miller and Joseph Rothberg regarding the 2004

17   Subpoena, aside from the date of issuance, the 2004 Subpoena seeks the same

18   documents sought by such 3rd Party Subpoena. (**Exhibit 8** to Miller Decl.)

19           Global One moved to quash the 3rd Party Subpoena in the Superior Court of

20   Muscogee County, Georgia (the subpoena was issued in Georgia, Synovus's domicile)

21   on the grounds (among others) that the subpoena requests were overbroad, unduly

22   burdensome/oppressive as it sought documents already produced in the State Court

23   Litigation, sought extensive ESI, and inappropriately demanded Global One's proprietary

24   underwriting guidelines and other trade secrets protected by the Georgia Trade Secrets

25   Act. (Id.)

26           While Global One's motion to quash was pending in the Georgia Superior Court,

27   the Trustee, disregarding jurisdiction boundaries, filed a motion to compel production of

28   the 3rd Party Subpoena in the Los Angeles Superior Court. (Miller Decal ¶3 and **Exhibits**

**5 and 6**). However, on February 20, 2024 after a full briefing and hearing attended by Trustee's Special Counsel, and before the Trustee's improper motion to compel in Los Angeles was heard, the Georgia Superior Court granted Global One's motion, quashing the 3rd Party Subpoena in its entirety. (**Exhibit 6** to Miller Decl) Being so apprised, and after briefing and argument, the Los Angeles Superior Court denied the Trustee's motion on April 8, 2024, (**Exhibit 7** to Miller Decl.) agreeing with Global One that the Georgia Superior Court had jurisdiction and had already quashed the operative subpoena. (Id.)

In short, the Trustee has already fully litigated these discovery issues against Global One. The Georgia Superior Court ruled that the Trustee's requests are unduly burdensome and seek confidential information and trade secrets. And while the Trustee seeks refuge in the breadth of FRBP 2004, that rule does not obviate F.R.Civ.P. 45's protections against unduly burdensome requests and against the production of confidential information. It is these protections that the Georgia Superior Court has already invoked to quash the Trustee's requests and these protections that necessitate the Court to quash the 2004 Subpoena.

**III.**

**THE FEDERAL RULES PROTECT GLOBAL ONE**

**FROM FURTHER PRODUCTION UNDER THE 2004 SUBPOENA**

**A.    Legal Standard**

Pursuant to LBR 2004-1(f), "The party whose examination is requested may file a motion for protective order if grounds exist under FRBP 7026 and F.R.Civ.P. 26(c)." In addition, FRBP 9016 incorporates F.R.Civ.P. 45, which provides that a court "must" quash or modify a subpoena that "subjects a person to undue burden." F.R.Civ.P. 45(d)(3)(A). This applies to a FRBP 2004 request. *In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997). Further, where a subpoena is shown to have been served for an improper purpose, such as harassment, it may be quashed in its entirety. *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (quashing subpoena and awarding fees where "subpoena was overly burdensome and served for an improper purpose"); *SEC v.*

1    *Brigadoon Scotch Distrib.*, 480 F.2d 1047, 1056 (2nd Cir. 1973) ("[I]f a subpoena were

2    not issued in good faith but to harass or pressure the subject of an investigation, or for

3    any other improper purpose, then the court would be bound not to enforce the subpoena

4    as issued.").  Similarly, "the court … may, on motion, quash or modify the subpoena if it

5    requires disclosure of "confidential …commercial information." F.R.Civ.P. 45(d)(3)(B)(1).

6         While "[a]ccess to relevant documents is [] necessary to the search for truth," the

7    question under Fed. R. Civ. P. 45(c)(3)(A)(iv) "is whether the proposed production

8    exposes [the subpoenaed party] to 'significant expense' or 'undue burden.'" *Wilbur v. City

9    of Mount Vernon*, No. C11-1100RSL, 2012 U.S. Dist. LEXIS 91473, at *9 (W.D. Wash.

10   June 27, 2012). "A party moving to quash on the grounds of undue burden pursuant to

11   FRCP 45(c)(3)(A)(iv) bears the burden" of proving that "compliance with the subpoena

12   would be 'unreasonable and oppressive.'" *Leanders v. Yassai (In re Yassai)*, 225 B.R.

13   478, 483-84 (Bankr. C.D. Cal.1998). "In determining whether a subpoena poses an

14   undue burden, courts weigh the burden to the subpoenaed party against the value of the

15   information to the serving party." *AECOM Technical Servs., Inc. v. Zachry Construction

16   Corp.*, Case No. 2:19-mc- 00201-JAK (RAOx), 2020 WL 1934973, at *3 (C.D. Cal. Feb.

17   3, 2020). "Whether a subpoena imposes an undue burden is a 'case specific inquiry.'" *Id.*

18   "Courts should consider the need of the requesting party for the information, the burden

19   on the non-party in complying with the subpoena, the relevance of the requested

20   information, and the breadth or specifics of the request." *Id.* "Courts are 'reluctant to

21   require a non-party to provide discovery that can be provided by a party.'" *Id.* "Common

22   examples of undue burden include: 'untimely service, inability to appear, inability to

23   produce requested documents or things, failure to identify items requested, or excessive

24   costs.'" *In re Yassai*, 225 B.R. at 484.

25

26

27

28

**B.**   **The Facts of this Case Mandate the Court Quash the 2004 Subpoena or, at a Minimum Enter a Robust Protective Order.**

**1.**   **The Subpoena is Unduly Burdensome Because it Would be Excessively Expensive and Seeks Documents Already Produced to Trustee's Special Counsel**

As noted above, Global One has produced over 2,500 pages of documents to the Trustee's Special Counsel. Snipes  Decl., ¶3. It would be very expensive and internally distracting for Global One to go through its files again. (Declaration of James J. McBrayer ("McBrayer Decl") ¶3) As noted in the McBrayer Decl., the 2004 Subpoena seeks thousands of pages of documents related to the loan to the Debtor and many other documents that are not related to the loan. The 2004 Subpoena presumably extends to emails and other ESI, which can only be gathered by Synovus Bank IT personnel. It would take hundreds of hours to locate and compile all responsive documents. And then, those documents would need to be reviewed by legal counsel for responsiveness and attorney-client privilege issues. Mr. McBrayer estimates the costs of producing the documents requested in the Subpoena would be in excess of $25,000.00. (McBrayer Decl. ¶6)

Nonetheless, Global One has offered to update the financial information contained in the prior production to run through February 2024 (when the collateral was liquidated), but other than that, Global One is not aware of any aspect of the prior production that requires updating. (**Exhibit 8** to Miller Decl.) Global One has asked Trustee's counsel to delineate what documents the Trustee is requesting that were not covered by prior production. But to date, Global One has received no response. (Miller Decl. ¶5)

In contrast, the Trustee's 2004 Subpoena serves no conceivable purpose, as the Trustee's claims (if any) are time-barred. The two-year window for filing avoidance claims against Global One has expired. So too has the two-year extension of the statute of limitations under 11 U.S.C. § 108(a). And the longest conceivable statute of limitations

1   with respect to any California state law claims is four years.[2] Accordingly, the information

2   sought under the 2004 Subpoena has no value to the Trustee. The Court should

3   accordingly quash the 2004 Subpoena on the grounds that it is duplicative and unduly

4   burdensome.

5       **2.    <u>Global One's Underwriting Policies are its Confidential Trade</u>**

6       **<u>Secrets</u>**

7           The Court should quash 2004 Subpoena request Nos. 5 and 6 pursuant to

8   F.R.Civ.P. 45(d)(3)(B)(i) because they require disclosure of trade secrets and other

9   confidential research, development, or commercial information. Request 5 seeks all

10  documents that "refer, relate to or evidence Global One's underwriting guidelines, rules,

11  policies and procedures pertaining to your underwriting of the Policies and Request No. 6

12  Seeks the same regarding the guidelines in effect when the Policies were underwritten.  .

13  In other words the Trustee seek the information regarding the underwriting policies both

14  as applied to the Debtor and wholly unrelated to the Debtor. In addition to being

15  overbroad, the requests are barred because these are Global One's confidential trade

16  secrets, as the Georgia Superior Court has already recognized in quashing the 3rd Party

17  Subpoena.

18          As used in F.R.Civ.P. 45, "Confidential commercial information is information

19  which, if disclosed, would cause substantial economic harm to the competitive position of

20  the entity from whom the information was obtained. *Diamond State Ins. Co. v. Rebel Oil*

21  *Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994). As the party seeking protection of its

22  confidential commercial trade secrets, Global One "has the burden of showing that the

23  _____

24  [2] The Debtor commenced the State Court Litigation on November 5, 2021; at that point, if
    not sooner, the Debtor knew or had reason to know of any claims against Global One.

25  While Bankruptcy Code section 108 extends the statute it does not do so indefinitely. It
    only extends  to the later of (a)(1)  The end of the original nonbankruptcy time period,  of

26  such period occurring on or after the commencement of the case; or; or (2) Two years
    after the entry of the order for relief.

27

28

1    privilege applies to a given set of documents." *Allstate Ins. Co. v. Shah*, No. 2:15-cv-

2    01786-APG-CWH, 2018 U.S. Dist. LEXIS 247335, at *6 (D. Nev. June 20, 2018) (citing

3    F.R.C.P. 45(d)). Global One must also "'demonstrate by competent evidence' that the

4    information it is seeking to protect is a trade secret, which would be harmful if disclosed."

5    *Id*, (citing *Upjohn Co. v. Hygieia Biological Labs*, 151 F.R.D. 355, 358 (E.D. Cal. 1993).

6    Once the party seeking protection makes this showing, "the burden shifts to the party

7    seeking discovery to establish that the disclosure of trade secrets is relevant and

8    necessary to the action." *Centurion Industries, Inc. v. Warren Steurer & Associates*, 665

9    F.2d 323, 325 (10th Cir. 1981).

10        The Georgia Superior Court already found the underwriting guidelines are

11   protected trade secrets under Georgia law. (Miller Decl., **Exhibits 5 & 6**) The guidelines

12   are also trade secrets under California law. As defined by Section 3426.1(d) of the

13   California Civil Code, a "trade secret" is "information, including a formula, pattern,

14   compilation, program, devise, method, technique, or process, that: (1) Derives

15   independent economic value, actual or potential, from not being generally known to the

16   public or to other persons who can obtain economic value from its disclosure or use; and

17   (2) Is the subject of efforts that are reasonable under the circumstances to maintain its

18   secrecy."

19        Global One's underwriting guidelines clearly qualify as "trade secrets" under and

20   are confidential information within the meaning of F.R.Civ.P. 45 and California Law.

21   Global One utilizes underwriting guidelines internally to evaluate loans, price them, and

22   provide them to prospective customers. (McBrayer Dec., ¶8). The underwriting guidelines

23   are at the heart of Global One's business as they provide criteria by which Global One

24   qualifies potential loans. *Id*. Global One derives substantial value from the secrecy of its

25   underwriting guidelines, and it does not provide its underwriting guidelines to any outside

26   parties (including insurers or reinsurers). (McBrayer Dec., ¶8; *see also* Snipes Dec., ¶6).

27   At most, Global One provides templated copies of promissory notes and closing

28

documents as well as the following generic statements from its marketing materials. (McBrayer Dec., ¶8).

- Financing new and in-force policies
- Refinancing of existing loans available (including policy loans)
- No maximum loan amount
- In-force cash value/cash-out lending
- Credit extended to net worth as low as $3 million
- Minimum first-year premium: $150,000
- Interest rate management options are available (variable rate, caps, fixed rate, etc.)

Because Global One derives economic value from its underwriting guidelines continuing to be secret and takes reasonable efforts to protect their secrecy, the underwriting guidelines are trade secrets and confidential information protected by F.R.Civ.P. 45.

**C.**    **Any Protective Order Must Exclude Mr. Roth From Being Able to View the Underwriting Guidelines.**

If the Court does not quash request Nos. 5 and 6, the Court should impose a protective order requiring that the materials produce only be the Trustee and his attorneys' eyes only and the order should specifically bar Mr. Roth from being able to view the confidential documents.

Under FRBP 7026 and F.R.Civ.P. 26(c)(1), as made applicable by LBR 2004-1(f), "[t]he court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense."  As the party seeking protection of certain information sought in discovery, Global One "has the burden of proving 'good cause,' which requires a showing that "specific prejudice or harm will result' if the protective order is not granted." *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011). And, as noted above, F.R.Civ.P. protects against discovery served for an improper purpose. *Mattel Inc.*, 353 F.3d at 814.

"Good cause" exists for the Court to protect its underwriting guidelines from being viewed by Mr. Roth. Mr. Roth serves as an expert witness in an unrelated matter pending against Global One in the Middle District of Georgia—*Global One Financial et al. v. Patel et al.*, (M.D. Ga. Case No. 4:23-cv-00164-CDL) (the "Patel Litigation"). [CITE Snipes declaration] The plaintiffs in the Patel Litigation requested and were unable to obtain from Global One the same underwriting guidelines that the Trustee now seeks by the 2004 Subpoena. [Declaration of Thomas F. Gristina Decl.]

It is somewhat surprising that Mr. Roth is still in the picture on the Trustee's side (and that the Trustee insists on sharing the underwriting guidelines with Mr. Roth), as the State Court Litigation (in which Mr. Roth was engaged by the Trustee) has long since settled. [Dkt. No. 368 and Miller Decl, **Exhibit 9)[3]**  But it is no surprise that Mr. Roth desperately wants to see these materials, as he has been unable to obtain them in the Patel Litigation and trial in the Patel Litigation is scheduled for next March.  [Gristina Decl.]

"Many courts recognize that "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the applicable Federal Rules of Civil Procedure and not Rule 2004." *In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019). "Courts have exhibited similar concerns when confronted with the propriety of Rule 2004 examinations where the party requesting the Rule 2004 examination is to benefit in pending litigation outside of the Bankruptcy Court." *Id. See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 515-17 (Bankr. E.D.N.Y 1991) (asserting the principle that "Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceedings pending before another tribunal"). Mr. Roth clearly has an interest in obtaining the information requested pursuant to the Trustee's 2004 examination. Mr. Roth has already unsuccessfully sought this information in the Patel

---

[3] Indeed, this Court approved a settlement of the State Court Litigation by Order entered on June 266, 2025. [Dkt. No. 368].

1  Litigation and is now trying his luck in a different forum. Because Mr. Roth likely seeks

2  discovery in this matter to aid his litigation in a wholly unrelated proceeding, this Court

3  should, at a minimum, enter a protective order prohibiting him from access to any

4  document which is related to Global One's confidential trade secrets.

5          In the absence of a protective order barring Mr. Roth's access to Global One's

6  confidential underwriting guidelines (at least until after trial in the Patel Litigation), the

7  2004 Subpoena process will become a trojan horse for discovery in another pending

8  action entirely unrelated to this bankruptcy case. That would be a highly abusive and

9  improper use of FRBP 2004. Moreover, if Mr. Roth uses Global One's information in the

10  Patel Litigation or other similar litigation, it will inevitably become public through

11  pleadings, arguments, or public testimony, which would be irreparably harmful to Global

12  One's competitive position in the premium-finance market. Therefore, in the event the

13  Court orders Global One to produce any information regarding its underwriting guidelines

14  and policies, Global One respectfully requests that any protective order be for the Trustee

15  and attorneys eyes only and specifically exclude Mr. Roth or any agent, representative,

16  or employee working with Mr. Roth from in any way being provided access to information

17  regarding the contents of the documents or Global One's underwriting policies.

18                                          **IV.**

19                                  **<u>CONCLUSION</u>**

20          For the reasons set forth herein, Global One respectfully requests that the Court

21  quash in its entirety the 2004 Subpoena because it is unduly burdensome and duplicative

22  of prior discovery requests that have been fully resolved. In the alternative, the Court

23  should (A) limit the production to those financial records necessary to bring the financial

24  information current to the date of payoff (as offered by Global One) and (B) issue an

25

26

27

28

1 | appropriate protective order which, among other things, excludes Mr. Roth and his

2 | associates from being able to view or possess Global One's underwriting policies and

3 | related materials.

4

5 | DATED:  November 5, 2025          **Respectfully submitted,**

6 |                                            **GREENSPOON MARDER LLP**

7

8 |                                   By:          _/s/ Elissa D. Miller_

9 |                                            Elissa D. Miller
                                            Attorneys for Global One Financial, a
10 |                                           Division of Synovus Bank

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JAMES J. McBRAYER

I, James J. McBrayer, declare,

1.     I am over the age of 18. I am the Chief Operating Officer of Global One Financial, a division of Synovus Bank. Synovus Bank is a Georgia corporation with a principal place of business and registered office in Columbus, Muscogee County, Georgia. I know all of the facts set forth herein of my own personal knowledge and if called as a witness would and could competently testify hereto. I make this Declaration in support of the "*Global One Financial, A Division Of Synovus Bank's Notice Of Motion And Motion To Quash 2004 Subpoena And For A Protective Order."*

2.     On October 23, 2023, Synovus Bank (named as Synovus Bank fka Global One Financial, Inc.) was served with a third-party subpoena for the production of evidence (the "Subpoena") which sought documents and information related to the case of *Philip M. Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*, Case Number 21SMCV01770, Los Angeles Superior Court, Case Number 21SMCV01770 (the "State Court Lawsuit"), which lawsuit, I understand, was taken over by the Trustee.

3.     In 2023 Global One received a subpoena from one of the Insurer in the State Court Lawsuit. In response to that subpoena, Global One produced 2,519 pages of documents which contained the entire loan file maintained by Global One such as loan applications and loan documents. The remaining documents in the 2,519-page production consisted of various emails and attachments related to the Debtor's loan that were located by Global One. A copy of this production to Debtor's attorneys, now the Trustee's special counsel by the Defendant is detailed in the Declaration of Global One's counsel Alan Snipes attached to this Motion.

4.     Attached hereto as **Exhibit 1** is the 2004 Subpoena which was attached to the 2004 Motion. I have reviewed the 2004 Subpoena. As did the Subpoena in the Lawrence Lawsuit, the 2004 Subpoena has extensive definitions which are then incorporated into the document requests.

1    5.    The document requests seek:

2         All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that

3  REFER, RELATE TO any ledgers you kept concerning any loan to LAWRENCE.

4         All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that

5  REFER, RELATE TO, or EVIDENCE the component amounts (i.e., principal, interest,

6  fees, etc.) owed on YOUR loan to LAWRENCE at the time YOU foreclosed on the

7  collateral to that loan.

8         All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that

9  REFER, RELATE TO any documents signed by LAWRENCE.

10        All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL

11  evidencing, reflecting, or pertaining to the origination of the loan relating to the

12  POLICIES.

13        All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL

14  evidencing, reflecting, or pertaining to YOUR underwriting of the POLICIES.

15        All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that

16  REFER, RELATE TO, OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules,

17  policies, and procedures in effect when the POLICIES were being underwritten.

18    6.    Given the breadth of the definitions as applied to document requests, the

19  Subpoena seeks thousands of pages of documents related to the loan to the Debtor as

20  well as many other documents that are not related to the loan. This would presumably

21  also include emails, which can only be gathered by Synovus Bank IT personnel. That

22  process is very time-consuming and expensive. In my estimation, it would take hundreds

23  of hours of research and gathering time to compile all of the documents requested. Those

24  documents would then need to be reviewed by legal counsel for responsiveness and

25  attorney-client privilege issues. Moreover, the Trustee's counsel is already in possession

26  of many of these documents based on the prior production.

27

28

7.    In my estimation, to produce those documents again and to update the prior 2023 production, the costs of compiling and producing the documents requested in the Subpoena could be more than $25,000.00.

8.    Global One maintains underwriting guidelines that it utilizes internally to evaluate loans, price them, and provide them to prospective customers. Those underwriting guidelines are at the very heart of Global One's business as they provide criteria by which Global One qualifies potential loans. Global One considers its underwriting guidelines as material trade secrets and takes extensive steps to guard against their release to the general public. In the competitive environment in which Global One operates, a release of its internal underwriting criteria would be incredibly harmful to Global One's business interests. Global One does not provide its underwriting guidelines to any insurers or reinsurers. At most it provides templated copies of promissory notes and closing documents as well as the following from its marketing materials.

- Financing new and in-force policies
- Refinancing of existing loans available (including policy loans)
- No maximum loan amount
- In-force cash value/cash-out lending
- Credit extended to net worth as low as $3 million
- Minimum first-year premium: $150,000
- Interest rate management options are available (variable rate, caps, fixed rate, etc.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 5, 2025 at Atlanta, GA.

_James J. McBrayer_

## DECLARATION OF ALAN G. SNIPES

I, Alan G. Snipes Declare,

1.    I am an attorney licensed to practice in the State of Georgia. I am a member of Page, Scrantom, Sprouse, Tucker & Ford, P.C., a Georgia Law Firm, and counsel for Global One. I know all of the facts set forth herein of my own personal knowledge and if called as a witness would and could competently testify hereto. I make this Declaration in support of the "*Global One Financial, A Division Of Synovus Bank's Notice Of Motion And Motion To Quash 2004 Subpoena And For A Protective Order."*

2.    I am the Attorney who has represented Global One in connection with the discovery sought by Plaintiffs from Global One in the Georgia Superior Court case. I have represented Global One and/or Synovus Bank in this and other matters for over 10 years. As such, I am familiar with Global One and its merger into Synovus Bank.

3.    Prior to September 2023, I worked with Global One to produce documents to the Insurer in the State Court Litigation. Prior to September 15, 2023, Mr. Komorsky contacted Global One directly regarding production of documents despite that he was aware that I was representing them. On September 15, 2023, I wrote to Mr. Komorsky regarding the contact and also included an offer to provide a link to a ShareFile with documents already produced to the Insurer. I specifically identified the documents as "bates numbered GLOB PLII 000001-002519. A true and correct copy of my September 15, 2023, letter is attached hereto as **Exhibit 2.**

4.    In an email dated September 15, 2023, Mr. Komorsky responded, "there seems to be a disconnect. the Insurer forwarded your productions. The first production on March 15, 2023, had 281 pages and the second production on April 25 had 3 pages for a total of 284 pages." But Mr. Komorsky further stated, he had not seen the thousands of pages referenced in my September 15, 2023, letter. On September 18, 2023, I responded, "I am showing we made a supplemental production to them on or about April 10, 2023, with a couple thousand pages. My paralegal, Debra Guy (copied here), will

1 | send you a share file link to those documents." A true and correct copy of my email

2 | string with Mr. Komorsky is attached hereto as **Exhibit 3.**

3 |     5.    At no time thereafter until Mr. Shuman indicated during the meet and confer

4 | regarding this case that the first 286 pages were missing, had Mr. Komorsky or anyone

5 | else associated with the State Court Litigation in any way advised me that there were

6 | documents missing.

7 |     6.    I have represented Global One over the years in many matters. At no time

8 | has Global One produced its underwriting guidelines. Each time such documents are

9 | requested, Global One objects on the grounds that the documents are its confidential

10 | trade secrets.

11 |     I declare under penalty of perjury under the laws of the State of California that the

12 | foregoing is true and correct.

13 |     Executed on November 5th, 2025 at Columbus, GA.

15 | Alan G. Snipes

## __DECLARATION OF ELISSA D. MILLER__

I, Elissa D. Miller, declare:

1.     I am an attorney licensed to practice in the State of California and before this Court. I am a member of Greenspoon Marder LLP, attorneys of record for Global One Financial, a division of Synovus Bank ("Global One"). I know all of the facts set forth herein of my own personal knowledge and if called as a witness could and would competently testify hereto. I make this Declaration in Support of the "*Global One Financial, A Division Of Synovus Bank's Notice Of Motion And Motion To Quash 2004 Subpoena And For A Protective Order.*"  I have been the attorney responsible for representing Global One in this Case from January 2024 through present.

2.     On February 29, 2024. I advised Mr. Kwong that the Policies had been terminated and that after application of the collateral, Global One had a shortfall of $206,681.49. Mr. Kwong responded stating, "Thanks for the Update, Elissa." A true and correct copy of my email without attachments is attached hereto as **Exhibit 4**.

3.     Commencing in March 2024, I represented Global One in the State Court Litigation in connection with a Motion to Compel Global One to produce documents in response to the 2003 3rd Party Subpoena. On March 6, 2024 I filed an Opposition to the Motion together with a separate Declaration of Alan G. Snipes, true and correct copies of which are attached hereto as **Exhibit 5** and **6**.  On March 19, 2024, I and Steven Shuman of Engstrom Lipscomb and Lack appeared in Department 0 of the Los Angeles Superior Court, Central District for a hearing on the Motion.  After argument, the Court denied the Motion and on April 8, 2024, entered the Order, a true and correct copy of which is attached hereto as **Exhibit 7**. The Court is requested to take Judicial Notice of Exhibits 4, 5 and 6 pursuant to Fed. R Evid. 201.  Attached to Exhibit 5, are the Georgia Motion to Quash the 2003 3rd Party Subpoena issued in Georgia, the separately filed Declaration of James J. McBrayer in Support thereof and the Order granting the Motion to Quash.

4.      On October 24, 2025, after the Court entered the 2004 Order, I wrote to Joseph Rothberg to meet and confer prior to filing this Motion to Quash and for a Protective Order. In that email I asked that the Trustee agree to continue the date for production as, although the Subpoena had not yet been served, the last day to file the motion based on the production date in the Motion, was Wednesday, October 29, 2025. Not until October 28, 2025, at 2:02 p.m. did I receive a response from Mr. Rothberg addressing both my request to continue the production date and the meet and confer issues. Mr. Rothberg, on behalf of the Trustee agreed to extend the production date to November 19, 2025. Attached hereto as **Exhibit 8** is a true and correct copy of my email string with Joseph Rothberg from October 28, 2025, confirming the November 19, 2025, production date and which also includes our meet and confer regarding this Motion. This Motion is filed as, despite good faith attempts, the parties could not reach an agreement.

5.      Attached hereto as **Exhibit 9** is a true and correct copy of the first two pages of the Docket from the Superior Court Litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 5, 2025, at Los Angeles, California.

_____/s/ *Elissa D. Miller*_____
Elissa D. Miller

# EXHIBIT 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central _____ District of California _____

In re Philip M. Lawrence II
_____
                    Debtor

*(Complete if issued in an adversary proceeding)*

_____
                    Plaintiff

v.

_____
                    Defendant

Case No. 1:23-bk-11082-VK

Chapter 7

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Global One Financial, a Division of Synovus Bank
_____
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | DATE AND TIME |
|---|---|
| 2818 La Cienega Avenue, Los Angeles CA 90034  /  jmr@LNBYG.com | November 12, 2025 at 10:00 a.m. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October 20, 2025
_____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
David K. Gottlieb as Ch. 7 Trustee for Philip M. Lawrence II , who issues or requests this subpoena, are:

Joseph M. Rothberg;  2818 La Cienega Avenue, Los Angeles CA 90034; jmr@LNBYG.com / (310) 229 -1234

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

1  RON BENDER (SBN 143364)
   JEFFREY S. KWONG (SBN 288239)
2  JOSEPH M. ROTHBERG (SBN 286363)
   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, CA 90034
4  Telephone: (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email:  rb@lnbyg.com; jsk@lnbyg.com; jmr@lnbyg.com

6  Attorneys for David K. Gottlieb
   Chapter 7 Trustee

7

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9              SAN FERNANDO VALLEY DIVISION

10

| 11 | In re | Case No. 1:23-bk-11082-VK |
|---|---|---|
| 12 | PHILIP M. LAWRENCE, II, | Chapter 7 |
| 13 | | **ATTACHMENT TO SUBPOENA TO THIRD PARTY GLOBAL ONE ISSUED BY DAVID K. GOTTLIEB AS TRUSTEE FOR THE BANKRUPTCY ESTATE OF PHILP M. LAWRENCE** |
| 14 | Debtor. | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | [No Hearing Required Pursuant to Local Bankruptcy Rule 2004-1] |
| 19 | | **Proposed Document Production Date/Time**: |
| 20 | | Date:    Wednesday, November 12, 2025 |
| 21 | | Time:    10:00 a.m. |

22

23

24

25

26

27

28

                                    1

## I.      Definitions

1.      The term "YOU" "YOUR" OR "SUBPOENAED PARTY" shall mean GLOBAL ONE FINANCE, A DIVISION OF SYNOVUS BANK, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, officers, shareholders, directors, representatives, predecessors, successors, and assigns.

2.      The term "LAWRENCE" OR "DEBTOR" shall mean and refer to PHILP M. LAWRENCE II, or anyone purporting to act on his behalf.

3.      The term "LAWRENCE BANKRUPTCY" shall mean and refer to the Debtor in the bankruptcy case captioned *In re Philip M. Lawrence II,* currently pending before the Central District of California, Case No. 1:23-bk-11082-VK.

4.      The term "GOTTLIEB" shall refer to the duly appointed Chapter 7 trustee in the LAWRENCE BANKRUPTCY, David K. Gottlieb or anyone purporting to act on his behalf.

5.      The term "NATIONAL" refers to NATIONAL LIFE GROUP and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on its behalf.

6.      The term "LSW" means LIFE INSURANCE COMPANY OF THE SOUTHWEST, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf.

7.      The term "MAGNUS" means STAN MAGNUS INSURANCE AGENT, INC, and any person or entity acting or purporting to act on its behalf.

8.      The term "NKSF" refers to Nigro Karlin Segal & Feldstein, LLP, and/or to any of its partners, members, employees, representatives, attorneys or anyone purporting or actually authorized to act on its behalf, including Larry Tyler.

9.      The term "NORTHSTAR" refers to Northstar Funding Partners and Northstar Brokerage and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on their behalf.

1

10.     The term "PREMIUM FINANCING" means and refers to any loan intended to pay or that did pay insurance premiums.

11.     The term "LSW PREMIUM-FINANCED LIFE INSURANCE PROGRAM" means and refers to LSW's offering of PREMIUM FINANCING and life insurance policies utilizing insurers in which YOU are or were an appointed agent/producer, and where lenders financed the POLICIES as defined below.

12.     The term "POLICIES" means and refers to the life 1) Life Insurance Company of the Southwest Policy No. LS0539064; AND (2)  Life Insurance Company of the Southwest Policy No. LS0539030, on the lives of Philip Lawrence and Urbana Chapa Lawrence, respectively.

13.     The term "COMMISSION" means and refers to all compensation regardless of its label or source (i.e., commission, override, expense allowance, etc. from and whether from an insurer, brokerage, producer group, or other entity or individual).

14.     The terms "COMMUNICATION" or "COMMUNICATIONS" shall mean and refer to communications between individual corporate respondents; correspondence; e-mails, facsimiles, notes, memoranda, summaries, and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; schematics; diagrams; drawings; and figures; blueprints and other engineering drawings; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; marketing materials and trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document, including self-stick removable notes; other reports and records; computer tapes or cards and any other information-containing paper or other medium.

ATTACHMENT TO SUBPOENA TO THIRD-PARTY GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK

1.  The term "DOCUMENTS" shall refer to any writing, and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical or electronic processes, whether or not asserted to be privileged or immune from discovery and whether a master or original or copy: agreements, communications, including intra-company and all COMMUNICATIONS and communications between individual corporate respondents; correspondence; e-mails, facsimiles, notes, memoranda, summaries, and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; schematics; diagrams; drawings; and figures; blueprints and other engineering drawings; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; marketing materials and trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document, including self-stick removable notes; other reports and records; computer tapes or cards and any other information-containing paper or other medium.

2.  The term "PERSON" shall mean and refer to any natural person, or any corporate business entity including but not limited to any corporation, limited liability company, partnership, limited partnership, or fictitious business name.

3.  The term "POSSESSION, CUSTODY, or CONTROL" applies to (a) a DOCUMENT in YOUR physical custody; (b) a DOCUMENT that YOU own in whole or in part; (c) a DOCUMENT that YOU have the right by contract, statute, or otherwise to use, inspect, examine, or copy on any terms; (d) a DOCUMENT for which YOU have any understanding (express or implied) that YOU may use, examine, or copy on any terms; or a DOCUMENT that YOU have, as a practical matter, the ability to use, inspect, examine, or copy.

1    4.    The terms "EVIDENCING," "CONCERNING," "RELATED TO," or

2 "RELATING," and any variants thereof as used herein shall be construed in their broadest sense

3 to mean connected to, referencing, referring to, or identifying, evidencing, constituting,

4 respecting, concerning, pertaining to, based upon, stating, establishing, showing, supporting,

5 contradicting, describing, recording, noting, reflecting, embodying, memorializing, containing,

6 mentioning, studying, analyzing, or discussing, either directly or indirectly, any subject matter

7 contained in a request or any DOCUMENT regarding subject matter contained in a request.

8 **II.    Instructions**

9    1.    In producing these DOCUMENTS, YOU are required to furnish all

10 DOCUMENTS in YOUR possession, ownership, custody or control, actual or constructive.

11    2.    The DOCUMENTS produced in response to this request must not be redacted or

12 altered in any manner.

13    3.    The DOCUMENTS produced in response to this request shall be segregated and

14 clearly marked or labeled as to the specific request to which such DOCUMENTS are responsive

15 and are being produced.  Otherwise, such DOCUMENTS shall be produced as they are kept in

16 the usual course of business, including the production of the files from which such

17 DOCUMENTS are taken.

18    4.    If any of these DOCUMENTS cannot be produced in full, YOU are requested to

19 produced them to the fullest extent possible, specifying clearly the reasons for YOUR inability

20 to produce the remainder and stating whatever information, knowledge, or belief YOU have

21 concerning the unproduced DOCUMENTS.

22    5.    If any of the DOCUMENTS requested were at one time in existence, but no

23 longer are, so state and specify for each DOCUMENT:  (a) the type of DOCUMENT, (b) the

24 type of information once contained therein, (c) the date upon which it ceased to exist, (d) the

25 circumstance under which it ceased to exist, (e) the identity of all persons having knowledge of

26 the circumstances under which it ceased to exist and (f) the identify of all persons having

27 knowledge or who had knowledge of the contents thereof.

28

ATTACHMENT TO SUBPOENA TO THIRD-PARTY GLOBAL ONE FINANCIAL, A DIVISION OF
SYNOVUS BANK

### III. <u>Document Requests</u>

1.    All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that REFER, RELATE TO any ledgers you kept concerning any loan to LAWRENCE.

2.    All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that REFER, RELATE TO, or EVIDENCE the component amounts (i.e., principal, interest, fees, etc.) owed on YOUR loan to LAWRENCE at the time YOU foreclosed on the collateral to that loan.

3.    All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that REFER, RELATE TO any documents signed by LAWRENCE.

4.    All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL evidencing, reflecting, or pertaining to the origination of the loan relating to the POLICIES.

5.    All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL evidencing, reflecting, or pertaining to YOUR underwriting of the POLICIES.

6.    All DOCUMENTS in YOUR POSSESSION, CUSTODY, OR CONTROL that REFER, RELATE TO, OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten.

# EXHIBIT 2

**P|S  PageScrantom**

Page, Scrantom, Sprouse, Tucker & Ford, p.c.

ALAN G. SNIPES
DIRECT (706) 243-5636
FAX (706) 243-0417
ags@psstf.com

September 15, 2023

**VIA EMAIL:  jkomorsky@bg.law**

Jason B. Komorsky
BG Law
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Re:  *Philip Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*
     Los Angeles County Superior Court
     Case No.: 21SMCV01770

Dear Mr. Komorsky:

This firm represents Global One Financial, a division of Synovus Bank ("Global One"). I would not think I need to tell you that since you have talked with both me and my partner Thomas Gristina about this case. Nevertheless, because you chose to email my client directly (via emails to Jay McBrayer and Jonathan Edwards), I thought I best remind you. Please do not communicate directly with my client any further.

I have reviewed your email to my client dated September 8, 2023, along with the attached proposed subpoena. To put it mildly, the proposed subpoena is extremely overbroad, unduly burdensome, and seeks discovery of information far beyond that required by law. The breadth of the subpoena is even worse considering that Global One is not a party to this case.

I understand from your email that you are requesting that we take the proposed subpoena and "mark it up." Given the breadth of the proposed subpoena, and its request for 34 categories of documents, that is simply not possible. It suffices to say that Global One objects to the subpoena in its entirety.

As you know, Global One voluntarily produced over 2,000 pages of documents in this case to one of the defendants, Life Insurance Company of the Southwest ("Southwest"). I assume those documents were provided to you by Southwest's counsel. To the extent they were not, please let me know and I can provide you with a link to the documents produced that were bates labelled GLOB PLII 000001-002519. By agreement, those documents were all produced pursuant to the Stipulated Protective Order entered in this case. These documents are the only documents Global One will be voluntarily producing in this case.

Synovus Centre  |  1111 Bay Avenue, Third Floor  |  Columbus, Georgia 31901  |  P.O. Box 1199  |  Columbus, Georgia 31902
706.324.0251 Telephone  |  706.323.7519 Fax  |  www.psstf.com

016

005

Finally, your email asks whether Global One will accept service of a subpoena. The answer is no. In that regard, please note that Global One is a division of Synovus Bank which is a Georgia corporation with a principal place of business located in Columbus, Muscogee County, Georgia. To the extent you wish to issue a subpoena in this matter, you will need to properly domesticate that subpoena and issue it out of a court of competent jurisdiction in Muscogee County, Georgia.

Yours very truly,

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By: _____
Alan G. Snipes

006

# EXHIBIT 3

| | |
|---|---|
| **From:** | Jason B. Komorsky <jkomorsky@bg.law> |
| **Sent:** | Monday, September 18, 2023 4:56 PM |
| **To:** | Alan G. Snipes |
| **Cc:** | Juanita Treshinsky; Debra R. Guy; Jessica Bagdanov |
| **Subject:** | RE: |

Alan,

Thank you for the production. Unless I'm missing something, your production does not have a single underwriting document or any documents from 2016 or early 2017 when the policy was issued. It appears that your production begins in 2019.

If Global One is not willing to produce relevant documents from the 2016 period, we will have no choice but to issue a subpoena. Please let me know.

Thanks,

Jason




21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

www.bg.law [bg.law]

**Jason B. Komorsky**
Partner

(818) 827-9000  Main
(818) 827-9155  Direct / Text / Fax
jkomorsky@bg.law

 Jason B. Komorsky [linkedin.com]

The preceding e-mail message is subject to BG LAW's e-mail policies, which can be found at: [bg.law]https://www.bg.law/web-disclaimer [bg.law]

**From:** Alan G. Snipes
**Sent:** Monday, September 18, 2023 6:40 AM
**To:** Jason B. Komorsky
**Cc:** Juanita Treshinsky ; Debra R. Guy
**Subject:** RE:


CAUTION: This email originated from an external source.

I am showing we made a supplemental production to them on or about April 10, 2023 with a couple thousand pages. My paralegal, Debra Guy (copied here), will send you a share file link to those documents.

Alan G. Snipes



Synovus Centre | 1111 Bay Avenue, 3rd Floor | Columbus, Georgia 31901
P.O. Box 1199 | Columbus, GA 31902-1199 (mailing address)
Direct: 706-243-5636 | Main: 706-324-0251 | Fax: 706-323-7519
asnipes@pagescrantom.com

CIRCULAR 230 DISCLOSURE: To comply with Treasury Department regulations, we inform you that, unless otherwise expressly indicated, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the Internal Revenue Code or any other applicable tax law, or (ii) promoting, marketing or recommending to another party any transaction, arrangement, or other matter.

PRIVILEGE NOTICE: The information contained in this electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named. If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (706) 324-0251 or reply email and delete this message.

**From:** Jason B. Komorsky <jkomorsky@bg.law>
**Sent:** Friday, September 15, 2023 3:08 PM
**To:** Alan G. Snipes <asnipes@pagescrantom.com>
**Cc:** Juanita Treshinsky <jtreshinsky@bg.law>
**Subject:** RE:

Alan,

There seems to be a disconnect. LSW forwarded your productions. The first production on March 15, 2023 had 281 pages and the second production on April 25 had 3 pages for a total of 284 pages.

I have not seen the thousands of pages identified in your letter. Until you sent me an email recently with an unsigned illustration, we had no production from you with any illustrations. These productions showed no underwriting examination of whether my clients qualified for the loan among other things.

Please forward your earlier production to me and I will review those documents before I have the subpoena issued.

Thanks and have a good weekend.

Jason



21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

www.bg.law [bg.law]

**Jason B. Komorsky**
Partner

(818) 827-9000   Main
(818) 827-9155   Direct / Text / Fax

jkomorsky@bg.law

[linkedin.com] Jason B. Komorsky [linkedin.com]

The preceding e-mail message is subject to BG LAW's e-mail policies, which can be found at: [bg.law]https://www.bg.law/web-disclaimer [bg.law]

**From:** Alan G. Snipes <asnipes@pagescrantom.com>
**Sent:** Friday, September 15, 2023 11:25 AM
**To:** Jason B. Komorsky <jkomorsky@bg.law>
**Subject:**

CAUTION: This email originated from an external source.

Jason,

Please see attached.

Alan G. Snipes

 Page Scrantom

Synovus Centre | 1111 Bay Avenue, 3rd Floor | Columbus, Georgia 31901
P.O. Box 1199 | Columbus, GA 31902-1199 (mailing address)
Direct: 706-243-5636 | Main: 706-324-0251 | Fax: 706-323-7519
asnipes@pagescrantom.com

CIRCULAR 230 DISCLOSURE: To comply with Treasury Department regulations, we inform you that, unless otherwise expressly indicated, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the Internal Revenue Code or any other applicable tax law, or (ii) promoting, marketing or recommending to another party any transaction, arrangement, or other matter.

PRIVILEGE NOTICE: The information contained in this electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named. If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (706) 324-0251 or reply email and delete this message.

# EXHIBIT 4

| | |
|---|---|
| **From:** | Jeffrey S. Kwong <JSK@lnbyg.com> |
| **Sent:** | Thursday, February 29, 2024 11:52 AM |
| **To:** | Elissa Miller |
| **Cc:** | Ron Bender |
| **Subject:** | RE: Global One - Lawrence - Withdrawal of Claim No. 23(56975628.1).pdf |

**[External Sender]**

Thanks for the update, Elissa.
**JEFFREY S. KWONG, Esq.**
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
**2818 La Cienega Avenue | Los Angeles, CA 90034**
**Phone 310 229 1234 | Direct 310 229 3337 | Fax 310 229 1244**
**jsk@lnbyg.com | www.lnbyg.com [lnbyg.com]**
**The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Brill L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm [lnbyg.com].**
🌍 **Please consider the environment before printing this email**

**From:** Elissa Miller
**Sent:** Thursday, February 29, 2024 11:43 AM
**To:** Jeffrey S. Kwong ; Ron Bender
**Cc:** Christopher Coleman
**Subject:** Global One - Lawrence - Withdrawal of Claim No. 23(56975628.1).pdf
Jeffery and Ron. In accordance with the stipulation, Global One terminated the policies and received payment
from the insurance policies on February 28 and 29th, 2024. After application of all collateral to the amounts due on
its notes Global One has a balance of interest remaining as of February 28, 2024 of $206,681.49. Thus, there is no
excess to pay over to the estate.
Also in accordance with the Stipulation, attached is a copy of the notice of withdrawal of claim No. 23 which will
be filed today, if not tomorrow depending on my secretaries workload.
Elissa Miller



Elissa D. Miller
Greenspoon Marder LLP
Partner
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Office – 213-617-5234– Cell: 818-519-2932
Email Address: elissa.miller@gmlaw.com
www.gmlaw.com



GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that purpose if we are attempting to collect a debt from you.

# EXHIBIT 5

1  Elissa D. Miller (CA Bar No. 120029)
   elissa.miller@gmlaw.com
2  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
3  Los Angeles, California 90067
   Telephone: 213.626.2311
4  Facsimile: 954.771.9264

5  Attorneys for Specially Appearing Alleged
   Non-Party Witness - Deponent
6  Synovus Bank, Successor by Merger to
   Global One Financial, Inc.

7

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/06/2024 5:40 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Mohammadi, Deputy Clerk

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9        **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10  Philip M. Lawrence, an individual, Philip       Case No. 21SMCV01770
    M. Lawrence, in his capacity as Trustee of
11  the PLII Living Trust, and Urbana Chapa          **NON-PARTY'S OPPOSITION TO**
    Lawerence, an individual,                        **PLAINTIFFS' MOTION TO COMPEL**
12                                                    **SUBPOENAED NON-PARTY WITNESS-**
            Plaintiffs,                               **DEPONENT GLOBAL ONE FINANCIAL,**
13                                                    **A DIVISION OF SYNOVUS BANK TO**
         vs.                                          **PRODUCE DOCUMENTS PURSUANT**
14                                                    **TO A SUPERSEDED QUASHED**
    Life Insurance Company of the Southwest,         **SUBPOENA;  MEMORANDUM OF**
15  Stan Magnus Insurance Agent, Inc., a             **POINTS AND AUTHORITIES SUPPORT**
    California corporation, Stanley Magnus, an       **THEREOF**
16  individual, Nigro Karlin Segal & Feldstien,
    LLP, a California limited liability              **Declaration of Alan G. Snipes Filed**
17  partnership, and DOES 1-20, inclusive,           **Concurrently Herewith**

18         Defendants.                                Date:     March 19, 2024
                                                      Time:     8:30 a.m.
19                                                    Dept.:    O

20                                                    Assigned for All Purposes to:
                                                      Hon. Hon. Jay Ford III, Dept. O
21
                                                      Reservation ID: 478421039024
22

23        Specially Appearing Alleged Non-Party Witness – Deponent Synovus Bank,

24  Successor by Merger to Global One Financial, Inc. (erroneously named in the subpoena

25  as Synovus Bank fka Global One Financial, Inc.) ("Global One") hereby submits its

26  opposition to the Motion to Compel it to Comply with Plaintiffs' Subpoena.  Pursuant to

27  the Court's ruling at the Initial Discovery Conference, this Memorandum will only address

28  the issues related to the fact that Plaintiffs sought and obtained a subpoena issued by the

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1    Georgia Court, which Subpoena was quashed by the Georgia Court.  As noted by this

2    honorable Court on March 4, 2024, all other issues and defenses related to the scope of

3    the subpoena are preserved pending a ruling on the jurisdictional issues.

4    　　　For the reasons set forth herein, Global One submits that the only subpoena that

5    could have been or was at issue was the Georgia subpoena and since it has been

6    quashed, there is no extant subpoena pursuant to which production can or should be

7    compelled.

8    　　　This opposition is based on the Attached Memorandum of Points and Authorities

9    and on the Declaration of Alan G. Snipes filed concurrently herewith.

10

11   DATED:  March 5, 2024              Respectfully submitted,

12                                     **GREENSPOON MARDER LLP**

13

14

15                         By:  _____

16                               Elissa D. Miller
                                 Attorneys for Specially Appearing Alleged
17                               Non-Party Witness - Deponent
                                 Synovus Bank, Successor by Merger to
18                               Global One Financial, Inc.

19

20

21

22

23

24

25

26

27

28

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

### MOTION TO COMPEL THIRD PARTY TO PRODUCE DOCUMENTS

**I.**

### PREFATORY STATEMENT

By this Motion, Plaintiffs are seeking to compel Global One to produce documents pursuant to a subpoena which has already been quashed by a court of competent jurisdiction in accordance with the laws of the State of its issuance, Georgia, and the laws of the State of California.

Plaintiffs, in their motion, are being less than honest with this Court. Their motion does not distinguish in time or in fact as to the issuance of the subpoenas, the timing of Global One's Motion for a Protective Order and to Quash the Subpoena timely filed in the Georgia Superior Court (the "Quash Motion") nor is it updated to advise the Court that the very Subpoena for which they seek to compel compliance was quashed by the Georgia Court, the issuing court, almost exactly one month to the day before the hearing is scheduled on this Motion.

Principals of California law and the application of the Uniform Interstate Depositions and Discovery Act, which has been adopted by both Georgia and California, mandate the denial of this Motion. The only court with jurisdiction was the Georgia Court which has already quashed the subpoena.

**II.**

### RELEVANT FACTS

In order to understand what has occurred in this case and why the subpoena which is the subject of this Motion is no longer extant requires an understanding of a timeline of the facts. The facts as set forth herein are supported by the Declaration of Alan G. Snipes ("Snipes Decl."), the exhibits thereto and the Exhibits attached to the Motion to Compel (the "Motion").

Global One is a division by Merger of Synovus Bank. Its principal place of business is located in Columbus, Muscogee County, Georgia. It is not a party to this

1  Action.  Global One is a third-party out-of-state witness as recognized by Plaintiffs and

2  their actions in seeking Georgia subpoenas not once, but twice.

3      The Facts leading up to this Motion are as follows:

| | | |
|---|---|---|
| **Snipes, Ex. 1** | 9/15/23 | In response to correspondence addressed to Global One, counsel for Global One writes to  counsel for Plaintiffs advising them as to Global One's location and indicating that a subpoena would need to be issued by the Muscogee County Court and served on Global One in that County.  Counsel for Global One attaches Global One's organizational documents , documents regarding its merger into Synovus and its Georgia registration statement to his correspondence |
| **Snipes, Ex. 2** | 9/28/23 | A blank subpoena from Gwinnett County, Georgia was personally served on Global One Financial, Inc., a non-entity, on its former agent for service of process  . |
| **Snipes Ex. 3** | 10/5/223 | Counsel for Global One writes to counsel for Plaintiffs advising of the issue and reminding them of the facts set forth in the 9/15/22 letter again attaching the 9/15/22 letter.   Counsel for Global One alerts Plaintiffs that they attempted to serve a former agent for service and that there is no such entity as Global One Financial, Inc. |
| **Snipes, Ex. 4** | 10/5/2023 | In response to Plaintiffs 10/5/2023 letter, Counsel for Plaintiffs sends a responsive email stating, "We will re-serve." |
| Ex. 1 to Motion | 10/6/2023 | Plaintiffs issue California Subpoena. (Exhibit 1 to the Motion), |
| Ex. 6 to Motion | 10/17/2023 | Plaintiffs causes to be issued in the State of Georgia, Muscogee County, Case No. Ex Parte #2023,225 a Georgia Subpoena.  Attached to this subpoena is the California Subpoena . (Exhibit 2 to Motion.) Proof of service reflects that this Subpoena was personally served on 10/20. |
| **Snipes, Ex. 5** | 11/2/2023 | In response to 10/17/23 subpoena, Global One files Objection to Subpoena and Motion for Protective Order in Georgia Ex Parte Case #2023-225 on the Grounds that the Subpoena is overbroad, burdensome and oppressive and should be quashed (the "Quash Motion"). (Exhibit 3 to Motion) |
| | 1/12/2024 | Plaintiffs file the instant Motion to Compel |
| **Snipes Ex 6** | 1/30/2024 | Global One gives notice of Georgia hearing on Quash Motion for February 20, 2024 (first date available for hearing) |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| Snipes Decl. ¶11 | 2/20/2024 | Georgia Superior Court conducts hearing on Motion to Quash at which Plaintiff's counsel appears by Zoom |
|---|---|---|
| **Snipes Ex 8** | 2/20/2024 | Georgia Superior Court entered Order Granting Quash Motion. |

In other words, the undisputable facts demonstrate that the last served and, therefore only operative Subpoena was the Subpoena issued in Georgia on October 17, 2023 (Exhibit 2 to Motion), and served on Global One on October 20, 2023.  It is that Subpoena which was quashed by the Georgia Court.

### III.

### THE GEORGIA SUBPOENA

### WAS PROPERLY ISSUED

Georgia has codified the Uniform Interstate Depositions and Discovery Act ("UIDDA") as O.C.G.A. § 24-13-110. Global One does not dispute that pursuant to the procedures of the UIDDA,[1] the Subpoena was properly issued in Georgia.

The question, however, is whether the fact that Plaintiffs did not act through local Georgia counsel and their California lawyer who requested the subpoena was not admitted in Georgia, voids the subpoena.  The answer is no.  The Subpoena is at worst voidable but not void.

The Georgia UIDDA does not, by its express language, require that a party work through a local counsel or be a member of the bar of Georgia to obtain a subpoena under its provisions. However, Rule 1-203 of the Georgia State Bar Rules provides that "No person shall practice law in this state unless such person is an active member of the State Bar of Georgia in good standing, except as provided below…."  The exceptions are for pro hac and for other limited exceptions.[2]

---

[1] Relevant provisions of the Georgia Uniform Interstate Depositions and Discovery Act ("UIDDA") as O.C.G.A. § 24-13-110, et. seq. is as **Exhibit A.**

[2] Georgia Bar Rules 1-203 and O.C.G.A. § 24-13-21(d) are attached hereto as **Exhibit B.**

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1   The code section governing the issuance of subpoenas also require a subpoena to

2   be signed a Georgia lawyer.  See, e.g., O.C.G.A. § 24-13-21(d) ("An attorney who is

3   counsel of record in a proceeding may issue and sign a subpoena…")

4   However, and regardless of whether a Georgia lawyer was required to issue the

5   subpoena, it was still effective as the failure to have it signed by a Georgia attorney is an

6   amendable defect which rendered, at the worst, the Subpoena voidable, not void.  "[A]

7   pleading signed by an unlicensed attorney or by a non-attorney may be cured by an

8   amendment substituting in a licensed attorney prior to the entry of a pre-trial order."

9   North Georgia Med. Center v. Food Lion, Inc., 238 Ga. App. 78, 79, 517 S.E.2d 799, 800

10  (1999).[3]  In other words, the fact that a pleading is not signed by a Georgia lawyer does

11  not make the pleading void "but merely voidable and the defect in the complaint was

12  cured by amendment."  McCormick v. Acree, 232 Ga. App. 834, 837, 503 S.E.2d 88, 89

13  (1998).[4]

14  Global One submits that a subpoena should be treated no differently than any

15  other pleading.  If it had to be signed by a Georgia lawyer, it was simply a voidable defect

16  that could have been cured.  When Global One filed its Quash Motion, it did not raise the

17  issue.  (**Exhibit 5** to Snipes Decl.).  It solely sought a protective order and to quash the

18  subpoena on the grounds that the subpoena was overbroad, burdensome and improperly

19  sought production of trade secrets.

20  Plaintiffs had notice of the hearing on Global One's motion and never claimed the

21  subpoena was invalid or sought to add a Georgia counsel to oppose the Motion, but

22  could have.  They likewise never objected to jurisdiction of the Georgia court.

23  As a result, and although the Georgia Subpoena was voidable, it was not void and

24  the Georgia Court properly granted the Quash Motion.

25

26

27  [3] A true copy of North Georgia Med is attached hereto as **Exhibit C.**

28  [4] A true copy of McCormick is attached hereto as **Exhibit D.**

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**IV.**

**PURSUING THE MOTION TO COMPEL IN THIS COURT IS IMPROPER.**

**ANY SUCH MOTION WOULD HAVE HAD TO HAVE BEEN FILED IN GEORGIA, THE**

**ONLY COURT WITH JURISDICTION TO ENFORCE OR QUASH THE SUBPOENA**

Both Georgia and California have adopted the UIDDA.  It is codified in Georgia as

O.C.G.A. § 24-13-110[5] and in California in C.C.P. § 2029.700.

Pursuant to the UIDDA, In order to subpoena a party from a state other than the

state in which the action is pending (defined in the act as the foreign state), a subpoena

issued in the trial or home state is to be presented to a clerk of the court in the state

where discoverable papers are sought (the foreign  state).  (C.C.P. § 2029.300; and

O.C.G.A. § 24-13-112.)[6]  A subpoena is then issued by the court in the foreign state and

served in the foreign state.

The procedures set forth in the UIDDA were followed in this case. As this action is

pending in California, the Subpoena was first issued in California on October 6, 2023,

(Exhibit 1 to Motion).  It was then presented to the Georgia Court (the foreign state where

the party from whom discovery is sought is located) on October 17, 2023, and the

Georgia Court issued its subpoena which attached the California Subpoena (Exhibit 2 to

Motion).  The Georgia Subpoena with the California Subpoena attached, was then served

on Global One in Georgia. (Last page of Exhibit 2 to Motion.)

The UIDDA also regulates where a motion to enforce or quash a subpoena issued

pursuant to its terms must be filed.  O.C.G.A, § 24-13-116 provides that  "An application

for a protective order or to enforce, quash, or modify a subpoena issued by the clerk of

superior court under Code Section 24-13-112 or 24-13-113.   [The Georgia UIDDA] shall

---

[5] A true copy of O.C.G.A. § 24-13-11 is attached hereto as a part of **Exhibit A.**

[6] A true copy of O.C.G.A. § 24-13-112, is attached hereto as part of **Exhibit A.**

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1    comply with the statutes and court rules of this state <u>and shall be submitted to the</u>

2    <u>superior court of the county in which the subpoena</u> was issued." [Emphasis added.][7]

3        California UIDDA likewise provides that a subpoena issued in an out-of-state case

4    in California is to be enforced in California.  C.C.P. § 2029.600 ("If a dispute arises

5    relating to discovery under this article, any request for a protective order or to enforce,

6    quash, or modify a subpoena, or for other relief may be filed in the superior court in the

7    county in which discovery is to be conducted and, if so filed, shall comply with the

8    applicable rules or statutes of this state.")

9        After receiving and reviewing the subpoena in this case and after attempting,

10    unsuccessfully to resolve issues with Plaintiffs' counsel, Global One appropriately filed its

11    Quash Motion in Georgia in accordance with the UIDDA.  (**Exhibit 5** to Snipes Decl.) The

12    Georgia Court properly ruled on and granted the Quash Motion. (**Exhibit 8** to Snipes

13    Decl.)

14        As Plaintiffs have been unable to locate one case in California or Georgia other

15    than an unpublished case from the Alameda Superior Court interpreting the UIDDA,[8]

16    Plaintiffs site to cases regarding the application of the UIDDA issued by other states'

17    courts.  In <u>Quinn v. The Eighth Judicial District Court of the State of Nevada</u>, 134 Nev.25,

18    (2018),[9] the Nevada Supreme Court held that where Subpoenas were issued in

19

---

20    [7] A true copy of Ga. Code Ann., § 24-13-116, is attached hereto as part of Exhibit A.

21    8 Although not presented to be relied on as precedent, but solely for the Court's
22    convienence, the sole case found dealing with this issue in California or Georgia, is <u>Lusk</u>
<u>v. Lager</u>, 2018 Cal. Super. Lexis 31439*, a case then pending in the Superior Court of
23    Alameda County.  In Lusk, the Plaintiff failed to comply with the UIDDA in seeking
24    documents from a third party-witness in New York and the Court found that the subpoena
was void on its face.  The Honorable Stephen Pulido, Judge of the Superior Court of
25    Alameda County, relying on C.C.P. § 2029.600(a) stated, "If Plaintiff had complied with
the procedural requirements for the issuance of an out-of-state subpoena, any motions to
26    compel compliance, to quash the subpoena, or for a protective order must be filed in the
county where compliance with the subpoena was to take place."  A true and correct copy
27    of <u>Lusk</u>, is attached hereto as **Exhibit E.**

28    [9] A true copy of <u>Quinn</u>, is attached hereto as **Exhibit F.**

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

California, the witnesses home states, the subpoenaing party's attempt to enforce the

California subpoenas in the Nevada district court while a challenge to those subpoenas

was pending in the California court was improper.  The Court stated, "[W]e conclude the

Nevada district court had no authority to grant her motion to compel."  Quinn, 134 Nev.

31.

The Nevada Supreme Court noted,

> Any motion practice associated with the discovery subpoena,
> such as a motion to enforce or quash a subpoena, must take
> place in the discovery state and is governed by the law of the
> discovery state. The commentary to the UIDDA explains the
> rationale behind this: "[T]he discovery state has a significant
> interest in protecting its residents who become non-party
> witnesses in an action pending in a foreign jurisdiction from
> any unreasonable or unduly burdensome discovery requests."
> UIDDA § 6 cmt. (Unif. Law Comm'n 2017).

The Plaintiff in Quinn also argued that the Nevada lower Court properly granted its

motion to compel arguing that because the Nevada court had personal jurisdiction over

Quinn in another context, it should likewise have jurisdiction to compel it to comply with

the subpoena.  The Nevada Supreme Court disagreed stating at page 32-33,

> By using this jurisdiction as the basis for its subpoena
> authority, the district court appeared to conflate personal
> jurisdiction with subpoena power. As other jurisdictions have
> recognized, the concept of personal jurisdiction is different
> from that of subpoena power. See In re Nat'l Contract Poultry
> Growers' Ass'n, 771 So.2d 466, 469 (Ala. 2000); Phillips
> Petroleum Co. v. OKC Ltd. P'ship, 634 So.2d 1186, 1187 (La.
> 1994); Yelp, 770 S.E.2d at 443. Personal jurisdiction is based
> on conduct that subjects an out-of-state party "to the power of
> the [Nevada] court to adjudicate its rights and obligations in a
> legal dispute, sometimes arising out of that very conduct."
> Phillips, 634 So.2d at 1187–88; see also NRS 14.065(1), (2).
> Subpoena power, on the other hand, "is based on the power
> and authority of the court to compel the attendance at a
> deposition of [a nonparty] in a legal dispute between other
> parties." Phillips, 634 So.2d at 1188. Here, the out-of-state
> witnesses are not parties to the civil action pending in
> Nevada. And the fact that the Quinn Emanuel attorneys were
> admitted pro hac vice in the Nevada action would not confer
> on the Nevada district courts the power to require them to
> appear for deposition as nonparty witnesses.8 See Syngenta
> Crop Prot., Inc. v. Monsanto Co., 908 So.2d 121, 129 (Miss.
> 2005) ("[A] Mississippi court cannot subpoena a nonresident
> nonparty to appear and/or produce in Mississippi documents
> which are located outside the State of Mississippi, even if that

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

nonresident nonparty is subject in another context to the personal jurisdiction of the court."); <u>Yelp</u>, 770 S.E.2d at 443 ("[T]he power to compel a nonresident non-party to produce documents in Virginia or appear and give testimony in Virginia is not based on consideration of whether the nonresident non-party would be subject to the personal jurisdiction of a Virginia court if named as a defendant in a hypothetical lawsuit."). Accordingly, we conclude that the district court's basis for exercising subpoena power over the witnesses was erroneous.

See also, <u>Catalina Marketing v. Hudyman</u>, 212 A. 3d 997 (N.J. Superior A.D. 2019) (Pursuant to the UIDDA, "[a]n application to the court for a protective order or to enforce, quash, or modify a subpoena ... must comply with the rules or statutes of th[e discovery] state and be submitted to the court ... in which discovery is to be conducted." Unif. Interstate Depositions and Discovery Act § 6 (Nat'l Conference of Comm'rs on Unif. State Laws 2007). This reflects the UIDDA's recognition that 'the discovery state has a significant interest in protecting its residents who become non-party *619 witnesses in an action pending in a foreign jurisdiction ....' Id. at cmt. on § 6.") <u>Catalina Mktg. Corp. v. Hudyman</u>, 212 A.2d. at 1000.[10]

In other words, in the instant case, since the Subpoena was issued and served in Georgia (the foreign state), in accordance with the requirements of the UIDDA, the only place where the subpoena was properly quashed or could have been enforced was Georgia.  Plaintiffs failure to file this Motion in Georgia before the Subpoena was quashed, bars it from seeking the relief at all, let alone in this court.   As noted by the Nevada Court in <u>Quinn</u> when presented with similar facts, the subpoenaing party's attempt to enforce the foreign subpoenas in the court where the case was pending while a challenge to those subpoenas was pending in the foreign court was improper.

---

[10] A true copy of <u>Catalina</u>, is attached hereto as **Exhibit G.**

**V.**

**<u>CONCLUSION</u>**

Pursuant to the UIDDA, any motion to compel enforcement with the operative

subpoena in this case, the Subpoena issued by and served in Georgia, was required to

be filed in Georgia not in this Court.

Therefore, for the reasons stated herein, Alleged Non-Party Witness – Deponent

Synovus Bank, Successor by Merger to Global One Financial, Inc. respectfully respect

that the Court deny Plaintiffs Motion to Compel Global Ones's compliance with the

Subpoena already quashed by the Georgia Court.

DATED:  March 6, 2024

Respectfully submitted,

**GREENSPOON MARDER LLP**

By: _____

Elissa D. Miller
Attorneys for Specially Appearing Alleged
Non-Party Witness - Deponent
Synovus Bank, Successor by Merger to
Global One Financial, Inc.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

# EXHIBIT A

## EXHIBIT A

Georgia Code
Article 5 - Uniform Interstate Depositions and Discovery Act

### § 24-13-110. Short Title

This article shall be known and may be cited as the "Uniform Interstate Depositions and Discovery Act."

### § 24-13-111. Definitions

As used in this article, the term:

"Foreign jurisdiction" means a state other than this state.

"Foreign subpoena" means a subpoena issued under authority of a court of record of a foreign jurisdiction.

"Person" means an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, government or governmental subdivision, agency, or instrumentality, or any other legal or commercial entity.

"State" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, a federally recognized Native American tribe, or any territory or insular possession subject to the jurisdiction of the United States.

"Subpoena" means a document, however denominated, issued under authority of a court of record requiring a person to:
　　　Attend and give testimony at a deposition;
　　　Produce and permit inspection and copying of designated books, documents, records, electronically stored information, or tangible things in the possession, custody, or control of such person; or
　　　Permit inspection of premises under the control of such person.

## § 24-13-112. Requirements for Issuance of Foreign Subpoenas; Application

To request issuance of a subpoena under this Code section, a party shall submit a foreign subpoena to the clerk of superior court of the county in which the person receiving the subpoena resides. A request for the issuance of a subpoena under this Code section shall not constitute an appearance in the courts of this state.

When a party submits a foreign subpoena to a clerk of superior court in this state, the clerk shall promptly issue and provide to the requestor a subpoena for service upon the person to which the foreign subpoena is directed.

A subpoena under subsection (b) of this Code section shall:
Incorporate the terms used in the foreign subpoena; and
Contain or be accompanied by the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

This Code section shall only apply to a subpoena to be issued in this state if the foreign jurisdiction that issued the foreign subpoena has adopted a version of the "Uniform Interstate Depositions and Discovery Act."

This Code section shall not apply to criminal proceedings.

## § 24-13-113. Compelling Foreign Witness to Appear and Testify

For purposes of this Code section, the term "subpoena" shall have only the meaning set forth in subparagraph (A) of paragraph (5) of Code Section 24-13-111.

In addition to the mechanism for issuing subpoenas provided for in Code Section 24-13-112, whenever any mandate, writ, or commission is issued out of any court of record in a foreign jurisdiction, a witness may be compelled by subpoena issued by the clerk of superior court of the county in which such witness resides to appear and testify in the same manner and by the same process and proceeding as may be employed for the purpose of taking testimony in proceedings pending in this state.

## § 24-13-116. Protective Order or Enforcement, Quashing, or Modification of Foreign Subpoena

An application for a protective order or to enforce, quash, or modify a subpoena issued by the clerk of superior court under Code Section 24-13-112 or 24-13-113 shall comply with the statutes and court rules of this state and shall be submitted to the superior court of the county in which the subpoena was issued.

# EXHIBIT B

### § 24-13-21. Subpoena for Attendance of Witnesses — Form; Issuance; Subpoena in Blank

a. As used in this Code section, the term "subpoena" includes a witness subpoena and a subpoena for the production of evidence.

b. A subpoena shall state the name of the court, the name of the clerk, and the title of the proceeding and shall command each person to whom it is directed to attend and give testimony or produce evidence at a time and place specified by the subpoena.

c. The clerk of court shall make subpoenas in blank available on demand by electronic or other means to parties or their counsel or to the grand jury.

d. An attorney who is counsel of record in a proceeding may issue and sign a subpoena obtained by electronic or other means from the clerk of court as an officer of a court for any deposition, hearing, or trial held in conjunction with such proceeding.

e. A district attorney may issue, and upon the request of the grand jury shall issue, a subpoena in grand jury proceedings.

f. A subpoena shall be completed prior to being served.

g. Subpoenas are enforceable as provided in Code Section 24-13-26.

h. If an individual misuses a subpoena, he or she shall be subject to punishment for contempt of court and shall be punished by a fine of not more than $300.00 or not more than 20 days' imprisonment, or both.

History. Code 1981, § 24-13-21 , enacted by Ga. L. 2011, p. 99, § 2/HB 24; Ga. L. 2012, p. 775, § 24/HB 9

Rule 1-203. Practice by Active Members; Nonresidents

No person shall practice law in this state unless such person is an active member of the State Bar of Georgia in good standing; except as provided below:

1. A person who is not a member of the State Bar of Georgia, but who is licensed to practice in a state or states other than Georgia, and is in good standing in all states in which such person is licensed, may be permitted to appear in the courts of this state in isolated cases in the discretion of the judge of such court; or

2. A person who is not a member of the State Bar of Georgia, but who is licensed to practice in a state or states other than Georgia, and is in good standing in all states in which such person is licensed, may be permitted to appear in the courts of this state if such person:
   i.   is enrolled in a full time graduate degree program at an accredited law school in this state; and
   ii.  is under the supervision of a resident attorney; and
   iii. limits his or her practice to the appearance in the courts of this state to the extent necessary to carry out the responsibilities of such graduate degree program.

3. A person who is admitted to the State Bar of Georgia as a foreign law consultant pursuant to Part E of the Rules Governing the Admission to the Practice of Law as adopted by the Supreme Court of Georgia, www.gasupreme.us, may render legal services in the state of Georgia solely with respect to the laws of the foreign country (i.e., a country other than the United States of America, its possessions and territories) where such person is admitted to practice, to the extent provided by and in strict compliance with the provisions of Part D of the Rules Governing Admission to the Practice of Law, but shall not otherwise render legal services in this state.

4. Persons who are authorized to practice law in this state are hereby authorized to practice law as sole proprietorships or as partners, shareholders, or members of:
   i.   partnerships under OCGA § 14-8-1 et. seq.; or
   ii.  limited liability partnerships under OCGA § 14-8-1 et seq.; or
   iii. professional corporations under OCGA § 14-7-1 et seq.; or
   iv.  professional associations under OCGA § 14-10-1 et seq.; or
   v.   limited liability companies under OGCA § 14-11-100 et seq.

5. A person who is not a member of the State Bar of Georgia, but who is allowed to practice law in Georgia on a limited basis pursuant to Supreme Court of Georgia Rules Part XV, Rules 91-95, Student Practice Rule.

6. A person who is not a member of the State Bar of Georgia, but who is allowed to practice law in Georgia on a limited basis pursuant to

Supreme Court of Georgia Rules Part XVI, Rules 97-103, Law School Graduates, may provide legal services in this state to the extent allowed by said Rules.

7. A person who is not a member of the State Bar of Georgia, but who is allowed to practice law in Georgia on a limited basis pursuant to Supreme Court of Georgia Rules Part XX, Rules 114-120, Extended Public Service Program, may provide legal services in this state to the extent allowed by said Rules.

8. A person who is not a member of the State Bar of Georgia, but who is allowed to practice law in Georgia on a limited basis pursuant to Supreme Court of Georgia Rules Part XXI, Rule 121, Provision of Legal Services Following Determination of Major Disaster.

# EXHIBIT C

NORTH GEORGIA MEDICAL CENTER v. FOOD LION    Ga.  **799**
Cite as 517 S.E.2d 799 (Ga.App. 1999)

to relate to the possible existence of any activity constituting an "abuse in or relating to any state programs and operations." OCGA § 45–1–4(b). Although the district court made a finding in support of its determination that Weaver had "never expressed" that she was exposing "fraud or waste," this finding does not address the issue of whether she had filed a complaint or provided information to her immediate supervisor regarding an *abuse* relating to a state program or operation. Rather, the district court focused on whether Weaver had made a formal complaint of "waste or fraud" and did not determine whether Weaver had provided information concerning "the possible existence of any activity constituting fraud, waste, and abuse." OCGA § 45–1–4(b). Collateral estoppel does not bar consideration of an issue that has not been actually decided. See *MTW Investment Co. v. Alcovy Properties,* 228 Ga.App. 206, 209(1)(b), 491 S.E.2d 460 (1997); *Toporek v. Zepp,* 224 Ga.App. 26, 28(1), 479 S.E.2d 759 (1996). The case of *Langton v. Dept. of Corrections,* 220 Ga.App. 445, 446(1), 469 S.E.2d 509 (1996) is distinguishable because, unlike this case, the issue in *Langton* had been fully litigated.

Third, because the holding of the federal district court if applied to OCGA § 45–1–4 would greatly reduce the scope of protection provided to public employees by that statute and could potentially reduce the reporting of fraud, waste and abuse by public employees, the consideration of the issues in this case would not be precluded by the doctrine of collateral estoppel. This is particularly true as most of the issues raised under OCGA § 45–1–4 pertain to questions of first impression. Parties are not precluded from relitigating issues in subsequent actions between the parties when there is a clear and convincing need for a new determination of the issue because of the potential adverse impact of the determination on the public interest. Restatement, 2d, Judgments, supra at § 28(5)(a).

Because the trial court erred by concluding that RESA was not a public employer within the meaning of OCGA § 45–1–4(a) and that Weaver was precluded from pursuing her whistleblower claim by the doctrine of collateral estoppel, we reverse.

*Judgment reversed.*

ANDREWS and RUFFIN, JJ., concur.



238 Ga.App. 78
**NORTH GEORGIA MEDICAL CENTER**

v.

**FOOD LION, INC.**

No. A99A0848.

Court of Appeals of Georgia.

May 12, 1999.

After default judgment was entered against foreign corporation for failure to answer summons of continuing garnishment, corporation paid all accrued costs of court and moved within required 60 days to modify and reduce judgment, which motion plaintiff opposed on ground that attorney signing motion was not licensed in Georgia. Corporation then moved, outside 60–day period, to amend its motion by substituting in name and signature of licensed Georgia attorney. The Superior Court, Gilmer County, Milam, J., allowed amendment, and reduced judgment. Plaintiff appealed. The Court of Appeals, Harold R. Banke, Senior Appellate Judge, held that motion to modify and reduce judgment in garnishment proceeding may be retroactively amended to substitute in name and signature of licensed Georgia attorney prior to judgment thereon.

Affirmed.

**1. Corporations ⬩508**

An attorney licensed in Georgia must represent a corporation in a proceeding in a Georgia court of record.

**800** Ga.    **517 SOUTH EASTERN REPORTER, 2d SERIES**

### 2. Attorney and Client ⬤11(12)

A pleading signed by an unlicensed attorney or by a non-attorney may be cured by an amendment substituting in a licensed attorney prior to the entry of the pre-trial order; amendment relates back to filing date of original pleading. O.C.G.A. § 9–11–15(a).

### 3. Garnishment ⬤186

A motion to modify and reduce the judgment in a garnishment proceeding may be retroactively amended to substitute in the name and signature of a licensed Georgia attorney prior to judgment thereon. O.C.G.A. §§ 9–11–15(a), 18–4–3, 18–4–61, 18–4–91.

———————

Joseph D. Buccellato, for appellant.

McLain & Merritt, Howard M. Lessinger, Atlanta, for appellee.

HAROLD R. BANKE, Senior Appellate Judge.

North Georgia Medical Center obtained default judgment against Food Lion, Inc. when Food Lion failed to answer a summons of continuing garnishment. Food Lion paid all accrued costs of court and moved within the required 60 days to modify and reduce the judgment. See OCGA § 18–4–91. North Georgia opposed the motion on the ground that the attorney signing the motion was not licensed in Georgia.

Outside the 60–day period, Food Lion moved to amend its motion by substituting in the name and signature of a licensed Georgia attorney. The court allowed the amendment and reduced the judgment. North Georgia appeals, contending the original motion was a nullity and could not be resurrected after the 60 days had run. *Held:*

**[1, 2]** An attorney licensed in Georgia must represent a corporation in a proceeding in a Georgia court of record. *Eckles v. Atlanta Technology Group*, 267 Ga. 801, 485 S.E.2d 22 (1997). Under OCGA § 9–11–

15(a) of the Civil Practice Act, a pleading signed by an unlicensed attorney or by a non-attorney may be cured by an amendment substituting in a licensed attorney prior to the entry of the pre-trial order. *Bandy v. Hosp. Auth. of Walker County*, 174 Ga.App. 556, 557(1)(b), 332 S.E.2d 46 (1985); see *McCormick v. Acree*, 232 Ga.App. 834, 836, 503 S.E.2d 88 (1998) (physical precedent only). The amendment relates back to the filing date of the original pleading. *Id.*[1]

**[3]** Does this principle apply to OCGA § 18–4–61 motions filed in garnishment proceedings? The Civil Practice Act, and specifically OCGA § 9–11–15(a), applies in garnishment proceedings. OCGA § 18–4–1; *Horizon Credit Corp. v. Lanier Bank &c. Co.*, 220 Ga.App. 362, 363(1), 469 S.E.2d 452 (1996). OCGA § 18–4–3 also provides that garnishment pleadings are amendable any time before judgment thereon. Motions to modify filed under OCGA § 18–4–61 are considered garnishment pleadings. See *Accredited Assoc. v. Shottenfeld*, 162 Ga.App. 575, 576(1), 292 S.E.2d 417 (1982); *Chambers v. Almond*, 146 Ga.App. 46, 47(1), 245 S.E.2d 336 (1978).

Accordingly, prior to judgment thereon, a motion filed under OCGA § 18–4–91 may be retroactively amended to substitute in the name and signature of a licensed Georgia attorney.

*Judgment affirmed.*

BLACKBURN, P.J., and BARNES, J., concur.



———————

1. The cases cited by North Georgia (*Howell v. Styles*, 221 Ga.App. 781, 783(3), 472 S.E.2d 548 (1996); *Magnan v. Miami Aircraft Support*, 217 Ga.App. 855, 858–859(5)(b), 459 S.E.2d 592 (1995); *LeaseFirst v. Paulk*, 200 Ga.App. 497, 498(1), 408 S.E.2d 707 (1991)) are distinguishable, for in none of these did the offending party seek to amend the defective filing by substituting in a licensed attorney.

# EXHIBIT D

**88** Ga.    **503 SOUTH EASTERN REPORTER, 2d SERIES**

232 Ga.App. 834

**McCORMICK et al.**

v.

**ACREE et al.**

No. A98A0719.

Court of Appeals of Georgia.

June 10, 1998.

Plaintiffs filed a complaint signed by an attorney not licensed to practice in state and then filed an amended complaint signed by properly licensed attorney before a pretrial order had been filed. The Superior Court, Cook County, Blitch, J., granted defendants' motion dismiss complaint, and plaintiffs appealed. The Court of Appeals, Andrews, C.J., held that complaint was voidable, not void, and defect was cured by amended complaint.

Reversed.

McMurray, P.J., concurred specially in separate opinion.

**1. Attorney and Client ⟜31**

Attorney who has not paid his state bar dues is not a member in good standing of bar and, therefore, is not authorized to practice law in the state. State Bar Rules and Regulations, Rule 1–204.

**2. Attorney and Client ⟜11(12)**

Complaint signed by attorney not licensed to practice in state was voidable, not void, and defect in complaint was cured, when plaintiffs filed an amended complaint signed by properly licensed attorney prior to the issuance of a pretrial order. O.C.G.A. § 9–11–15(a).

Chevene B. King, Jr., Albany, for appellants.

Watson, Spence, Lowe & Chambless, Thomas S. Chambless, Dawn G. Benson, Al-

bany, Alexander & Vann, George R. Lilly II, Thomasville, for appellees.

ANDREWS, Chief Judge.

Brenda and Elco McCormick appeal from the trial court's order dismissing their complaint. The sole issue on appeal is whether the trial court erred in finding the complaint was void because the McCormicks' counsel was not a member in good standing of the State Bar of Georgia and, therefore, was not authorized to practice law at the time he signed the complaint. For the reasons which follow, we hold the complaint was not void but merely voidable and, accordingly, we reverse the judgment of the trial court.

[1]  The McCormicks filed their complaint on December 15, 1992. Their attorney, Chevene B. King, signed the complaint. OCGA § 9–11–11(a) requires that all pleadings be signed by either the party, if not represented by an attorney, or by at least one attorney of record if the party is represented by an attorney. State Bar of Georgia Rule 1–203 provides that, with some exceptions, "[n]o person shall practice law in this State unless such person is an active member of the State Bar of Georgia in good standing; . . ." State Bar Rule 1–204 states: "No person shall be deemed a member in good standing: (a) while delinquent after September 1 of any year for nonpayment of the license fee prescribed . . ." It follows from the rules above that an attorney who has not paid his bar dues is not a member in good standing of the State Bar and, therefore, is not authorized to practice law in this state. It is undisputed that King had not paid his bar dues at the time he signed the complaint and therefore was not a member in good standing of the State Bar of Georgia.[1]

The McCormicks amended their complaint on October 13, 1993, adding the name of an attorney who was a member in good standing at the time the complaint was filed. No pretrial order had been filed at the time of the amendment. On August 12, 1996, defendants filed a motion to dismiss, alleging that plaintiffs' complaint was void because their

---

1.  King did not pay his 1992–1993 bar dues by September 1, 1992. Accordingly, from September 1, 1992, until December 30, 1992, when King

paid the dues and the late fee, he was not a member in good standing of the State Bar of Georgia.

McCORMICK v. ACREE                                    Ga.  **89**
Cite as 503 S.E.2d 88 (Ga.App. 1998)

attorney was not a member in good standing when the complaint was filed. The trial court granted the motion, finding that because the complaint was not filed in accordance with OCGA § 9–11–11(a), it was void and a nullity and could not be amended. This appeal followed.

[2] On appeal, the McCormicks argue that *Bandy v. Hosp. Auth. of Walker County*, 174 Ga.App. 556, 332 S.E.2d 46 (1985) controls the issue in this case. Acree and Memorial Hospital of Adel, the two defendants remaining in the case, argue that *Bandy* is no longer the law because it was not followed in *Howell v. Styles*, 221 Ga.App. 781, 472 S.E.2d 548 (1996), *Magnan v. Miami Aircraft Support*, 217 Ga.App. 855, 459 S.E.2d 592 (1995), and *LeaseFirst v. Paulk*, 200 Ga.App. 497, 408 S.E.2d 707 (1991). We disagree. *Bandy* is directly on point and has not been overruled, tacitly or otherwise.

In *Bandy*, as in this case, the complaint was signed by an attorney not licensed to practice law in Georgia. Plaintiffs sought to amend the complaint by adding the signature of a Georgia attorney. We held that since the plaintiffs had sought promptly to cure the defect and since no pretrial order had been filed as of the time of the amendment, the trial court erred in dismissing the complaint. *Bandy*, supra at 557, 332 S.E.2d 46.

In support of this holding, the court in *Bandy* cited *MCG Dev. Corp. v. Bick Realty Co.*, 140 Ga.App. 41, 43, 230 S.E.2d 26 (1976) for the proposition that OCGA § 9–11–15(a) is to be liberally construed in favor of allowing amendments particularly when the opposing party is not prejudiced. *Bandy*, supra at 557, 332 S.E.2d 46. *Bandy* analogized this situation to those cases where an attorney or party failed to sign or verify a pleading; in which case, the pleading is not null and void but rather has an amendable defect. *Id.* See also *MCG Dev. Corp.*, supra at 43, 230 S.E.2d 26; *Edwards v. Edwards*, 227 Ga. 307, 308, 180 S.E.2d 358 (1971); *Cook v. Walker*, 161 Ga. 551, 554, 131 S.E. 288 (1926).

Appellees' argument that *Howell*, *Magnan*, and *LeaseFirst* have implicitly overruled *Bandy* overlooks the dispositive issue in *Bandy* which was not present in any of the above cases; namely, whether plaintiffs

should be allowed to amend their complaint under OCGA § 9–11–15(a). *Howell* is similar to this case in that the attorney representing the defendant was allegedly delinquent in paying his bar dues. But, there was no request to substitute an attorney in good standing with the State Bar. Further, the issue in that case was whether the requests for admissions were a nullity because they were not signed by an attorney authorized to practice law in the state. We held the requests were a nullity if the attorney was not authorized to practice law and, therefore, the plaintiff was not required to respond to them. *Howell*, supra at 784, 472 S.E.2d 548. There is nothing in this opinion which can be construed as tacitly overruling the holding in *Bandy*.

Likewise in *Magnan*, the attorney who represented the defendant was a Florida attorney who was never specially admitted under Superior Court Rule 4.4. Therefore, we held that he could not file pleadings on behalf of the defendant. *Magnan*, supra at 859, 459 S.E.2d 592. Again, this is not the same as the issue decided in *Bandy*.

*LeaseFirst* also concerned an out-of-state attorney who did not comply with Uniform Superior Court Rule 4.4. In that instance, the attorney signed an affidavit for a garnishment form as the attorney for LeaseFirst. We held the trial court correctly dismissed the garnishment because, although the attorney could have signed as an agent and the affidavit would have been valid, he instead signed as attorney for the party and, therefore, the affidavit could not be considered. *LeaseFirst*, supra at 499, 408 S.E.2d 707.

These cases are all distinguishable from *Bandy* in that they do not involve OCGA § 9–11–15(a) which allows a party to amend his pleadings without leave of court prior to the entry of a pretrial order. Therefore, following the holding in *Bandy* and mindful of case law requiring a liberal construction of OCGA § 9–11–15(a) in favor of allowing the amendment, we hold that the complaint as filed was not void but merely voidable and the defect in the complaint was cured by the

**90** Ga.          **503 SOUTH EASTERN REPORTER, 2d SERIES**

amendment. Accordingly, the trial court erred in dismissing the complaint.

*Judgment reversed.*

BLACKBURN, J., concurs.

McMURRAY, P.J., concurs specially.

McMURRAY, Presiding Judge, concurring specially.

Under the controlling authority of *Bandy v. Hosp. Auth. of Walker County,* 174 Ga. App. 556, 557 (1) (b), 332 S.E.2d 46, the "absence of a signature by an attorney in compliance with Rule 1–203 [and 1–204], Rules of the State Bar of Georgia and OCGA § 9–11–11(a) was a defect which [plaintiff-appellants] timely cure[d] by amending the complaint to add the name and signature of a Georgia attorney [in full compliance with the applicable State Bar Rules]. Because no pre-trial order had been entered, the trial court erred [in] refusing to allow [plaintiffs to] amend. OCGA § 9–11–15(a); *Downs [v. Jones,* 140 Ga.App. 752, 753(1), 231 S.E.2d 816 ]." Consequently, the majority correctly holds the trial court in the case sub judice erred in dismissing the complaint. I do not join in the characterization of that complaint as being only "voidable," as opposed to "void." It is enough to say the pleading defect is amendable, and was, in this instance, timely cured. I respectfully concur in the judgment only.



232 Ga.App. 850

**BOOMERSHINE PONTIAC–
GMC TRUCK, INC.**

**v.**

**SNAPP.**

**No. A98A0770.**

Court of Appeals of Georgia.

June 12, 1998.

Auto dealership sued new truck buyer for breach of contract and fraud. Buyer filed counterclaim against dealership for breach of contract and fraud. After verdict was directed for buyer on dealership's claims, and after jury returned verdict for dealership on buyer's counterclaims, the State Court, Gwinnett County, Fuller, J., granted buyer's motion for award of attorney fees. Dealership appealed. The Court of Appeals, Harold R. Banke, Senior Appellate Judge, held that trial court's failure to specify statutory subsection under which attorney award was made, and trial court's failure to set forth findings necessary to support such award, required that award be vacated and case remanded for reconsideration.

Vacated.

1. **Appeal and Error ⇐1071.1(5.1)**

Trial court's failure to specify statutory subsection under which attorney fee award was made, and trial court's failure to set forth findings necessary to support such award, required that award be vacated and case remanded for reconsideration. O.C.G.A. § 9–15–14(a, b).

2. **Costs ⇐207**

Party moving for attorney fee award has burden to prove his costs of attorneys fees and reasonableness of those costs. O.C.G.A. § 9–15–14(a, b).

3. **Costs ⇐208**

Where motion for award of attorney fees is made, nonmovant is entitled to evidentiary hearing at which it might confront and challenge value and need for legal services claimed. O.C.G.A. § 9–15–14(a, b).

———————

Stephen C. Whicker, for appellant.

McKinney & Salo, Jan McKinney, Norcross, for appellee.

HAROLD R. BANKE, Senior Appellate Judge.

Pursuant to the grant of an interlocutory appeal under OCGA § 5–6–35(a)(10), Boomershine Pontiac–GMC Truck, Inc., appeals

# EXHIBIT E

**Lusk v. Lager**

Superior Court of California, County of Alameda

May 17, 2018, Decided

No. RG16833350

**Reporter**
2018 Cal. Super. LEXIS 31439 *

Lusk, Plaintiff/Petitioner(s) v. Lager, Defendant/Respondent(s)

**Core Terms**

**subpoena**, procedural requirements, monetary sanctions, motion to compel, tentative ruling, **out-of-state**, compliance, appearing, issuance

**Judges:**  [*1] Stephen Pulido, Judge.

**Opinion by:** Stephen Pulido

**Opinion**

Order

Motion to Compel (Motion) Partial Grant

The **Motion to Quash** was set for hearing on 05/17/2018 at 03:00 PM in Department 517 before the Honorable Stephen Pulido. The Tentative Ruling was published and was contested.

Opposing Party William J Lusk appearing in pro per. Moving Party Andrew Lager appeared by counsel Eastridge, Thomas.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The Motion of Defendant Andrew Lager to Quash the Business Records **Subpoena** Served by Plaintiff William J. Lusk on Citibank, N.A., in Long Island City, New York, pursuant to CCP § 1987.1(a)(1), is GRANTED.

Plaintiffs **subpoena** demands that Defendant Citibank produce various categories of documents for the accounts held by Defendants Frances Lager, Andrew Lager, and William J. Lusk for the period from January 2009 to March 2015. Plaintiff Lusk was married to Frances Lager from 1993 to February 2015. The Judgment of Dissolution was entered by the Contra Costa County Superior Court on February 6, 2015. Plaintiff alleges in this action that his former wife and her son from a previous relationship, Andrew [*2] Lager, opened new accounts in order to steal money from accounts that he jointly held with Frances Lager.

The **Motion to Quash Subpoena** is granted because it is void on its face. Plaintiff Lusk failed to comply with the procedural requirements of the Interstate and International Depositions and Discovery Act for the issuance of the **out-of-state subpoena**. See CCP § 2029.300. If Plaintiff had complied with the procedural requirements for the issuance of an **out-of-state subpoena**, any **motions** to compel compliance, to **quash** the **subpoena**, or for a protective order must be filed in the county where compliance with the **subpoena** was to take place. See CCP § 2029.600(a).

Defendant's request that the Court impose a monetary sanction on Plaintiff Lusk in the sum of $2,647.50, pursuant to CCP § 1987.2(a), is DENIED. The decision to award a monetary sanction is entrusted to the discretion of the Court. In this particular situation, the Court does not believe that an award of sanctions is warranted because counsel did not make an attempt to meet and confer and arguably filed the motion in the wrong court.

The **Court** will prepare the **order** and mail copies to the parties. Counsel for Defendant Andrew Lager shall file and serve the Notice of Entry of [*3] Order within five (5) days of the date shown on the Clerk's

NOTICE: Effective June 4, 2012, the Court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201.

Dated: 05/17/2018

/s/ Stephen Pulido

Judge Stephen Pulido


Lusk v. Lager, 2018 Cal. Super. LEXIS 31439

# EXHIBIT F

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

134 Nev. 25
134 **Nev**. Adv. Op. 5
Supreme **Court** of **Nevada**.

John B. **QUINN**, an individual; Michael T. Zeller,
an individual; Michael L. Fazio, an individual; and
Ian S. Shelton, an individual; and Elaine P. Wynn,
an individual, Petitioners,
v.
The **EIGHTH JUDICIAL** DISTRICT **COURT** of
the State of **Nevada**, IN AND FOR THE COUNTY
OF CLARK; and the Honorable Elizabeth Goff
Gonzalez, District Judge, Respondents,
and
Kimmarie Sinatra, an individual; Wynn Resorts,
Limited, a **Nevada** corporation, Real Parties in
Interest.

No. 74519
|
FILED FEBRUARY 08, 2018

**Synopsis**
**Background:** After out-state-attorneys, who were granted
pro hac vice admission, withdrew, defendant filed
retaliatory abuse of legal process counterclaim and caused
deposition subpoenas to be issued in attorneys' home
state. As attorneys petitioned to quash subpoenas in their
home state, the District **Court**, Clark County, Elizabeth
Goff Gonzalez, J., granted defendant's motion to compel
attorneys' depositions in defendant's state. Attorneys filed
writ petition.

**Holdings:** The Supreme **Court**, Hardesty, J., held that:

[1] writ relief was appropriate, and

[2] District **Court** lacked authority to compel attorneys to
appear for depositions.

Vacated.

**Procedural Posture(s):** On Appeal; Motion to Compel
Discovery; Other.

West Headnotes (10)

[1]    **Pretrial Procedure**⟜Parties' agents or
employees

A party seeking to depose an opposing party's
counsel must first demonstrate that the
information sought cannot be obtained by other
means, is relevant and nonprivileged, and is
crucial to the preparation of the case.

[2]    **Mandamus**⟜Acts and proceedings of **courts**,
judges, and **judicial** officers
**Mandamus**⟜Modification or vacation of
judgment or order
**Mandamus**⟜Proceedings in civil actions in
general

Writ relief was appropriate for
out-state-attorneys contesting order compelling
attorneys to sit for depositions, based on
out-state subpoenas, as nonparty witnesses in
civil action, where appeal was unavailable,
attorneys did not have plain, speedy, and
adequate remedy in ordinary course of law, and
attorneys claimed writ was necessary to prevent
improper disclosure of privileged and
confidential information. **Nev** Rev. St. §
34.170.

1 Case that cites this headnote

[3]    **Mandamus**⟜Discretion as to grant of writ

The decision to entertain a writ petition lies
solely within the discretion of the Supreme
**Court**.

2 Cases that cite this headnote

[4]    **Prohibition**⟜Specific acts

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

A writ of prohibition may be an appropriate remedy for the prevention of improper discovery. **Nev**. Rev. St. § 34.320.

2 Cases that cite this headnote

**[5]**  **Pretrial Procedure**⬦Parties' agents or employees
**Pretrial Procedure**⬦Subpoena, compelling attendance

District **Court** lacked authority, under state rules and the Uniform Interstate Depositions and Discovery Act (UIDDA), to compel out-of-state attorneys to appear in state for depositions, based on out-state subpoenas, as nonparty witnesses in civil action pending in state **court**; although attorneys previously appeared pro hac vice in the state **court** action, where challenge to subpoena was pending in out-of-state **court**, and District **Court's** subpoena power was limited to geographic restriction of the state. **Nev**. Rev. St § 53.100–.200; **Nev**. R. Civ. P. 45.

3 Cases that cite this headnote

**[6]**  **Pretrial Procedure**⬦Subpoena, compelling attendance

The Uniform Interstate Depositions and Discovery Act (UIDDA) provides that when a party seeks out-of-state discovery, the party must first obtain a subpoena from the trial state and then submit that subpoena to the clerk of **court** in the discovery state, who then reissues the subpoena within the discovery state; any motion practice associated with the discovery subpoena, such as a motion to enforce or quash a subpoena, must take place in the discovery state and is governed by the law of the discovery state. **Nev**. Rev. St. § 53.100–.200.

3 Cases that cite this headnote

**[7]**  **Courts**⬦Jurisdiction of the Person in General
**Witnesses**⬦Power or authority to issue

The concept of personal jurisdiction is different from that of subpoena power. **Nev**. Rev. St. § 14.065(1), (2).

**[8]**  **Courts**⬦Jurisdiction of the Person in General

Personal jurisdiction is based on conduct that subjects an out-of-state party to the power of the **court** to adjudicate its rights and obligations in a legal dispute, sometimes arising out of that very conduct. **Nev**. Rev. St. § 14.065(1), (2).

**[9]**  **Pretrial Procedure**⬦Subpoena, compelling attendance

Subpoena power is based on the power and authority of the **court** to compel the attendance at a deposition of a nonparty in a legal dispute between other parties. **Nev**. R. Civ. P. 45.

**[10]**  **Attorneys and Legal Services**⬦Power to regulate and control in general
**Attorneys and Legal Services**⬦Persons subject to standards
**Pretrial Procedure**⬦Subpoena, compelling attendance

District **Court's** inherent authority over attorneys who appear and practice in state did not provide the **court** with authority to compel out-of-state nonparty attorneys to comply with discovery as exception to **court's** subpoena power. **Nev**. R. Civ. P. 45; **Nev**. Sup. Ct. R. 39.

1 Case that cites this headnote

025

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

**985** Original petition for a writ of prohibition or mandamus challenging a district court order granting a motion to compel depositions.

**Attorneys and Law Firms**

McDonald Carano LLP and Pat Lundvall, Las Vegas, for Petitioners John B. Quinn, Michael T. Zeller, Michael L. Fazio, and Ian S. Shelton.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Abraham G. Smith, Las Vegas; Greenberg Traurig, LLP, and Mark E. Ferrario and Tami D. Cowden, Las Vegas; Sidley Austin, LLP, and James M. Cole, Washington, D.C.; Sidley Austin, LLP, and Scott D. Stein, Chicago, Illinois, for Petitioner Elaine P. Wynn.

Brownstein Hyatt Farber & Schreck LLP and Mitchell J. Langberg, Las Vegas; Pisanelli Bice PLLC and Todd L. Bice, James J. Pisanelli, and Debra L. Spinelli, Las Vegas; Glaser Weil Fink Howard Avchen & Shapiro LLP and Robert L. Shapiro, Los Angeles, California, for Real Parties in Interest.

BEFORE THE COURT EN BANC.[1]

OPINION

By the Court, HARDESTY, J.:

**\*26** In this writ petition, we consider whether a Nevada district court has authority to compel an out-of-state[2] attorney to appear in Nevada for a deposition as a nonparty witness in a civil action pending in Nevada state court where the attorney has appeared pro hac vice in the action. We conclude that it does not. Because the district court lacked authority to compel the out-of-state nonparty witnesses to be deposed, we grant the writ petition and vacate the district court's order.

FACTS AND PROCEDURAL HISTORY

This writ petition arises from ongoing litigation in Nevada state court involving Wynn Resorts, Ltd., and Elaine Wynn. Petitioners John B. Quinn, Michael T. Zeller, Michael L. Fazio, and Ian S. Shelton (collectively, Quinn attorneys) are attorneys at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, a firm based in California, who represented Elaine in the Wynn Resorts litigation from January 2016 to March 2017. All four attorneys are California residents and were granted pro hac vice admission in Nevada for the purpose of that litigation. While represented by Quinn Emanuel, Elaine asserted claims against real parties in interest Kimmarie Sinatra (general counsel for Wynn Resorts) and Wynn Resorts.

In September 2017, approximately six months after Quinn Emanuel had withdrawn from representing Elaine, Sinatra filed a retaliatory "abuse of legal process" counterclaim against Elaine, alleging that the abuse of process began in early 2016 when Elaine **\*986** retained Quinn Emanuel to represent her. The counterclaim alleged that, through Quinn Emanuel, Elaine attempted to intimidate Sinatra into accepting a settlement proposal, filed a pleading asserting frivolous and false claims against her, and abused the discovery process. In October 2017, pursuant to California's Uniform Interstate Depositions and Discovery Act, Sinatra caused deposition subpoenas to be **\*27** issued in California directing the Quinn Emanuel attorneys to appear for deposition in California in late October.

The Quinn Emanuel attorneys objected to the California subpoenas and, after unsuccessful meet and confer efforts, filed a petition to quash the subpoenas in the California superior court on October 23. The petition alleged, among other things, that service of the subpoenas was defective and that Sinatra sought information that was protected by attorney-client privilege and work-product privilege and could not satisfy the test to depose an opposing party's counsel. Sinatra filed an ex parte application in the California court to compel the depositions and shorten the time on hearing the petition so that the Quinn Emanuel attorneys could be deposed before the November 3 discovery cutoff date in the Nevada action. The attorneys opposed the application and sought sanctions. The California court denied Sinatra's request on October 27, explaining that such short notice was never appropriate and was especially not appropriate here where there were attorney-client privilege issues and where a shortened time schedule would deprive the moving parties "of due process and would certainly deprive the court of time to fully consider and prepare the motion."

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

On October 30, Sinatra filed in the Nevada district court a motion to compel depositions and requesting an order shortening time. Sinatra asserted that the Quinn Emanuel attorneys had attempted to evade service of the subpoenas and had filed a frivolous petition to quash the subpoenas in the California court, and, since the California court refused to hear the matter until after the discovery cutoff date, she was asking the Nevada court to hear the matter on shortened time and to order the attorneys to appear for deposition in Nevada by the discovery cutoff date. The motion further asserted that, because the Quinn Emanuel attorneys had appeared before the district court as counsel for Elaine in this case, the district court had personal jurisdiction over them. The motion also argued that the district court's power under NRCP 37(a) to enter an order compelling discovery and the court's discretion over discovery matters provided the district court with the authority to grant the motion. The Quinn Emanuel attorneys opposed the motion, arguing that the Nevada district court had no jurisdiction over the California discovery dispute. The district court granted the request to shorten time and set a hearing for November 6.

At the hearing, petitioners' counsel argued that the Quinn Emanuel attorneys all reside in California and were issued California subpoenas, and there is no rule of procedure, statute, or rule of practice that allows the Nevada district court to compel the depositions and usurp the power of the California court over this discovery dispute. Petitioners' counsel further argued that the district court did not have jurisdiction over the dispute under the Uniform Interstate Depositions and Discovery Act, *28 which had been adopted by both California and Nevada, because the matter was pending in the California superior court, which had already exercised jurisdiction over the matter and denied a similar request by Sinatra. Petitioners' counsel asked the district court to decline hearing the motion and let it be heard in California pursuant to the uniform act and full faith and credit and comity principles. The district court found that it had jurisdiction over the attorneys because they had appeared in Nevada court in this case on a pro hac vice basis. The district court granted Sinatra's motion to compel the depositions of the attorneys and ordered the depositions to take place in Las Vegas. The district court entered a stay of its order to allow petitioners to file a writ petition with this court.

[1]After the petitioners filed the instant writ petition, the California superior court held a hearing on the petition to quash the subpoenas and granted it. The California court concluded that it had jurisdiction over the subpoenas, applied a three-prong test **987 identical to that used in Nevada for determining the propriety of attorney

depositions,[3] and found that Sinatra failed to establish a proper basis for deposing the Quinn Emanuel attorneys. The California court also found that Sinatra's opposition to the petition to quash was without substantial justification and thus ordered Sinatra to pay sanctions in the amount of $10,000 to the attorneys. The parties stipulated not to enforce the orders until the instant writ petition is resolved, and Sinatra agreed not to appeal the California court's order quashing the subpoenas.

*DISCUSSION*

*Writ relief is appropriate*

[2] [3] [4]The decision to entertain a writ petition lies solely within the discretion of this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). A writ of mandamus or prohibition may issue only "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; NRS 34.330. A writ of prohibition may be granted when the district court exceeds its jurisdiction, NRS 34.320, and may be an "appropriate remedy for the prevention of improper discovery." *Valley Health Sys., LLC v. Eighth Judicial Dist. Court*, 127 Nev. 167, 171 n.5, 252 P.3d 676, 678 n.5 (2011).

The Quinn Emanuel attorneys are not parties to the action below, NRAP 3A(a), and a pretrial order granting a motion to compel witnesses *29 to sit for depositions is not substantively appealable, NRAP 3A(b). Therefore, an appeal is not available to them, and they do not have a plain, speedy, and adequate remedy in the ordinary course of law. Furthermore, they claim that the writ is necessary to prevent improper disclosure of privileged and confidential information and because the district court had no jurisdiction to enter its order against them. Because a writ of prohibition is an appropriate method for making these challenges to a district court order and the Quinn Emanuel attorneys have no other adequate remedy, we exercise our discretion to entertain this writ petition.

*The district court did not have authority to order out-of-state nonparty witnesses to appear in Nevada for depositions*

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

[5]The **Quinn** Emanuel attorneys argue that the district **court** lacked jurisdiction to order them to appear in **Nevada** for depositions as nonparty witnesses. Because their petition challenging the validity of the discovery subpoenas was pending in the California superior **court**, the **Quinn** Emanuel attorneys contend that the California **court** had exclusive jurisdiction over the discovery dispute. Sinatra argues that the district **court's** order was proper because the district **court's** inherent authority over the attorneys who appear and practice in district **court**, combined with the **court's** authority over discovery matters, gave it inherent authority to compel the attorneys to comply with discovery.

The **Nevada** Rules of Civil Procedure provide that the attendance of a nonparty deponent at a deposition may be compelled by subpoenas as provided by NRCP 45. NRCP 30(a)(1); NRCP 45(a)(2). NRCP 45(b)(2) restricts the service of a subpoena on a nonparty to "any place within the state." Thus, as is evident from this rule, the subpoena power of **Nevada courts** over nonparty deponents does not extend beyond state lines. NRCP 45's intra-state limitation on **Nevada courts**' subpoena power is consistent with authority from other states recognizing the geographic restrictions of a state's discovery process. *See, e.g.,* Colo. Mills, LLC v. SunOpta Grains & Foods, Inc., 269 P.3d 731, 732 (Colo. 2012) ("Colorado **courts**, as a matter of state sovereignty, have no authority to enforce civil subpoenas against out-of-state nonparties."); Attorney Grievance Comm'n of Md. v. Mixter, 441 Md. 416, 109 A.3d 1, 9 (2015) ("[T]he subpoena powers of the State of Maryland stop at the state line." (internal quotation marks omitted) ); Craft v. Chopra, 907 P.2d 1109, 1111–12 (Okla. Civ. App. 1995) (concluding that the reach of Oklahoma's discovery **\*\*988** process does not extend beyond the state boundaries); *see also* Ryan W. Scott, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery,* 88 Minn. L. Rev. 968, 984 (2004) ("Most states retain strict limits on the reach of the subpoena power, holding that subpoena service cannot reach nonparties found outside **\*30** the state."). This territorial restriction on state **courts**' subpoena powers "reflects the traditional concept of states as sovereign powers, exercising plenary jurisdiction within their territories but largely powerless beyond state lines." Scott, *supra*, at 984.

[6]In recognition of the limited reach of the subpoena power, **Nevada** and many other states, including California, have "adopted the Uniform Interstate Depositions and Discovery Act ('UIDDA'), which provides a mechanism for parties litigating in one state, the trial state, to issue a subpoena to a nonparty in another

state, the discovery state." Colo. Mills, 269 P.3d at 734 (internal quotation marks omitted).[4] The UIDDA provides that when a party seeks out-of-state discovery, the party must first obtain a subpoena from the trial state (here, **Nevada**) and then submit that subpoena to the clerk of **court** in the discovery state (California), who then reissues the subpoena within the discovery state. Any motion practice associated with the discovery subpoena, such as a motion to enforce or quash a subpoena, must take place in the discovery state and is governed by the law of the discovery state. The commentary to the UIDDA explains the rationale behind this: "[T]he discovery state has a significant interest in protecting its residents who become non-party witnesses in an action pending in a foreign jurisdiction from any unreasonable or unduly burdensome discovery requests." UIDDA § 6 cmt. (Unif. Law Comm'n 2017).

In seeking to compel the depositions of the **Quinn** Emanuel attorneys, Sinatra initially complied with the procedures set forth in California's version of the UIDDA. Sinatra sought to depose the **Quinn** Emanuel attorneys in the California county in which they worked and resided. She obtained subpoenas first from the **Nevada** district **court** directing the **Quinn** Emanuel attorneys to appear for deposition in California, and then caused those deposition subpoenas to be reissued in California. Cal. Civ. Proc. Code §§ 2029.300, 2029.350 (West 2018). After the **Quinn** Emanuel attorneys filed a motion to quash the subpoenas in the California **court**, Sinatra moved to enforce the subpoenas by filing a motion to compel in the California **court**. Cal. Civ. Proc. Code § 2029.600(a) (West 2018) (providing that any request to enforce or quash a subpoena may be filed in the superior **court** in the county where the discovery is to be conducted). Because the discovery was to take place in California and the deposition subpoenas were issued in California, the California **court** had jurisdiction over the discovery dispute that ensued between the **Quinn** Emanuel attorneys and Sinatra. *Id.* This jurisdiction did not end merely because the California **court** refused to resolve the discovery dispute by the discovery cutoff date in the **Nevada** action as requested by Sinatra.

**\*31** Sinatra's attempt to enforce the California subpoenas in **Nevada** district **court** while a challenge to those subpoenas was pending in the California **court** was improper, and we conclude the **Nevada** district **court** had no authority to grant her motion to compel.[5] California's UIDDA governed the discovery dispute, and thus the authority to resolve the attorneys' petition to quash the subpoenas and Sinatra's motion to compel rested with the California superior **court**. This conclusion is consistent with **Nevada's** own UIDDA, codified at NRS

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

53.100–.200, which contemplates that enforcement of a subpoena issued to an out-of-state nonparty rests with "the **court** in the county in which discovery is to be conducted."[6] NRS 53.190; *see also* **989** NRS 53.200 (providing that, in applying and interpreting the UIDDA, "consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it"). In addition, NRCP 37(a)(1) requires that a motion to compel a nonparty deponent "be made to the **court** in the district where the deposition is being, or is to be, taken," rather than in the district **court** where the action is filed. Thus, it is clear that any application for an order to compel should have been made to and adjudicated by the California **court**.

Sinatra argues that, regardless of the California **court's** jurisdiction over the discovery dispute, the **Nevada** district **court** properly exercised its jurisdiction in granting the motion to compel. Sinatra contends that the district **court** was not enforcing the California subpoenas but rather was acting pursuant to its inherent authority when it ordered the **Quinn** Emanuel attorneys to appear in **Nevada** for depositions. Sinatra's argument, however, mischaracterizes the record. The district **court's** own statements in granting the motion to compel indicate that the district **court's** order was dependent on the California subpoenas, as no deposition notice or subpoena had been issued to the **Quinn** Emanuel attorneys for their appearance in **Nevada**. As we explained above, the district **court** had no authority to enforce the deposition subpoenas issued in California.

Even if we assume that Sinatra's motion to compel was not an attempt to enforce the California subpoenas and that the district **court's** order was independent of those subpoenas, Sinatra's arguments **\*32** about the district **court's** inherent authority fail for several reasons. First, because no subpoena or notice for deposition in **Nevada** was issued to the attorneys, there was no discovery in **Nevada** with which they could be ordered to comply.[7] Second, in light of the territorial restrictions on the district **court's** subpoena powers, the district **court** had no authority to compel the **Quinn** Emanuel attorneys to appear in **Nevada**.

[7] [8] [9]In determining that it had authority to compel the out-of-state nonparty attorneys to appear for depositions in **Nevada**, the district **court** relied on the **Quinn** Emanuel attorneys' pro hac vice applications to find that the attorneys had subjected themselves to the jurisdiction of **Nevada courts**. By using this jurisdiction as the basis for its subpoena authority, the district **court** appeared to conflate personal jurisdiction with subpoena power. As other jurisdictions have recognized, the concept of

personal jurisdiction is different from that of subpoena power. *See* *In re Nat'l Contract Poultry Growers' Ass'n,* 771 So.2d 466, 469 (Ala. 2000); *Phillips Petroleum Co. v. OKC Ltd. P'ship,* 634 So.2d 1186, 1187 (La. 1994); *Yelp,* 770 S.E.2d at 443. Personal jurisdiction is based on conduct that subjects an out-of-state *party* "to the power of the [**Nevada**] **court** to adjudicate its rights and obligations in a legal dispute, sometimes arising out of that very conduct." *Phillips,* 634 So.2d at 1187–88; *see also* NRS 14.065(1), (2). Subpoena power, on the other hand, "is based on the power and authority of the **court** to compel the attendance at a deposition of [a *nonparty*] in a legal dispute between other parties." *Phillips,* 634 So.2d at 1188. Here, the out-of-state witnesses are not parties to the civil action pending in **Nevada**. And the fact that the **Quinn** Emanuel attorneys were admitted pro hac vice in the **Nevada** action would not confer on the **Nevada** district **courts** the power to require them to appear for deposition as nonparty witnesses.[8] *See* *Syngenta Crop Prot., Inc. v. Monsanto Co.,* 908 So.2d 121, 129 (Miss. 2005) ("[A] Mississippi **court** cannot subpoena a nonresident **\*990** nonparty to appear and/or produce in Mississippi documents which are located outside the State of Mississippi, even if that nonresident nonparty is subject in another context to the personal jurisdiction of the **court**."); *Yelp,* 770 S.E.2d at 443 ("[T]he power to compel a nonresident non-party to produce documents in Virginia or appear and give testimony in Virginia is not based on consideration of whether the nonresident non-party would be subject to the personal jurisdiction **\*33** of a Virginia **court** if named as a defendant in a hypothetical lawsuit."). Accordingly, we conclude that the district **court's** basis for exercising subpoena power over the witnesses was erroneous.

[10]Finally, Sinatra argues that the district **court** nevertheless properly relied on the attorneys' pro hac vice admission to justify its grant of the motion to compel because the district **court's** inherent authority over attorneys who appear and practice in **court** provides the **court** with authority to compel those attorneys to comply with discovery. In support of this broad assertion, Sinatra cites to caselaw providing that district **courts** have the power to sua sponte remove counsel from representing a defendant, sanction or refer counsel to the State Bar for misconduct, and order an evidentiary hearing to ascertain whether counsel's conflict screening measures were adequate to protect the client in a case before the **court**. Sinatra's argument in this regard is unavailing. The inherent power of the **court** over attorneys is not limitless, and there is no logical connection between the **court's**

Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)

410 P.3d 984, 134 Nev. Adv. Op. 5

power to compel a nonparty witness to sit for deposition and the court's power to regulate the legal profession and stop or redress professional misconduct by out-of-state counsel. Sinatra sought to compel the Quinn Emanuel attorneys' appearance in their role as witnesses, not in their role as attorneys. Allowing the court to order an out-of-state nonparty witness to appear for a deposition merely because that witness happens to be an attorney is not consistent with the court's inherent authority over the legal profession. *See* SCR 39 ("Authority to admit to practice and to discipline [attorneys] is inherent and exclusive in the courts."); SCR 99(2) (recognizing the court's "power to maintain control over proceedings conducted before it, such as the power of contempt"). Thus, we decline to recognize an exception to the district court's subpoena power over an out-of-state nonparty witness when that witness is an attorney who has practiced in Nevada courts.

### CONCLUSION

We conclude that the district court had no authority to enforce out-of-state subpoenas issued to out-of-state

nonparty witnesses or to compel those witnesses to appear in Nevada for deposition in a civil action. Accordingly, we grant the petition for writ relief and direct the clerk of this court to issue a writ of prohibition directing the district court to vacate the order granting the motion to compel depositions.[9]

We concur:

Douglas, C.J.

Cherry, J.

Gibbons, J.

Stiglich, J.

**All Citations**

134 Nev. 25, 410 P.3d 984, 134 Nev. Adv. Op. 5

### Footnotes

[1]    The Honorable Ron D. Parraguirre, Justice, and the Honorable Kristina Pickering, Justice, voluntarily recused themselves from participation in the decision of this matter.

[2]    For the purposes of this opinion, "out-of-state" means a nonresident who is located outside of the state.

[3]    A party seeking to depose an opposing party's counsel in Nevada must first "demonstrate that the information sought cannot be obtained by other means, is relevant and nonprivileged, and is crucial to the preparation of the case." *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 225, 276 P.3d 246, 247 (2012).

[4]    *See* NRS 53.100–.200 (Nevada's version of the UIDDA); Cal. Civ. Proc. Code §§ 2029.100–.900 (West 2018) (California's version of the UIDDA).

[5]    The parties do not suggest, and the record does not reflect, that any Nevada subpoena requiring the Quinn Emanuel attorneys to appear for deposition in Nevada was issued to or served on the Quinn Emanuel attorneys in Nevada.

**Quinn v. Eighth Judicial District Court in and for County of Clark, 134 Nev. 25 (2018)**

410 P.3d 984, 134 Nev. Adv. Op. 5

[6]   Other states have likewise interpreted their own uniform acts as evidencing a legislative intent "that enforcement of civil subpoenas against out-of-state nonparties is left to the state in which the discovery is to take place." *Colo. Mills,* 269 P.3d at 735; *see also* 🚩 *Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.,* 289 Va. 426, 770 S.E.2d 440, 445 (2015) (explaining that Virginia's "UIDDA affords protection to Virginia citizens subject to a subpoena from another state by providing for enforcement of the subpoena in Virginia," and "[i]n turn, the UIDDA contemplates that Virginia ==courts== will respect the territorial limitations of their own subpoena power").

[7]   At oral argument, Sinatra suggested for the first time that the motion to compel was better characterized as a request to extend the discovery cutoff date. This assertion is belied by the record.

[8]   We make no decision on whether an attorney's pro hac vice admission in ==Nevada== could subject the attorney to the personal jurisdiction of the ==Nevada courts== in a civil action in which the attorney is a party.

[9]   In light of our decision, we deny as moot petitioners' motion to extend the district ==court's== stay.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT G

CATALINA MARKETING v. HUDYMAN    N. J.  **997**
Cite as 212 A.3d 997 (N.J.Super.A.D. 2019)

May 2015 agreement. Thus, the doctrine of unclean hands is inapplicable as it does not "foreclose a defense by a defendant brought into equity." Ibid.

To the extent we have not specifically addressed a particular argument or any of plaintiff's remaining arguments, it is because either our disposition makes it unnecessary or the argument is without sufficient merit to warrant discussion in a written opinion.[11] R. 2:11-3(e)(1)(E).

Affirmed.



459 N.J.Super. 613

**CATALINA MARKETING
CORPORATION, Plaintiff-Respondent,**

**v.**

**Louis HUDYMAN, Defendant-
Appellant.**

**DOCKET NO. A-3044-18T4
A-3651-18T4**

Superior Court of New Jersey,
Appellate Division.

Argued May 20, 2019

Decided June 25, 2019

**Background:** Former employer, which terminated employee and then filed complaint alleging violation of post-employment restrictive covenants, served subpoenas to employee's new employer at employer's New York address, and employee moved to quash. After motion was dismissed without prejudice for lack of jurisdiction, pursuant to rule requiring that depositions taken outside state be governed by procedures authorized by for-

eign state, and thus brought in court in county in which discovery was to be conducted, which reflected state's adoption of Uniform Interstate Depositions and Discovery Act (UIDDA), former employer served subpoenas on new employer in California, and employee moved to quash. The Superior Court, Chancery Division, Morris County, dismissed motion with prejudice, finding that California had also adopted UIDDA. Employee sought emergent relief.

**Holdings:** The Superior Court, Appellate Division, Messano, P.J.A.D., held that:

(1) provision of UIDDA requiring that applications to enforce or quash subpoena comply with rules of discovery state and be submitted to court in such state deprived New Jersey trial judge of jurisdiction to enforce subpoenas brought by former employer against new employer or to consider motion brought by new employer, a non-party, to quash subpoenas, and

(2) New Jersey court had jurisdiction to consider whether discovery sought by former employer was relevant, related to claim of party seeking discovery, or if it was reasonably calculated to lead to discovery of admissible evidence.

Affirmed in part and remanded in part.

1. **Pretrial Procedure** ⬥129

Provision of Uniform Interstate Depositions and Discovery Act (UIDDA) requiring that applications to enforce, quash, or modify subpoena comply with rules of discovery state and be submitted to court in such state deprived New Jersey trial judge of jurisdiction to enforce subpoenas brought by employee's former, New Jersey, employer, which alleged that employ-

---

**11.** For example, plaintiff argues the judge should have denied defendant's counterclaim for a declaratory judgment. The judge, in fact,

dismissed the counterclaim, and that decision has not been appealed.

ee violated post-employment restrictive covenants, against employee's new, New York, employer or to consider motion brought by new employer, a non-party, to quash subpoenas; such motions needed to be brought in either New York or California, where new employer had a presence, pursuant to procedures and laws of such states. N.Y. CPLR § 3119(e); Unif. Interstate Depositions and Discovery Act § 6.

**2. Pretrial Procedure ⇐129**

New Jersey court had jurisdiction to consider whether subpoenas sought by employee's former employer against new, out-of-state employer after employee allegedly violated post-employment restrictive covenants while working for new employer was relevant to subject matter involved in action, related to claim or defense of party seeking discovery or of any other party, or if information sought appeared reasonably calculated to lead to discovery of admissible evidence; although Uniform Interstate Depositions and Discovery Act (UIDDA), which had been adopted by New Jersey, provided parties with ability to enforce subpoenas in foreign jurisdiction, it was not intended to divest courts in trial state of jurisdiction to resolve discovery disputes, or to enter orders to protect parties from annoyance or undue burden. Unif. Interstate Depositions and Discovery Act § 6; N.J. Ct. R. 4:11-5(c).

———————

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000129-18.

Steven C. Schechter, Fair Lawn, argued the cause for appellant.

David Lichtenberg, Murray Hill, argued the cause for respondent (Fisher Phillips LLP, attorneys; David Lichtenberg and William E. Corum (Husch Blackwell, LLP) of the Missouri bar, admitted pro hac vice,

of counsel; David J. Treibman, Murray Hill, on the briefs).

Before Judges Messano, Fasciale and Gooden Brown.

|₆₁₅The opinion of the court was delivered by

MESSANO, P.J.A.D.

We granted defendant Louis Hudyman leave to appeal two orders of the Chancery Division that "dismissed without prejudice for lack of jurisdiction" his motions to quash subpoenas served on an out-of-state non-party, Quotient Technology, Inc. (Quotient), defendant's current employer, by plaintiff Catalina Marketing Corporation, his former employer. After terminating defendant during a "reduction in force," plaintiff filed a verified complaint alleging defendant violated "post-employment restrictive covenants" in his separation agreement and the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 to -9.

The court entered an order to show cause as to why preliminary restraints should not issue. Prior to the return date, plaintiff issued subpoenas duces tecum and ad testificandum to Quotient, domesticated the New Jersey subpoenas in accordance with New York law, and served them at Quotient's Monsey, New York address. The subpoenas were returnable at counsel's office in Manhattan.

Defendant moved to quash the subpoenas, alleging that Quotient was amenable to service in New Jersey because it did |₆₁₆business in, and, he resided in, the state, and that attendance at a deposition in New York was unduly burdensome. Defendant also alleged that the subpoenas sought irrelevant information, including, for example, "the terms and conditions" of his hiring and employment with Quotient. Finally, defendant alternatively urged the court to enter a protective order under

**CATALINA MARKETING v. HUDYMAN**    N. J.    **999**
Cite as 212 A.3d 997 (N.J.Super.A.D. 2019)

Rule 4:10-3 addressing some of these concerns. Defendant did not request oral argument.

Plaintiff opposed the motion. It certified that Quotient had no New Jersey address or registered agent for service, and New York was the nearest state where the company had a serviceable presence. Although Quotient had been cooperating with plaintiff's counsel, it now refused to comply with the subpoenas until the court decided the motion to quash. See R. 4:14-7(c) ("[I]f the deponent is notified that a motion to quash the subpoena has been filed, the deponent shall not produce or release the subpoenaed evidence until ordered to do so by the court or the release is consented to by all parties to the action."). The judge then handling the case agreed to adjourn the return date "to afford the court and the parties adequate time to address the motion to quash."

When the judge retired, a different judge assumed control of the litigation. She entered the February 14, 2019 order now subject to our review. In her written statement of reasons, the judge accepted that defendant's residency in New Jersey did not make Quotient amenable to service because defendant was not "an officer, registered agent, or any other person authorized to accept service on behalf of Quotient." See R. 4:4-4(a)(6) (explaining the requirements of service upon a corporation in New Jersey). She reasoned that Rule 4:11-5, reflecting New Jersey's adoption of the Uniform Interstate Depositions and Discovery Act (the UIDDA), controlled.

The judge dismissed defendant's motion without prejudice, concluding "th[e] court lack[ed] jurisdiction to rule on defendant's motion to quash an out[-]of[-]state subpoena." Instead, both subpoenas were governed by the "procedures authorized by the foreign state[,]" Rule 4:11-5(c), and, pursuant to New York law, $_{[617}$challenges

to out-of-state subpoenas must be brought "to the court in the county in which discovery is to be conducted." N.Y. CPLR § 3119(e). Defendant filed an emergent application for a stay and permission to file a motion for leave to appeal on an emergent basis. Our colleagues granted defendant's motion for leave to appeal but did not stay further proceedings in the trial court.

In the interim, plaintiff issued two similar New Jersey subpoenas, properly domesticated them in California, and served them on Quotient in California. Defendant again moved to quash with the same result. The judge dismissed the motion without prejudice, noting that California, like New York and New Jersey, adopted the UIDDA. Pursuant to California Civil Procedure Code § 2029.600(a), "any request for a protective order or to enforce, quash, or modify a subpoena, or for other relief may be filed in the superior court in the county in which discovery is to be conducted and, if so filed, shall comply with the applicable rules or statutes of this state." Defendant again sought emergent relief from this March 15, 2019 order, which we granted.

Between entries of our two orders, the judge filed a written amplification of reasons. R. 2:5-6(c). She explained, "[t]o clarify, the court did not mean it lacked jurisdiction to reach the merits of the motions to quash, but instead lacked jurisdiction over out-of-state non-party witnesses to compel their appearance at out[-]of[-]state locations." Citing Rules 4:11-4, 4:11-5 and 4:14-7, the judge reasoned that New Jersey, like New York and California, "require[s] motions related to enforcement, modification, or quashing of a foreign subpoena be submitted to a court in the discovery state."

Defendant argues that New Jersey has never adopted the UIDDA and the judge has jurisdiction to consider his arguments

**1000** N. J.          **212 ATLANTIC REPORTER, 3d SERIES**

about the scope of discovery sought from Quotient, see Rule 4:10-2, and whether to issue a protective order. R. 4:10-3.[1] Plaintiff <sub>619</sub>reiterates that under Rule 4:11-5(c), New Jersey lacks jurisdiction to quash the subpoenas and further advised us at oral argument that Quotient has presently refused to comply with the subpoenas.

We reject defendant's assertion that New Jersey has not adopted, at least in part, the UIDDA. See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:11-4, and cmt. 1 on R. 4:11-5 (2019) (noting that although the UIDDA has not been formally adopted, these rules "effectively adopt[ ]" and "conform[ ] with" provisions of the UIDDA). Rule 4:11-5 governs out-of-state depositions in litigation filed in New Jersey and provides, in relevant part, that "[a] deposition for use in an action in this state ... may be taken outside this state either (a) on notice pursuant to Rule 4:14-2, ... or (c) pursuant to a subpoena issued to the person to be deposed in accordance with Rule 4:14-7 and in accordance with the procedures authorized by the foreign state ...." This subsection "conforms with the [UIDDA], now adopted by most states, and makes clear that although the subpoena [is] issue[d] in accordance with Rule 4:14-7[,] it will be enforced in accordance with the procedures of the foreign state." Pressler & Verniero, cmt. 1 on R. 4:11-5.

The intent of the UIDDA was to

set[ ] forth a uniform procedure for subpoenaing the depositions of out-of-state individuals and the production of discoverable materials located outside of the trial state whereby a subpoena issued by a court in the trial state (or forum state) is then enforced by the clerk of a court in the discovery state (or foreign jurisdiction).

[Marna L. Brown, State of New Jersey Law Revision Commission Final Report Relating to the Uniform Interstate Depositions and Discovery Act, 37 Seton Hall Legis. J. 241, 242 (2013).]

Pursuant to the UIDDA, "[a]n application to the court for a protective order or to enforce, quash, or modify a subpoena ... must comply with the rules or statutes of th[e discovery] state and be submitted to the court ... in which discovery is to be conducted." Unif. Interstate Depositions and Discovery Act § 6 (Nat'l Conference of Comm'rs on Unif. State Laws 2007). This reflects the UIDDA's recognition that "the discovery state has a significant interest in protecting its residents who become non-party <sub>619</sub>witnesses in an action pending in a foreign jurisdiction ...." Id. at cmt. on § 6.

**[1]** We have no doubt that the judge correctly decided she lacked jurisdiction to "enforce" the subpoenas or to consider a motion brought by Quotient, a non-party, to quash the subpoenas. Although plaintiff advised us at argument that Quotient refuses to comply with the subpoenas, nothing in the record confirms that assertion. Plaintiff is free to litigate the issue of Quotient's refusal to comply with the subpoenas, and Quotient has the ability to move to quash the subpoenas, in both New York and California, in accordance with the respective procedures and laws of those states. See, e.g., Quinn v. Eighth Judicial Dist. Ct., 410 P.3d 984, 988 (Nev. 2018) (holding that a motion to quash brought by out-of-state witnesses in California, and the defendant's motion to compel their appearance in Nevada were governed by the "UIDDA ..., and thus the

---

1. Defendant also reiterates his belief that Quotient was amenable to service in New Jersey. Except that defendant resides in New Jersey, nothing in the record supports that argument, and we reject it as did the motion judge.

authority to resolve the [dispute] . . . rested with the California superior court"); Yelp, Inc. v. Hadeed Carpet Cleaning, Inc., 289 Va. 426, 770 S.E.2d 440, 445 (Va. Ct. App. 2015) (pursuant to its version of the UIDDA, the Virginia court was "not empowered to enforce the non-party subpoena" served on a foreign corporation to produce out-of-state records in Virginia litigation); In re Kapon v. Koch, 23 N.Y.3d 32, 988 N.Y.S.2d 559, 11 N.E.3d 709 (2014) (applying UIDDA and substantive law of discovery state to subpoenaed non-party witness's objections).

**[2]**   At argument before us, both parties acknowledged confusion over the import of the judge's supplemental statement of reasons, in which she acknowledged her jurisdiction to decide the merits of defendant's objections to the scope of discovery in litigation brought by an out-of-state plaintiff against a New Jersey resident. We agree she can.

Although the UIDDA provides a party with the ability to enforce subpoenas in a foreign jurisdiction, and a non-party witness the ability to modify or quash a subpoena in the foreign jurisdiction, it was never intended to divest a New Jersey court of jurisdiction to resolve discovery disputes between the parties.

|₆₂₀Nothing in [the UIDDA] limits any party from applying for appropriate relief in the trial state. Applications to the court that affect only the parties to the action can be made in the trial state. For example, any party can apply for an order in the trial state to bar the deposition of the out-of-state deponent on grounds of relevance, and that motion would be made and ruled on before the deposition subpoena is ever presented to the clerk of [the] court in the discovery state.

[UIDDA, cmt. on § 6.]

We conclude, as apparently did the judge, that a New Jersey court has jurisdiction to consider whether the discovery sought "is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . [or] if the information sought appears reasonably calculated to lead to the discovery of admissible evidence . . . ." R. 4:10-2(a). Nor does the UIDDA divest the New Jersey trial court of jurisdiction to enter an order "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ." R. 4:10-3.

Our conclusion is strengthened by the express language of Rule 4:11-5(c). See Robertelli v. N.J. Office of Att'y Ethics, 224 N.J. 470, 484, 134 A.3d 963 (2016) (applying "familiar canons of statutory construction to interpret the court rules[,] . . . look[ing] first to the plain language of the rule[ ] and giv[ing] the words their ordinary meaning") (citations omitted). Rule 4:11-5(c) permits the issuance of a subpoena in accordance with Rule 4:14-7. Rule 4:14-7(a), in turn, subjects "[t]he attendance of a witness at the taking of depositions . . . to the protective provisions of Rule 1:9-2 and Rule 4:10-3[,]" and limits production in response to subpoenas duces tecum to "all matters within the scope of examination permitted by Rule 4:10-2."

Lastly, prior to the 2014 rule amendment that adopted the UIDDA's provision for attendance at depositions outside of New Jersey on compulsion of subpoena, Rule 4:11-5(a) permitted, as it still does, an out-of-state deposition to be taken "on notice pursuant to Rule 4:14-2 . . . ." That rule obligates the party seeking the discovery to notify "every other party to the action." R. 4:14-2(a). As Judge Pressler and Justice Verniero have consistently noted, "[b]ecause of the protective order practice of Rule 4:10-3, the |₆₂₁notice technique

**1002**   N. J.        **212 ATLANTIC REPORTER, 3d SERIES**

... provides an opportunity for a pre-deposition judicial determination of terms and conditions for the taking of the deposition." Pressler & Verniero, cmt. 1.1 on R. 4:11-5 (2014-19). By implication, a party provided with notice of a subpoena having been issued pursuant to Rule 4:11-5, see Rule 4:14-7(c) (requiring notice to all parties of service of the subpoena), should have the same ability to challenge the substantive evidence sought from the out-of-state witness.

We therefore affirm the orders as modified by this opinion, and subject to defen-dant's ability to move before the trial court, pursuant to Rules 4:10-2(a) and 4:10-3 for relief. We remand the matter to the trial court for further proceedings consistent with this opinion.

Affirmed in part and remanded in part. We do not retain jurisdiction.



1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

4

5

On March 6, 2024, I served true copies of the following document(s) described as

6

**NON-PARTY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SUBPOENAED NON-PARTY WITNESS-DEPONENT GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK TO PRODUCE DOCUMENTS PURSUANT TO A SUPERSEDED QUASHED SUBPOENA;  MEMORANDUM OF POINTS AND AUTHORITIES SUPPORT THEREOF**

7

8

9

on the interested parties in this action as follows:

10

**SEE ATTACHED SERVICE LIST**

11

**BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

12

13

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

14

15

Executed on March 6, 2024, at Los Angeles, California.

16

17

_____
          /s/ Cheryl Caldwell

18

Cheryl Caldwell

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

**Phillip M. Lawrence, et al, v. National Life Insurance Company, et al.
Case No. 21SMCV01770**

**Attorneys for Defendants**
**Stan Magnus Insurance Agent, Inc. and Stanley Magnus**
Wendy Thomas, Esq.
Tadjedin Thomas & Engbloom Law Group LLP
6101 W. Centinela Ave., Ste 270
Culver City, CA 90230-6359

**Attorneys for Defendant**
**Nigro Karlin Segal  & Feldstein, LLP**
Pierce O'Donnell, Esq.
Fred A. Fenster, Esq.
GREENBERG GLUSKER FIELDS CLAMAN
  & MACHTINGER LLP
2049 Century Park East, #2600
Los Angeles, CA 90067

**Attorneys for Defendant**
**Life Insurance Company of the Southwest**
Ophir Johna, Esq.
MAYNARDNEXEN
10100 Santa Monica Boulevard, Suite 550
Los Angeles, CA 90067

**Attorneys for Plaintiffs**
**Philip M. Lawrence, in his personal capacity and as Trustee of the**
**PLII LIVING TRUST, and Urbana Chapa Lawrence**

Steven C. Shuman, Esq.
Brian J. Heffernan, Esq.
ENGSTROM LIPSCOMB & LACK
11601 Wilshire Blvd., 14th Floor
Los Angeles, CA 90025

Jason B. Komorsky
Ronald P. Abrams
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

# EXHIBIT 6

1  Elissa D. Miller (CA Bar No. 120029)
   elissa.miller@gmlaw.com
2  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
3  Los Angeles, California 90067
   Telephone: 213.626.2311
4  Facsimile: 954.771.9264

5  Attorneys for Specially Appearing Alleged
   Non-Party Witness - Deponent
6  Synovus Bank, Successor by Merger to
   Global One Financial, Inc.

7

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/06/2024 5:40 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Mohammadi, Deputy Clerk

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

11  Philip M. Lawrence, an individual, Philip
    M. Lawrence, in his capacity as Trustee of
12  the PLII Living Trust, and Urbana Chapa
    Lawerence, an individual,
13
                          Plaintiffs,
14
          vs.
15
    Life Insurance Company of the Southwest,
16  Stan Magnus Insurance Agent, Inc., a
    California corporation, Stanley Magnus, an
17  individual, Nigro Karlin Segal & Feldstien,
    LLP, a California limited liability
18  partnership, and DOES 1-20, inclusive,

19                        Defendants.

20

21

22

Case No. 21SMCV01770

**DECLARATION OF ALAN G. SNIPES IN SUPPORT OF NON-PARTY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SUBPOENAED NON-PARTY WITNESS-DEPONENT GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK TO PRODUCE DOCUMENTS PURSUANT TO A SUPERSEDED QUASHED SUBPOENA**

Date:      March 19, 2024
Time:      8:30 a.m.
Dept.:     O

Assigned for All Purposes to:
Hon. Hon. Jay Ford III, Dept. O

Reservation ID: 478421039024

23       Specially Appearing Alleged Non-Party Witness – Deponent Synovus Bank,

24  Successor by Merger to Global One Financial, Inc. (Erroneously named in the Subpoena

25  as Synovus Bank fka Global One Financial, Inc.) ("Global One") hereby submits the

26  Declaration of Alan G. Snipes in support of its opposition to Plaintiffs' Motion to Compel it

27  to Comply with Plaintiffs' Subpoena.

28

EDM 57013374v1

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1           **DECLARATION OF ALAN G. SNIPES**

2         I, Alan G. Snipes Declare,

3         1.    I am an attorney licensed to practice in the State of Georgia. I am a

4 member of Page, Scrantom, Sprouse, Tucker & Ford, P.C., a Georgia Law Firm, and

5 counsel for Global One. I know all of the facts set forth herein of my own personal

6 knowledge and if called as a witness would and could competently testify hereto.

7         2.    I am the Attorney who has represented Global One in connection with the

8 discovery sought by Plaintiffs from Global One in this case. I have represented Global

9 One and/or Synovus Bank in this and other matters for over 10 years. As such, I am

10 familiar with Global One and its merger into Synovus Bank.

11         3.    Global One is a division by Merger of Synovus Bank. Its principal place of

12 business is located in Columbus, Muscogee County, Georgia. It is not a party to this

13 Action. Global One is headquartered in the State of Georgia and as noted on its website,

14 has no physical locations outside the southern states of Alabama, Florida, Georgia,

15 South Carolina and Tennessee. https://www.synovus.com/locations/

16         4.    Prior to September 15, 2023, I was advised that Plaintiffs' counsel had

17 communicated directly with Global One. Therefore, on September 15, 2023, I sent a

18 letter to Jason Komorsky of BG law, advising him that he was not authorized to

19 communicate with Global One and that all communications should come to me. A true

20 and correct copy of my September 15, 2023, correspondence with attachments is

21 attached hereto as a part of **Exhibit 1.**

22         5.    Shortly after September 28, 2023, I was provided a copy of a blank

23 subpoena issued by the Superior Court of Gwinnett County, Georgia issued to Global

24 One Financial, Inc. an entity no longer in existence, which had been served on its former

25 agent, a true and correct copy of which is attached hereto as **Exhibit 2**.

26         6.    Upon receipt, on October 5, 2023, I send a letter to Mr. Komorsky advising

27 him of the problem of service and again attaching the September 15, 2023, letter. I also

28 attached Global One's organizational documents, documents regarding its merger into

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1  Synovus and its Georgia registration statement.  I informed Mr. Komorsky that any proper

2  subpoena would have to be issued out of Muscogee County, Georgia.  A true and correct

3  copy of my October 5, 2023, letter, with attachments is attached hereto as **Exhibit 3.**

4      7.  On the same date, October 5, 2023, I received an email from Mr. Komorsky

5  stating, "We will re-serve."  A true and correct copy of Mr. Komorsky's email is attached

6  hereto as **Exhibit 4.**

7      8.  On or about October 20, 2023, Global One received a copy of a Subpoena

8  issued by the State of Georgia, Muscogee County on October 17, 2023, Exhibit 6 to

9  Motion.  Both before and following receipt of the Subpoena, I had several conversations

10  with Mr. Komorsky to attempt to narrow the scope of the Subpoena as it was extremely

11  overbroad and burdensome.  When Mr. Komorsky would not agree to do so, on

12  November 2, 2023, I caused to be filed and served on Plaintiffs an "Objection to

13  Subpoena and Motion for Protective Order" in the Georgia Court in the Case in which the

14  subpoena was issued.  A true and correct copy of my Georgia Motion is attached to the

15  Motion as Exhibit 3 and attached hereto as **Exhibit 5.**

16      9.  The Court ultimately scheduled the hearing for the first available hearing

17  date of February 20, 2024.  I gave notice of the hearing to Plaintiffs the same day I filed

18  the Notice. A true and correct copy of the Notice of the Hearing with proof of service is

19  attached hereto as **Exhibit 6.**

20      10.  On February 13, 2024, I caused to be filed the Affidavit of James J.

21  McBrayer, the Chief Operating Officer of Global One in support of the Motion.  A true

22  copy of the Notice of Filing and Affidavit are attached hereto as **Exhibit 7.**

23      11.  I appeared at the hearing on the Quash Motion on February 20, 2024.

24  Counsel for Plaintiff also attended via Zoom.   At the conclusion of the hearing, the Court

25  issued its Order Quashing the Subpoena. Neither on the record nor in the order did the

26  Judge state the basis for quashing. A true and correct copy of the Order Granting the

27  Motion and  Quashing the Subpoena in its entirety with my cover email serving it on

28  Plaintiffs' counsel is attached hereto as **Exhibit 8.**

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1

2      I declare under penalty of perjury under the laws of the State of California that the

3  foregoing is true and correct.

4      Executed on March 6th, 2024 at Columbus, GA.

5

6

7                                        Alan G. Snipes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

EDM 57013374v1

# EXHIBIT 1

 **PageScrantom**

Page, Scrantom, Sprouse, Tucker & Ford, p.c.

ALAN G. SNIPES
DIRECT (706) 243-5636
FAX (706) 243-0417
ags@psstf.com

September 15, 2023

**VIA EMAIL:  jkomorsky@bg.law**

Jason B. Komorsky
BG Law
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Re:    *Philip Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*
Los Angeles County Superior Court
Case No.: 21SMCV01770

Dear Mr. Komorsky:

This firm represents Global One Financial, a division of Synovus Bank ("Global One").  I would not think I need to tell you that since you have talked with both me and my partner Thomas Gristina about this case.  Nevertheless, because you chose to email my client directly (via emails to Jay McBrayer and Jonathan Edwards), I thought I best remind you.  Please do not communicate directly with my client any further.

I have reviewed your email to my client dated September 8, 2023, along with the attached proposed subpoena.  To put it mildly, the proposed subpoena is extremely overbroad, unduly burdensome, and seeks discovery of information far beyond that required by law.  The breadth of the subpoena is even worse considering that Global One is not a party to this case.

I understand from your email that you are requesting that we take the proposed subpoena and "mark it up."  Given the breadth of the proposed subpoena, and its request for 34 categories of documents, that is simply not possible.  It suffices to say that Global One objects to the subpoena in its entirety.

As you know, Global One voluntarily produced over 2,000 pages of documents in this case to one of the defendants, Life Insurance Company of the Southwest ("Southwest").  I assume those documents were provided to you by Southwest's counsel.  To the extent they were not, please let me know and I can provide you with a link to the documents produced that were bates labelled GLOB PLII 000001-002519.  By agreement, those documents were all produced pursuant to the Stipulated Protective Order entered in this case.  These documents are the only documents Global One will be voluntarily producing in this case.

Synovus Centre  |  1111 Bay Avenue, Third Floor  |  Columbus, Georgia 31901  |  P.O. Box 1199  |  Columbus, Georgia 31902
706.324.0251 Telephone  |  706.323.7519 Fax  |  www.psstf.com

005

Finally, your email asks whether Global One will accept service of a subpoena. The answer is no. In that regard, please note that Global One is a division of Synovus Bank which is a Georgia corporation with a principal place of business located in Columbus, Muscogee County, Georgia. To the extent you wish to issue a subpoena in this matter, you will need to properly domesticate that subpoena and issue it out of a court of competent jurisdiction in Muscogee County, Georgia.

Yours very truly,

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By:

Alan G. Snipes

Control Number : 0140306

# STATE OF GEORGIA
## Secretary of State
**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **10/05/2016**. Attached is a true and correct copy of the said filing.

**Surviving Entity:**
GLOBAL ONE FINANCIAL, INC. , a Domestic Profit Corporation

**Nonsurviving Entity/Entities:**
GLOBAL ONE FUNDING, LLC Delaware, a Foreign Limited Liability Company
GLOBAL ONE FUNDING IV, LLC Delaware, a Foreign Non-Qualifying Entity
GLOBAL ONE FUNDING VI, LLC Delaware, a Foreign Non-Qualifying Entity

WITNESS my hand and official seal in the City of

Atlanta and the State of Georgia on 10/07/2016



Brian P. Kemp
Secretary of State

007

## CERTIFICATE OF MERGER
### OF
### GLOBAL ONE FUNDING, LLC
#### (a Delaware limited liability company),

### GLOBAL ONE FUNDING IV, LLC
#### (a Delaware limited liability company),

### GLOBAL ONE FUNDING VI, LLC
#### (a Delaware limited liability company),

### WITH AND INTO
### GLOBAL ONE FINANCIAL, INC.
#### (a Georgia corporation)

Pursuant to Section 14-2-1105 of the Georgia Business Corporation Code (the "Code"), the undersigned corporation executes the following Certificate of Merger:

1.  Pursuant to an Agreement and Plan of Merger, dated as of October 5, 2016, by and among Global One Funding, LLC, a Delaware limited liability company, Global One Funding IV, LLC, a Delaware limited liability company, and Global One Funding VI, LLC, a Delaware limited liability company (the "Merging Companies"), and Global One Financial, Inc., a Georgia corporation (the "Surviving Corporation"), the Merging Companies shall be merged with and into the Surviving Corporation (the "Merger").

2.  Global One Financial, Inc., a Georgia corporation, shall be the surviving corporation resulting from the Merger.

3.  The executed Agreement and Plan of Merger is on file at the Surviving Corporation's principal place of business located at 1200 Ashwood Parkway, Suite 150, Atlanta, Georgia 30338. A copy of the Agreement and Plan of Merger will be furnished by the Surviving Corporation, on request and without cost, to the members of the Merging Companies and the shareholders of the Surviving Corporation.

4.  The Merger was duly approved by the members of the Merging Companies and by the Board of Directors of the Surviving Corporation as shareholder approval was not required.

5.  The Merger shall be effective at 5:00 p.m. EDT on October 5, 2016.

6.  The Surviving Corporation will deliver the request for publication of a notice of filing this Certificate of Merger and payment therefor as required by Section 14-2-1105.1(b) of the Code.

*[Signature on following page]*

LEGAL02/36676782v1

008

IN WITNESS WHEREOF, Global One Financial, Inc. has caused this Certificate of Merger to be signed by a duly authorized officer this 5th day of October, 2016.

GLOBAL ONE FINANCIAL, INC.

By: _____

Timothy P. Veith
Secretary

- 3 -

LEGAL02/36676782v1

009

Control Number : 07035223

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

### CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **10/05/2016**. Attached is a true and correct copy of the said filing.

**Surviving Entity:**

ENTAIRE GLOBAL COMPANIES, INC. , a Foreign Profit Corporation

**Nonsurviving Entity/Entities:**

GLOBAL ONE FINANCIAL, INC. Georgia, a Domestic Profit Corporation

WITNESS my hand and official seal in the City of
Atlanta and the State of Georgia on 10/07/2016



Brian P. Kemp
Secretary of State

010

## CERTIFICATE OF MERGER
### OF
### GLOBAL ONE FINANCIAL, INC.
#### (Subsidiary Corporation)
### WITH AND INTO
### ENTAIRE GLOBAL COMPANIES, INC.
#### (Parent Corporation)

Pursuant to Section 14-2-1105 of the Georgia Business Corporation Code (the "Code"), Entaire Global Companies, Inc., a Delaware corporation ("Parent Corporation"), executes the following Certificate of Merger:

1. Pursuant to an Agreement and Plan of Merger dated as of October 5, 2016, Global One Financial, Inc., a Georgia corporation and a wholly-owned subsidiary of Parent Corporation (the "Subsidiary Corporation"), shall be merged with and into Parent Corporation (the "Merger").

2. Parent Corporation shall be the surviving corporation resulting from the Merger.

3. The executed Agreement and Plan of Merger is on file at the surviving corporation's principal place of business located at 1200 Ashwood Parkway, Suite 150, Atlanta, Georgia 30338. A copy of the Agreement and Plan of Merger will be furnished by the surviving corporation, on request and without cost, to the shareholders of the Subsidiary Corporation and Parent Corporation.

4. The Agreement and Plan of Merger was duly adopted by the Board of Directors of Parent Corporation on October 5, 2016. Pursuant to the Section 14-2-1104(a) of the Code, shareholder approval of the Merger was not required.

5. The surviving corporation will deliver the request for publication of a notice of filing this Certificate of Merger and payment therefor as required by Section 14-2-1105.1(b) of the Code.

6. The Merger shall be effective at 5:01 p.m. EDT on October 5, 2016.

*[Signature on following page]*

LEGAL02/36692926v1

IN WITNESS WHEREOF, Entaire Global Companies, Inc. has caused this Certificate of Merger to be signed by a duly authorized officer this 5th day of October, 2016.

ENTAIRE GLOBAL COMPANIES, INC.

By: _Mary Maul_____

Mary Maurice Young
Secretary

- 2 -

Control No. **J716007**

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# MERGER

I, **Brian P. Kemp,** Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that articles or certificate of merger have been filed and fees paid therefor, as provided by law, and that the Department of Banking and Finance has filed a certificate of approval authorizing the merger of the below entities, effective as of 10/06/2016.

Surviving Entity:
**SYNOVUS BANK,** a Domestic Bank

Nonsurviving Entity/Entities:
**ENTAIRE GLOBAL COMPANIES, INC.,** a Foreign Profit Corporation

This certificate is issued pursuant to Title 7 of the Official Code of Georgia Annotated and is conclusive evidence of the facts stated herein.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on 10/11/2016



Brian P. Kemp
Secretary of State

013

**ARTICLES OF MERGER**
**MERGING**
**ENTAIRE GLOBAL COMPANIES, INC.**
**WITH AND INTO**
**SYNOVUS BANK**

Pursuant to Section 7-1-532 of the Georgia Code (the "Code"), Synovus Bank, a state-chartered bank and wholly-owned banking subsidiary of Synovus Financial Corp., and Entaire Global Companies, Inc., a Delaware corporation and a wholly-owned subsidiary of Synovus Bank ("Entaire"), hereby execute the following Articles of Merger:

1. Pursuant to an Agreement and Plan of Bank Merger dated as of October 5, 2016, Entaire shall be merged with and into Synovus Bank (the "Merger").

2. Synovus Bank shall be the surviving corporation resulting from the Merger.

3. Synovus Bank's main office is located at 1148 Broadway, Columbus, Muscogee County, Georgia 31901. Synovus Bank's registered agent is Deacon Service, LLC and its registered office is located at 1111 Bay Avenue, Suite 350, Columbus, Muscogee County, Georgia 31901.

4. Entaire's main office is located at 1200 Ashwood Parkway, Suite 150, Atlanta, DeKalb County, Georgia 30338. Entaire's registered agent is Corporation Service Company and its registered office is located at 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

5. The Board of Directors of Synovus Bank approved the Agreement and Plan of Bank Merger unanimously on August 18, 2016 at 10:00 a.m. at a meeting of the Board of Directors held at Synovus Bank's main office. Pursuant to Sections 14-2-1104(a) and 14-2-1103(h) of the Code, shareholder approval of the Merger was not required and approval of the Merger by the Board of Directors of Entaire was also not required.

6. The names and addresses of the first directors of Synovus Bank after the Merger (who are the same directors as the directors of Synovus Bank immediately prior to the Merger) are set forth in the Agreement and Plan of Bank Merger.

7. The charter and bylaws of Synovus Bank in effect immediately prior to the Merger shall remain in effect after the Merger without amendment.

8. The Agreement and Plan of Bank Merger is attached hereto as Exhibit A and is incorporated herein by reference.

LEGAL02/36687987v1

9.      Synovus Bank and Entaire hereby undertake that the request for publication of a
notice regarding the filing of these Articles of Merger and payment therefor will be
made as required by Section 7-1-532(d) of the Code.

*[Signatures on following page]*

LEGAL02/36687987v1

015

IN WITNESS WHEREOF, each of the undersigned entities has caused these Articles of Merger to be executed under seal by its respective duly authorized officers this 5th day of October, 2016.

SYNOVUS BANK

By:_____
Allan E. Kamensky
Executive Vice President, General Counsel and
Secretary

By:_____
Kevin Scott Blair
Executive Vice President and
Chief Financial Officer

ENTAIRE GLOBAL COMPANIES, INC.

By:_____
Mary Maurice Young
Secretary

By:_____
J. Barton Singleton
Treasurer

*[Signature Page to Articles of Bank Merger]*

016

## AGREEMENT AND PLAN OF BANK MERGER

THIS AGREEMENT AND PLAN OF BANK MERGER (this "Plan of Bank Merger") is made and entered into as of the 5th day of October, 2016, by and between Synovus Bank ("Synovus Bank"), a Georgia state-chartered bank and wholly-owned subsidiary of Synovus Financial Corp. ("Synovus"), and Entaire Global Companies, Inc. (as the surviving entity in the Initial Merger, "Company"), a Delaware corporation and wholly-owned subsidiary of Synovus Bank.

## PREAMBLE

The Board of Directors of Synovus Bank deems it advisable and in the best interest of Synovus Bank and its shareholder, subject to the merger of Turnkey Merger Sub Inc., a Delaware corporation and a wholly-owned subsidiary of Synovus Bank ("Merger Sub"), with and into Company (the "Initial Merger") with Company as the surviving entity as contemplated in that certain Agreement and Plan of Merger dated as of August 18, 2016 by and among Synovus, Synovus Bank, Merger Sub and Company, for Company to be merged with and into Synovus Bank (the "Merger") on the terms and conditions provided in this Plan of Bank Merger. At the Effective Time of the Merger, the outstanding shares of capital stock of Company shall be cancelled.

NOW THEREFORE in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Synovus Bank and Company hereby make, adopt and approve this Plan of Bank Merger in order to set forth the terms and conditions of the Merger.

## ARTICLE ONE
## TERMS OF MERGER

1.1     **Merger.** Subject to the terms and conditions of this Plan of Bank Merger, at the Effective Time, Company shall be merged with and into Synovus Bank in accordance with applicable law. Synovus Bank shall be the surviving entity resulting from the Merger ("Surviving Entity") and shall continue to exist and to be governed by the laws of the State of Georgia and applicable federal banking laws and regulations. The name of the Surviving Entity shall be "Synovus Bank." The Merger shall be consummated pursuant to the terms of this Plan of Bank Merger, which has been approved by the Board of Directors of Synovus Bank.

1.2     **Effective Time.** The Merger contemplated by this Plan of Bank Merger shall be effective on the date and time that the later of the Articles of Merger and Certificate of Ownership and Merger reflecting the Merger shall become effective with the Secretary of State for the States of Georgia and Delaware, respectively (the "Effective Time").

1.3     **Business of Synovus Bank.** The business of Surviving Entity from and after the Effective Time shall be that of a state banking corporation organized under the laws of the State of Georgia. The business of Surviving Entity shall be conducted from its

main office and at its legally established branches, which shall also include all branches, whether in operation or approved but unopened, at the Effective Time.

1.4     **Articles of Incorporation.** The Articles of Incorporation of Synovus Bank in effect immediately prior to the Effective Time shall be the Articles of Incorporation of Surviving Entity immediately following the Effective Time, until otherwise amended or repealed.

1.5     **Bylaws.** The bylaws of Synovus Bank in effect immediately prior to the Effective Time shall be the bylaws of Surviving Entity immediately following the Effective Time, until otherwise amended or repealed.

1.6     **Directors and Officers.**

(a)     The directors of Synovus Bank immediately prior to the Effective Time shall continue to serve as the directors of Surviving Entity, and shall hold office from and after the Effective Time until their respective successors are elected and qualified. Schedule 1.6 to this Plan of Bank Merger sets forth the names and addresses of the directors of the Surviving Entity.

(b)     The officers of Synovus Bank immediately prior to the Effective Time shall continue to serve as the officers of Surviving Entity, and shall hold office from and after the Effective Time until their respective successors are appointed and qualified.

1.7     **Tax Treatment.** Each party to this Plan of Bank Merger agrees to treat the Merger for all income tax purposes as a reorganization qualifying under Section 368(a) of the Internal Revenue Code of 1986, as amended, and hereby adopt this Plan of Bank Merger as a result of execution thereof as a plan of reorganization within the meaning of Treasury Regulations Section 1.368-2(g). None of the parties shall file a tax return or take any position with any taxing authority that is inconsistent with the tax treatment described in the preceding sentence.

## ARTICLE TWO
## MANNER OF CONVERTING SHARES

Each share of capital stock of Company issued and outstanding immediately prior to the Effective Time shall be canceled and cease to exist by virtue of the Merger at the Effective Time. Each share of capital stock of Synovus Bank issued and outstanding immediately prior to the Effective Time shall remain issued and outstanding at the Effective Time and shall be unaffected by the Merger and shall constitute the only shares of capital stock of the Surviving Entity issued and outstanding immediately after the Effective Time.

2

## ARTICLE THREE
## ASSIGNMENT AND ASSUMPTION

By virtue of the Merger and without any other action, Surviving Entity shall succeed to all of Company's rights, title, interests, obligations and liabilities, of any form, as of the Effective Time.

## ARTICLE FOUR
## MISCELLANEOUS

4.1     **Service of Process.** The Surviving Entity agrees that it may be served with process in the State of Delaware in any proceeding for any obligation of Company arising from the Merger, including any suit or other proceeding to enforce the rights of any stockholders as determined in appraisal proceedings pursuant to the provisions of Section 262 of the Delaware General Corporation Law, and irrevocably appoints the Secretary of State of Delaware as its agent to accept services of process in any such suit or proceeding.

4.2     **Further Assurances.** Each party to this Plan of Bank Merger agrees to take such actions as may be reasonably requested by the other parties in order to more effectively consummate or document the transactions contemplated by this Plan of Bank Merger.

*[Signatures on following page]*

3

LEGAL02/36688006v1

019

IN WITNESS WHEREOF, the undersigned entities have caused this Agreement and Plan of Bank Merger to be executed by their duly authorized officers as of the date first above written.

ENTAIRE GLOBAL COMPANIES, INC.:

By:   Mary Maurice Young
Title:  Secretary

SYNOVUS BANK:

By:   Allan E. Kamensky
Title:  Executive Vice President, General Counsel and Secretary

*[Signature Page to Agreement and Plan of Bank Merger ]*

020

## SCHEDULE 1.6

### Names and Addresses of Directors

| Name | Address |
|------|---------|
| Catherine A. Allen | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Tim E. Bentsen | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Stephen T. Butler | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Elizabeth W. Camp | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| T. Michael Goodrich | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Jerry W. Nix | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Harris Pastides | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Joseph J. Prochaska, Jr. | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Kessel D. Stelling | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Melvin T. Stith | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Barry L. Storey | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Philip W. Tomlinson | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |



# Department of Banking and Finance

2990 Brandywine Road, Suite 200
Atlanta, Georgia 30341-5565
770-986-1633
dbf.georgia.gov

Nathan Deal
Governor

Kevin B. Hagler
Commissioner

## APPROVAL OF ARTICLES OF MERGER

\* \* \* \* \*

It appearing that Synovus Bank, Columbus, Muscogee County, Georgia, and Entaire Global Companies, Inc., Atlanta, DeKalb County, Georgia, having submitted to the Secretary of State of Georgia Articles of Merger,   Entaire Global Companies, Inc., to be merged with and into Synovus Bank, the merger being carried out in accordance with the provisions of §7-1-531 of the Financial Institutions Code of Georgia and with the Agreement and Plan of Bank Merger executed by both corporations on October 5, 2016, being attached and made a part of the Articles of Merger, the name of the surviving bank to be Synovus Bank with its registered office in Columbus, Muscogee County, Georgia, and its Articles of Incorporation to be the same as the Articles of Incorporation of Synovus Bank prior to the merger, has met all requirements of law and such Articles of Merger are otherwise regular and in accordance with law.

NOW, THEREFORE, The said Articles of Merger are hereby approved.

This the 5th day of October 2016.

DEPUTY COMMISSIONER

022



# *Department of Banking and Finance*

*2990 Brandywine Road, Suite 200*
*Atlanta, Georgia 30341-5565*
*770-986-1633*
*dbf.georgia.gov*

*Nathan Deal*
*Governor*

*Kevin B. Hagler*
*Commissioner*

October 5, 2016

Honorable Brian P. Kemp
Secretary of State
Suite 306, West Tower
#2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334

Re: Articles of Merger of Entaire Global Companies, Inc., Atlanta, DeKalb County, Georgia, with and
into Synovus Bank, Columbus, Muscogee County, Georgia

Dear Mr. Kemp:

Please find enclosed this Department's Certificate of Approval, the Articles of Merger, and expedited filing
fee for the above referenced merger transaction. It appears that all requirements of law have been
completed and the Certificate of Merger may be issued by your office. All conditions precedent to the
merger have been performed.

**The involved parties would like for the merger to become effective on October 6, 2016.**

Please forward a copy of the Certificate of Merger to the Department. If you have any questions regarding
the Certificate of Approval, please contact the undersigned at (770) 986-1645.

Sincerely,

Murali Ramachandran
Supervisory Manager

Enclosures

cc: Ms. Jan R. Ezell
    Alston & Bird, LLP
    1201 West Peachtree Street
    One Atlantic Center
    Atlanta, Georgia 30309

# EXHIBIT 2



## CSC

# Notice of Service of Process

null / ALL
Transmittal Number: 27733846
Date Processed: 09/28/2023

| | |
|---|---|
| Primary Contact: | Dan Courschesne<br>Entaire Global Companies, Inc.<br>1200 Ashwood Pkwy<br>Ste 150<br>Atlanta, GA 30338-4725 |
| Electronic copy provided to: | Sonya Truman Jacobs |
| Entity: | Global One Financial, Inc.<br>Entity ID Number 2479500 |
| Entity Served: | Global One Financial |
| Title of Action: | Phillip Lawrence vs. Life Insurance Company of the Southwest |
| Matter Name/ID: | Phillip M. Lawrence vs. Life Insurance Company Of The Southwest (14664538) |
| Document(s) Type: | Subpoena |
| Nature of Action: | Information/Appearance Request |
| Court/Agency: | Los Angeles County Superior Court, CA |
| Case/Reference No: | 21SMCV01770 |
| Jurisdiction Served: | Georgia |
| Date Served on CSC: | 09/28/2023 |
| Answer or Appearance Due: | Other/NA |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | TTE Law Group LLP<br>310-362-4970 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

STATE OF GEORGIA
COUNTY OF GWINNETT

☐ SUPERIOR COURT       ☐ CIVIL DIVISION
☐ STATE COURT          ☐ CRIMINAL DIVISION
☐ MAGISTRATE COURT

## SUBPOENA FOR DEPOSITION
*INCORPORATE THE TERMS USED IN THE FOREIGN SUBPOENA*

_____
Plaintiff                                          Case Number: _____

Vs.

_____
Defendant

TO WITNESS:

NAME:    _____
ADDRESS  _____
         _____
         _____

**YOU ARE HEREBY COMMANDED**, laying all business aside, you be and appear at the time, date and place set forth below to testify at a trial or hearing in this case.

PLACE: _____        DATE: _____

       _____        TIME: _____ AM/PM

       _____

If you are an organization that is not a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

_____

Production: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material, or those set forth in an attachment:

_____

**HEREIN FAIL NOT**, under penalty of the law. Witness my hand and seal of this court, this the _____ day of

_____, 20____.

If you have any questions, contact Attorney
for the Plaintiff/Defendant:

                                               *Tiana P. Garner*

NAME:    _____       TIANA P. GARNER, CLERK
ADDRESS: _____       Gwinnett County Clerk of Superior, State
         _____       & Magistrate Courts
PHONE:   _____
                                               *Carol Coutland*
                                               By: Deputy Clerk or Attorney of Record

Pursuant to O.C.G.A. 24-13-21 a subpoena must be completed prior to being served on a witness. Any person misusing a subpoena is subject to punishment for contempt of court and may be fined not more than $300 and imprisoned for not more than 20 days, or both. Witnesses may contact the Office of the Clerk of Court at 770.822.8100 to verify that this subpoena was issued for a valid case.

SUBP-010

| PLAINTIFF/PETITIONER: Phillip M. Lawrence, an individual, et al., | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Life Insurance Company of the Southwest, et al., | 21SMCV01770 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR
## PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

    a. Person served *(name)*:

    b. Address where served:

    c. Date of delivery:

    d. Time of delivery:

    e. (1) ☐ Witness fees were paid.
        Amount: . . . . . . . . . . . . . . $ _____

        (2) ☐ Copying fees were paid.
        Amount: . . . . . . . . . . . . . . $ _____

    f. Fee for service: . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date)*:

3. Person serving:

    a. ☐ Not a registered California process server.

    b. ☐ California sheriff or marshal.

    c. ☐ Registered California process server.

    d. ☐ Employee or independent contractor of a registered California process server.

    e. ☐ Exempt from registration under Business and Professions Code section 22350(b).

    f. ☐ Registered professional photocopier.

    g. ☐ Exempt from registration under Business and Professions Code section 22451.

    h. Name, address, telephone number, and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
              (SIGNATURE)

**(For California sheriff or marshal use only)**
I certify that the foregoing is true and correct.

Date:

▶ _____
              (SIGNATURE)

**DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

**Phillip Lawrence, et al, v. Life Insurance Company of the Southwest, et al.**

**Los Angeles Superior Court Case No. 21SMCV01770**

**DEPOSITION SUPBOENA FOR PRODUCTION OF BUSINESS RECORDS**

**ATTACHMENT 3**

TO: THE CUSTODIAN OF RECORDS FOR GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK

YOU ARE ORDERED to produce the business records described below:

**DEFINITIONS**

The following specially defined terms shall have the following definitions wherever they appear:

1.    The term **"DOCUMENTS"** is meant in the broadest possible sense and includes, but is not limited to, any writings, as defined in California Evidence Code section 250.

2.    The term **"COMMUNICATIONS"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or any other means.

3.    The terms **"YOU"** and **"YOUR"** means the responding party, Global One Financial, a Division of Synovus Bank, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf and who finance premiums for the policies under its Loan No.: 400020.

4.    The term **"NATIONAL"** refers to National Life Group and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on its behalf.

5.    The term **"LSW"** means LIFE INSURANCE COMPANY OF THE SOUTHWEST, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf.  LSW also included NATIONAL.

6. The term "MAGNUS" means Defendant Stan Magnus Insurance Agent, Inc., and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, representatives, or anyone purporting or actually authorized to act on its behalf, including Defendant Stanley Magnus.

7. The term "NKSF" refers to Nigro Karlin Segal & Feldstein, LLP, and/or to any of its partners, members, employees, representatives, attorneys or anyone purporting or actually authorized to act on its behalf, including Larry Tyler.

8. The term "NORTHSTAR" refers to Northstar Funding Partners and Northstar Brokerage and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on their behalf.

9. The term "PREMIUM FINANCING" means and refers to any loan intended to pay or that did pay insurance premiums.

10. The term "LSW PREMIUM-FINANCED LIFE INSURANCE PROGRAM" means and refers to LSW's offering of PREMIUM FINANCING and life insurance policies utilizing insurers in which YOU are or were an appointed agent/producer, and where lenders financed the POLICIES as defined below.

11. The term "PLAINTIFFS" means Philip M. Lawrence, an individual, Philip M. Lawrence, in his capacity as Trustee of the PLII LIVING TRUST, and Urbana Chapa Lawrence, an individual, and any person acting or purporting to act on their behalf including attorneys, employees, agents, accountants, representatives, or anyone purporting or authorized to act on their behalf.

12. The term "POLICIES" means and refers to the life insurance policies sold to PLAINTIFFS, including specifically 1) Life Insurance Company of the Southwest Policy No. LS0539064 Life Insurance Company of the Southwest Policy No. LS0539030, on the lives of Plaintiffs Philip Lawrence and Urbana Chapa Lawrence, respectively.

13. The term "COMMISSION" means and refers to all compensation regardless of its label or source (i.e., commission, override, expense allowance, etc. from and whether from an

insurer, brokerage, producer group, or other entity or individual).

14.    The terms ""**DOCUMENTS**" shall mean and include any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original and each copy, regardless of origin and location, of any **CORRESPONDENCE** (including any written memorandum of a telephone conversation, other communication, discussion, agreement and any other act, transaction or activity), book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), contract, agreement, study, report, analysis, invoice, bill, time sheet, time cards, expense voucher, receipt, book of account (including cash disbursement journal, cash receipt journal, income statement or reconciliation statement), financial statement, order form, record, bond, requisition, plan, drawing, specification, sound recording, minutes, diary, bylaws, articles of incorporation, calendar, telegram, message, handwritten note, draft working paper, photostat, microfilm, film, photograph, comparison, print, graph, drawing, sketch, chart, summary, data sheet, data processing card, tape, advertisement, and any other written, recorded, transcribed, punched, taped, filmed or graphic, photographic or electronic matter of any kind or nature (including marginal comments appearing on any **WRITING** or any other **DOCUMENT**) however produced or reproduced, which is in **YOUR** possession, custody or control, or which **YOU** have a right or privilege to examine upon request or demand.

15.    The terms "**REFER, REFLECT, RELATE TO OR EVIDENCE,**" "**EVIDENCE**" "**RELATING TO**", or "**REFER, REFLECT OR RELATE TO**" shall mean referring to, recording, supporting, interpreting, prepared in connection with, used in preparation for, pertaining to, mentioning, comprising, consisting of, containing, having any relationship to, or being in any way legally, logically, or factually connected with the matter discussed, in whole or in part.

CATEGORIES TO PRODUCE

1.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

2.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

3.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

4.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

5.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

6.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

7.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral interest, and any other fees or charges RELATED TO the POLICIES.

8.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral posted, and/or requests for posting of collateral, for loans or financing obtained in connection with any or all of the POLICIES.

9.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the servicing of loans or financing obtained in connection with the POLICIES.

10.     All COMMUNICATIONS evidencing, reflecting, or pertaining to the servicing of loans or financing obtained in connection with the POLICIES.

11.     All DOCUMENTS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

12.     All COMMUNICATIONS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

13.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NKSF regarding PLAINTIFFS.

030

14.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding PLAINTIFFS.

15.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding the POLICIES.

16.    All COMMUNICATIONS between and/or among YOU, MAGNUS and NKSF relating to the POLICIES.

17.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NORTHSTAR regarding PLAINTIFFS.

18.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and LSW regarding PLAINTIFFS.

19.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

20.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

21.    All illustrations REFERRING or RELATING to the POLICIES, including "Quick View" and any other illustration, or projection.

22.    All COMMUNICATIONS that REFER, REFLECT, or RELATE TO illustrations REFERRING OR RELATING to the POLICIES.

23.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

24.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

25.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

26.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

27.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

28.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

29.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

30.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

31.    All DOCUMENTS with original signatures of Philip M. Lawrence II

32.    All DOCUMENTS with original signatures of Urbana Chapa

33.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE LSW's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

34.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

## SERVICE LIST

| | |
|---|---|
| Fred A. Fenster<br><br>Greenberg Glusker LLP<br><br>2049 Century Park East, Suite 2600<br><br>Los Angeles, CA 90067 | Attorneys for Defendant<br><br>Nigro Karlin Segal & Feldstein, LLP<br><br>Telephone: (310) 553-3610<br><br>Facsimile:  (310) 553-0687<br><br>E-mail:    ffenster@greenbergglusker.com |
| Ophir Johna<br><br>Maynard Cooper & Gale<br><br>10100 Santa Monica Blvd., Suite 550<br><br>Los Angeles, CA 90067 | Attorneys for Defendant<br><br>Life Insurance Company of the Southwest<br><br>Telephone: (310) 596-4364<br><br>Facsimile:  (205) 254-1999<br><br>E-mail:    ojohna@maynardcooper.com<br><br>LBorys@maynardcooper.com<br><br>dseki@maynardcooper.com |
| Wendy Thomas<br><br>TTE Law Group LLP<br><br>6101 West Centinela Ave., Suite 270<br><br>Culver City, CA 90230 | Attorneys for Defendants<br><br>Stan Magnus, an individual and Stan Magnus Insurance Agent, Inc.<br><br>Telephone: (310) 362-4970<br><br>E-mail:    wendyt@ttelawgroup.com<br><br>irisr@ttelawgroup.com |

alexandriao@ttelawgroup.com

### DECLARATION OF CUSTODIAN OF RECORDS

Name of person: _____

(Name of Individual)

I declare as follows:

I am employed by and am the duly authorized custodian records and am authorized to certify records for:

_____

(Name of your business)

I certify that the accompanying records are true and complete copies of records maintained in the regular course and scope of business of my employer and were prepared by authorized personnel at or near the time of the acts, conditions or events which they intend to convey. No documents, records or other materials have been withheld except as noted below.

I certify that I have made a diligent, thorough and complete search of all available sources including the computer databases for both open and closed files and for all types of treatment and for all types of litigation whether in a storage facilities or any other location under the control of my employer for any and all items to be produced on the attached deposition subpoena for production of business records for the individual named above.

I certify: (Select one)

_____ That all records described in the subpoena were produced.

_____ That no records were produce because no records were found for the individual named on the deposition subpoena for production of business records.

_____ That all records described in the deposition subpoena for production of business records except the following records which are not in the possession of this facility:

Explain: _____

_____

I declare under penalty of perjury under the laws of the State of _____ that the foregoing is true and correct:

Date: _____    City/State: _____,_____

Phone: _____    Signature: _____

035

# EXHIBIT 3

**Alan G. Snipes**

---

| **To:** | Jason B. Komorsky |
|---|---|
| **Attachments:** | letter to Jason B. Komorsky-2.pdf |

**Please see attached.**

## Alan G. Snipes

**P|S Page Scrantom**

Synovus Centre | 1111 Bay Avenue, 3rd Floor | Columbus, Georgia 31901
P.O. Box 1199 | Columbus, GA  31902-1199 (mailing address)
Direct: 706-243-5636 | Main: 706-324-0251 | Fax: 706-323-7519
asnipes@pagescrantom.com

CIRCULAR 230 DISCLOSURE: To comply with Treasury Department regulations, we inform you that, unless otherwise expressly indicated, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the Internal Revenue Code or any other applicable tax law, or (ii) promoting, marketing or recommending to another party any transaction, arrangement, or other matter.

PRIVILEGE NOTICE: The information contained in this electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named.  If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at (706) 324-0251 or reply email and delete this message.

036

# P|S PageScrantom

Page, Scrantom, Sprouse, Tucker & Ford, p.c.

ALAN G. SNIPES
DIRECT (706) 243-5636
FAX (706) 243-0417
ags@psstf.com

October 5, 2023

**VIA EMAIL:  jkomorsky@bg.law**

Jason B. Komorsky
BG Law
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Re:    *Philip Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*
Los Angeles County Superior Court
Case No.: 21SMCV01770

Dear Mr. Komorsky:

As you know, this firm represents Global One Financial, a division of Synovus Bank ("Global One").  You and I previously communicated about a subpoena that your client wished to serve in the above matter.  I wrote you on September 15, 2023, reminding you that my client had previously produced over 2,000 pages of documents in this matter, even though my client is a non-party to this case.  You subsequently requested a link to those documents and that was provided.

In my letter of September 15, 2023, I also notified you that if you sought further documents via subpoena, you would need to do so through a court of competent jurisdiction. Because Global One is a division of Synovus Bank, a Georgia bank with a registered office and principal place of business in Columbus, Georgia, jurisdiction would only be proper in Columbus, Muscogee County, Georgia.  A copy of my letter of September 15, 2023 in enclosed.

On or about September 28, 2023, your client apparently attempted to serve a subpoena (the "Subpoena") on the former registered agent for Global One Financial, Inc. or one of its former affiliates. The Subpoena issued out of the Superior Court of Gwinnett County, Georgia. Global One Financial, Inc. was merged into Entaire Global Companies on or about October 5, 2016.  On or about October 6, 2016, Entaire Global Companies was merged into Synovus Bank. Copies of the relevant merger documents are enclosed.

Synovus Centre  |  1111 Bay Avenue, Third Floor  |  Columbus, Georgia 31901  |  P.O. Box 1199  |  Columbus, Georgia 31902
706.324.0251 Telephone  |  706.323.7519 Fax  |  www.psstf.com

037

As shown in the merger documents, there is currently no Georgia legal entity known as Global One Financial, Inc. nor can that entity be served in Georgia.  Global One accordingly objects to the Subpoena on the basis that it was not served on a legal entity, nor was it served on the registered agent of Global One, nor was it issued out of a court of competent jurisdiction. Accordingly, the Subpoena is a nullity and Global One will not be responding to it.

In order to properly perfect service under the Georgia Uniform Foreign Depositions and Discovery Act, O.C.G.A. § 24-13-112, *et. seq.*, you will need to serve Synovus Bank (as stated in my previous letter) in the county of its residence.  Pursuant to O.C.G.A. § 14-2-510, that county is Muscogee County, Georgia, where Synovus Bank maintains its registered agent and office.

If you attempt to serve your subpoena again in Muscogee County, please kindly forward a courtesy copy to me.

Yours very truly,

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By:

Alan G. Snipes



**PageScrantom**

Page, Scrantom, Sprouse, Tucker & Ford, p.c.

ALAN G. SNIPES
DIRECT (706) 243-5636
FAX (706) 243-0417
ags@psstf.com

September 15, 2023

**VIA EMAIL:  jkomorsky@bg.law**

Jason B. Komorsky
BG Law
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Re:   *Philip Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*
      Los Angeles County Superior Court
      Case No.: 21SMCV01770

Dear Mr. Komorsky:

This firm represents Global One Financial, a division of Synovus Bank ("Global One").  I would not think I need to tell you that since you have talked with both me and my partner Thomas Gristina about this case.  Nevertheless, because you chose to email my client directly (via emails to Jay McBrayer and Jonathan Edwards), I thought I best remind you.  Please do not communicate directly with my client any further.

I have reviewed your email to my client dated September 8, 2023, along with the attached proposed subpoena.  To put it mildly, the proposed subpoena is extremely overbroad, unduly burdensome, and seeks discovery of information far beyond that required by law.  The breadth of the subpoena is even worse considering that Global One is not a party to this case.

I understand from your email that you are requesting that we take the proposed subpoena and "mark it up."  Given the breadth of the proposed subpoena, and its request for 34 categories of documents, that is simply not possible.  It suffices to say that Global One objects to the subpoena in its entirety.

As you know, Global One voluntarily produced over 2,000 pages of documents in this case to one of the defendants, Life Insurance Company of the Southwest ("Southwest").  I assume those documents were provided to you by Southwest's counsel.  To the extent they were not, please let me know and I can provide you with a link to the documents produced that were bates labelled GLOB PLII 000001-002519.  By agreement, those documents were all produced pursuant to the Stipulated Protective Order entered in this case.  These documents are the only documents Global One will be voluntarily producing in this case.

Synovus Centre  |  1111 Bay Avenue, Third Floor  |  Columbus, Georgia 31901  |  P.O. Box 1199  |  Columbus, Georgia 31902
706.324.0251 Telephone  |  706.323.7519 Fax  |  www.psstf.com

039

Finally, your email asks whether Global One will accept service of a subpoena.  The answer is no.  In that regard, please note that Global One is a division of Synovus Bank which is a Georgia corporation with a principal place of business located in Columbus, Muscogee County, Georgia.  To the extent you wish to issue a subpoena in this matter, you will need to properly domesticate that subpoena and issue it out of a court of competent jurisdiction in Muscogee County, Georgia.

Yours very truly,

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By:

Alan G. Snipes

Control Number : 0140306

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **10/05/2016**. Attached is a true and correct copy of the said filing.

**Surviving Entity:**
GLOBAL ONE FINANCIAL, INC. , a Domestic Profit Corporation

**Nonsurviving Entity/Entities:**
GLOBAL ONE FUNDING, LLC Delaware, a Foreign Limited Liability Company
GLOBAL ONE FUNDING IV, LLC Delaware, a Foreign Non-Qualifying Entity
GLOBAL ONE FUNDING VI, LLC Delaware, a Foreign Non-Qualifying Entity

WITNESS my hand and official seal in the City of
Atlanta and the State of Georgia on 10/07/2016



Brian P. Kemp
Secretary of State

041

### CERTIFICATE OF MERGER
### OF
### GLOBAL ONE FUNDING, LLC
### (a Delaware limited liability company),

### GLOBAL ONE FUNDING IV, LLC
### (a Delaware limited liability company),

### GLOBAL ONE FUNDING VI, LLC
### (a Delaware limited liability company),

### WITH AND INTO
### GLOBAL ONE FINANCIAL, INC.
### (a Georgia corporation)

Pursuant to Section 14-2-1105 of the Georgia Business Corporation Code (the "Code"), the undersigned corporation executes the following Certificate of Merger:

1.  Pursuant to an Agreement and Plan of Merger, dated as of October 5, 2016, by and among Global One Funding, LLC, a Delaware limited liability company, Global One Funding IV, LLC, a Delaware limited liability company, and Global One Funding VI, LLC, a Delaware limited liability company (the "Merging Companies"), and Global One Financial, Inc., a Georgia corporation (the "Surviving Corporation"), the Merging Companies shall be merged with and into the Surviving Corporation (the "Merger").

2.  Global One Financial, Inc., a Georgia corporation, shall be the surviving corporation resulting from the Merger.

3.  The executed Agreement and Plan of Merger is on file at the Surviving Corporation's principal place of business located at 1200 Ashwood Parkway, Suite 150, Atlanta, Georgia 30338. A copy of the Agreement and Plan of Merger will be furnished by the Surviving Corporation, on request and without cost, to the members of the Merging Companies and the shareholders of the Surviving Corporation.

4.  The Merger was duly approved by the members of the Merging Companies and by the Board of Directors of the Surviving Corporation as shareholder approval was not required.

5.  The Merger shall be effective at 5:00 p.m. EDT on October 5, 2016.

6.  The Surviving Corporation will deliver the request for publication of a notice of filing this Certificate of Merger and payment therefor as required by Section 14-2-1105.1(b) of the Code.

*[Signature on following page]*

LEGAL02/36676782v1

042

IN WITNESS WHEREOF, Global One Financial, Inc. has caused this Certificate of Merger to be signed by a duly authorized officer this 5th day of October, 2016.

GLOBAL ONE FINANCIAL, INC.

By: _____

Timothy P. Veith
Secretary

- 3 -

Control Number : 07035223

# STATE OF GEORGIA
### Secretary of State
**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **10/05/2016**. Attached is a true and correct copy of the said filing.

**Surviving Entity:**

ENTAIRE GLOBAL COMPANIES, INC. , a Foreign Profit Corporation

**Nonsurviving Entity/Entities:**

GLOBAL ONE FINANCIAL, INC. Georgia, a Domestic Profit Corporation

WITNESS my hand and official seal in the City of
Atlanta and the State of Georgia on 10/07/2016



*B:P.L~*

Brian P. Kemp
Secretary of State

044

**CERTIFICATE OF MERGER**
**OF**
**GLOBAL ONE FINANCIAL, INC.**
**(Subsidiary Corporation)**
**WITH AND INTO**
**ENTAIRE GLOBAL COMPANIES, INC.**
**(Parent Corporation)**

Pursuant to Section 14-2-1105 of the Georgia Business Corporation Code (the "Code"), Entaire Global Companies, Inc., a Delaware corporation ("Parent Corporation"), executes the following Certificate of Merger:

1.  Pursuant to an Agreement and Plan of Merger dated as of October 5, 2016, Global One Financial, Inc., a Georgia corporation and a wholly-owned subsidiary of Parent Corporation (the "Subsidiary Corporation"), shall be merged with and into Parent Corporation (the "Merger").

2.  Parent Corporation shall be the surviving corporation resulting from the Merger.

3.  The executed Agreement and Plan of Merger is on file at the surviving corporation's principal place of business located at 1200 Ashwood Parkway, Suite 150, Atlanta, Georgia 30338. A copy of the Agreement and Plan of Merger will be furnished by the surviving corporation, on request and without cost, to the shareholders of the Subsidiary Corporation and Parent Corporation.

4.  The Agreement and Plan of Merger was duly adopted by the Board of Directors of Parent Corporation on October 5, 2016. Pursuant to the Section 14-2-1104(a) of the Code, shareholder approval of the Merger was not required.

5.  The surviving corporation will deliver the request for publication of a notice of filing this Certificate of Merger and payment therefor as required by Section 14-2-1105.1(b) of the Code.

6.  The Merger shall be effective at 5:01 p.m. EDT on October 5, 2016.

*[Signature on following page]*

LEGAL02/36692926v1

IN WITNESS WHEREOF, Entaire Global Companies, Inc. has caused this Certificate of Merger to be signed by a duly authorized officer this 5th day of October, 2016.

ENTAIRE GLOBAL COMPANIES, INC.

By: _____

Mary Maurice Young
Secretary

- 2 -

LEGAL02/36692926v1

046

Control No. **J716007**

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

# CERTIFICATE
# OF
# MERGER

I, **Brian P. Kemp,** Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that articles or certificate of merger have been filed and fees paid therefor, as provided by law, and that the Department of Banking and Finance has filed a certificate of approval authorizing the merger of the below entities, effective as of 10/06/2016.

Surviving Entity:
**SYNOVUS BANK,** a Domestic Bank

Nonsurviving Entity/Entities:
**ENTAIRE GLOBAL COMPANIES, INC.,** a Foreign Profit Corporation

This certificate is issued pursuant to Title 7 of the Official Code of Georgia Annotated and is conclusive evidence of the facts stated herein.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on 10/11/2016



Brian P. Kemp
Secretary of State

047

### ARTICLES OF MERGER
### MERGING
### ENTAIRE GLOBAL COMPANIES, INC.
### WITH AND INTO
### SYNOVUS BANK

Pursuant to Section 7-1-532 of the Georgia Code (the "Code"), Synovus Bank, a state-chartered bank and wholly-owned banking subsidiary of Synovus Financial Corp., and Entaire Global Companies, Inc., a Delaware corporation and a wholly-owned subsidiary of Synovus Bank ("Entaire"), hereby execute the following Articles of Merger:

1. Pursuant to an Agreement and Plan of Bank Merger dated as of October 5, 2016, Entaire shall be merged with and into Synovus Bank (the "Merger").

2. Synovus Bank shall be the surviving corporation resulting from the Merger.

3. Synovus Bank's main office is located at 1148 Broadway, Columbus, Muscogee County, Georgia 31901. Synovus Bank's registered agent is Deacon Service, LLC and its registered office is located at 1111 Bay Avenue, Suite 350, Columbus, Muscogee County, Georgia 31901.

4. Entaire's main office is located at 1200 Ashwood Parkway, Suite 150, Atlanta, DeKalb County, Georgia 30338. Entaire's registered agent is Corporation Service Company and its registered office is located at 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

5. The Board of Directors of Synovus Bank approved the Agreement and Plan of Bank Merger unanimously on August 18, 2016 at 10:00 a.m. at a meeting of the Board of Directors held at Synovus Bank's main office. Pursuant to Sections 14-2-1104(a) and 14-2-1103(h) of the Code, shareholder approval of the Merger was not required and approval of the Merger by the Board of Directors of Entaire was also not required.

6. The names and addresses of the first directors of Synovus Bank after the Merger (who are the same directors as the directors of Synovus Bank immediately prior to the Merger) are set forth in the Agreement and Plan of Bank Merger.

7. The charter and bylaws of Synovus Bank in effect immediately prior to the Merger shall remain in effect after the Merger without amendment.

8. The Agreement and Plan of Bank Merger is attached hereto as Exhibit A and is incorporated herein by reference.

LEGAL02/36687987v1

048

9.    Synovus Bank and Entaire hereby undertake that the request for publication of a notice regarding the filing of these Articles of Merger and payment therefor will be made as required by Section 7-1-532(d) of the Code.

*[Signatures on following page]*

LEGAL02/36687987v1

049

IN WITNESS WHEREOF, each of the undersigned entities has caused these Articles of Merger to be executed under seal by its respective duly authorized officers this 5th day of October, 2016.

**SYNOVUS BANK**

By: _____

Allan E. Kamensky
Executive Vice President, General Counsel and
Secretary

By: _____

Kevin Scott Blair
Executive Vice President and
Chief Financial Officer

**ENTAIRE GLOBAL COMPANIES, INC.**

By: _____

Mary Maurice Young
Secretary

By: _____

J. Barton Singleton
Treasurer

*[Signature Page to Articles of Bank Merger]*

050

## AGREEMENT AND PLAN OF BANK MERGER

THIS AGREEMENT AND PLAN OF BANK MERGER (this "Plan of Bank Merger") is made and entered into as of the 5th day of October, 2016, by and between Synovus Bank ("Synovus Bank"), a Georgia state-chartered bank and wholly-owned subsidiary of Synovus Financial Corp. ("Synovus"), and Entaire Global Companies, Inc. (as the surviving entity in the Initial Merger, "Company"), a Delaware corporation and wholly-owned subsidiary of Synovus Bank.

## PREAMBLE

The Board of Directors of Synovus Bank deems it advisable and in the best interest of Synovus Bank and its shareholder, subject to the merger of Turnkey Merger Sub Inc., a Delaware corporation and a wholly-owned subsidiary of Synovus Bank ("Merger Sub"), with and into Company (the "Initial Merger") with Company as the surviving entity as contemplated in that certain Agreement and Plan of Merger dated as of August 18, 2016 by and among Synovus, Synovus Bank, Merger Sub and Company, for Company to be merged with and into Synovus Bank (the "Merger") on the terms and conditions provided in this Plan of Bank Merger. At the Effective Time of the Merger, the outstanding shares of capital stock of Company shall be cancelled.

NOW THEREFORE in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Synovus Bank and Company hereby make, adopt and approve this Plan of Bank Merger in order to set forth the terms and conditions of the Merger.

## ARTICLE ONE
## TERMS OF MERGER

1.1    **Merger.** Subject to the terms and conditions of this Plan of Bank Merger, at the Effective Time, Company shall be merged with and into Synovus Bank in accordance with applicable law. Synovus Bank shall be the surviving entity resulting from the Merger ("Surviving Entity") and shall continue to exist and to be governed by the laws of the State of Georgia and applicable federal banking laws and regulations. The name of the Surviving Entity shall be "Synovus Bank." The Merger shall be consummated pursuant to the terms of this Plan of Bank Merger, which has been approved by the Board of Directors of Synovus Bank.

1.2    **Effective Time.** The Merger contemplated by this Plan of Bank Merger shall be effective on the date and time that the later of the Articles of Merger and Certificate of Ownership and Merger reflecting the Merger shall become effective with the Secretary of State for the States of Georgia and Delaware, respectively (the "Effective Time").

1.3    **Business of Synovus Bank.** The business of Surviving Entity from and after the Effective Time shall be that of a state banking corporation organized under the laws of the State of Georgia. The business of Surviving Entity shall be conducted from its

LEGAL02/36688006v1

main office and at its legally established branches, which shall also include all branches, whether in operation or approved but unopened, at the Effective Time.

    1.4    **Articles of Incorporation.** The Articles of Incorporation of Synovus Bank in effect immediately prior to the Effective Time shall be the Articles of Incorporation of Surviving Entity immediately following the Effective Time, until otherwise amended or repealed.

    1.5    **Bylaws.** The bylaws of Synovus Bank in effect immediately prior to the Effective Time shall be the bylaws of Surviving Entity immediately following the Effective Time, until otherwise amended or repealed.

    1.6    **Directors and Officers.**

    (a)    The directors of Synovus Bank immediately prior to the Effective Time shall continue to serve as the directors of Surviving Entity, and shall hold office from and after the Effective Time until their respective successors are elected and qualified. Schedule 1.6 to this Plan of Bank Merger sets forth the names and addresses of the directors of the Surviving Entity.

    (b)    The officers of Synovus Bank immediately prior to the Effective Time shall continue to serve as the officers of Surviving Entity, and shall hold office from and after the Effective Time until their respective successors are appointed and qualified.

    1.7    **Tax Treatment.** Each party to this Plan of Bank Merger agrees to treat the Merger for all income tax purposes as a reorganization qualifying under Section 368(a) of the Internal Revenue Code of 1986, as amended, and hereby adopt this Plan of Bank Merger as a result of execution thereof as a plan of reorganization within the meaning of Treasury Regulations Section 1.368-2(g). None of the parties shall file a tax return or take any position with any taxing authority that is inconsistent with the tax treatment described in the preceding sentence.

## ARTICLE TWO
## MANNER OF CONVERTING SHARES

    Each share of capital stock of Company issued and outstanding immediately prior to the Effective Time shall be canceled and cease to exist by virtue of the Merger at the Effective Time. Each share of capital stock of Synovus Bank issued and outstanding immediately prior to the Effective Time shall remain issued and outstanding at the Effective Time and shall be unaffected by the Merger and shall constitute the only shares of capital stock of the Surviving Entity issued and outstanding immediately after the Effective Time.

## ARTICLE THREE
## ASSIGNMENT AND ASSUMPTION

By virtue of the Merger and without any other action, Surviving Entity shall succeed to all of Company's rights, title, interests, obligations and liabilities, of any form, as of the Effective Time.

## ARTICLE FOUR
## MISCELLANEOUS

4.1    **Service of Process.** The Surviving Entity agrees that it may be served with process in the State of Delaware in any proceeding for any obligation of Company arising from the Merger, including any suit or other proceeding to enforce the rights of any stockholders as determined in appraisal proceedings pursuant to the provisions of Section 262 of the Delaware General Corporation Law, and irrevocably appoints the Secretary of State of Delaware as its agent to accept services of process in any such suit or proceeding.

4.2    **Further Assurances.** Each party to this Plan of Bank Merger agrees to take such actions as may be reasonably requested by the other parties in order to more effectively consummate or document the transactions contemplated by this Plan of Bank Merger.

*[Signatures on following page]*

LEGAL02/36688006v1

3

053

IN WITNESS WHEREOF, the undersigned entities have caused this Agreement and Plan of Bank Merger to be executed by their duly authorized officers as of the date first above written.

ENTAIRE GLOBAL COMPANIES, INC.:

By:   Mary Maurice Young
Title:   Secretary

SYNOVUS BANK:

By:   Allan E. Kamensky
Title:   Executive Vice President, General Counsel and Secretary

*[Signature Page to Agreement and Plan of Bank Merger]*

054

## SCHEDULE 1.6

### Names and Addresses of Directors

| Name | Address |
|------|---------|
| Catherine A. Allen | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Tim E. Bentsen | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Stephen T. Butler | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Elizabeth W. Camp | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| T. Michael Goodrich | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Jerry W. Nix | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Harris Pastides | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Joseph J. Prochaska, Jr. | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Kessel D. Stelling | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Melvin T. Stith | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Barry L. Storey | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |
| Philip W. Tomlinson | c/o Synovus Bank<br>1148 Broadway<br>Columbus, Georgia 31901 |



# *Department of Banking and Finance*

### *2990 Brandywine Road, Suite 200*
### *Atlanta, Georgia 30341-5565*
### *770-986-1633*
### *dbf.georgia.gov*

*Nathan Deal*
*Governor*

*Kevin B. Hagler*
*Commissioner*

## APPROVAL OF ARTICLES OF MERGER

\* \* \* \* \*

It appearing that Synovus Bank, Columbus, Muscogee County, Georgia, and Entaire Global Companies, Inc., Atlanta, DeKalb County, Georgia, having submitted to the Secretary of State of Georgia Articles of Merger,   Entaire Global Companies, Inc., to be merged with and into Synovus Bank, the merger being carried out in accordance with the provisions of §7-1-531 of the Financial Institutions Code of Georgia and with the Agreement and Plan of Bank Merger executed by both corporations on October 5, 2016, being attached and made a part of the Articles of Merger, the name of the surviving bank to be Synovus Bank with its registered office in Columbus, Muscogee County, Georgia, and its Articles of Incorporation to be the same as the Articles of Incorporation of Synovus Bank prior to the merger, has met all requirements of law and such Articles of Merger are otherwise regular and in accordance with law.

NOW, THEREFORE, The said Articles of Merger are hereby approved.

This the 5th day of October 2016.

_____
DEPUTY COMMISSIONER



## *Department of Banking and Finance*

*2990 Brandywine Road, Suite 200*
*Atlanta, Georgia 30341-5565*

**Nathan Deal**                    *770-986-1633*                    *Kevin B. Hagler*
**Governor**                       *dbf.georgia.gov*                 **Commissioner**

October 5, 2016

Honorable Brian P. Kemp
Secretary of State
Suite 306, West Tower
#2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334

Re:  Articles of Merger of Entaire Global Companies, Inc., Atlanta, DeKalb County, Georgia, with and
     into Synovus Bank, Columbus, Muscogee County, Georgia

Dear Mr. Kemp:

Please find enclosed this Department's Certificate of Approval, the Articles of Merger, and expedited filing
fee for the above referenced merger transaction.   It appears that all requirements of law have been
completed and the Certificate of Merger may be issued by your office.    All conditions precedent to the
merger have been performed.

**The involved parties would like for the merger to become effective on October 6, 2016.**

Please forward a copy of the Certificate of Merger to the Department.    If you have any questions regarding
the Certificate of Approval, please contact the undersigned at **(770) 986-1645.**

Sincerely,

Murali Ramachandran
Supervisory Manager

Enclosures

cc:  Ms. Jan R. Ezell
     Alston & Bird, LLP
     1201 West Peachtree Street
     One Atlantic Center
     Atlanta, Georgia 30309

057

# EXHIBIT 4

**Alan G. Snipes**

| | |
|---|---|
| **From:** | Jason B. Komorsky <jkomorsky@bg.law> |
| **Sent:** | Thursday, October 5, 2023 3:17 PM |
| **To:** | Alan G. Snipes |
| **Cc:** | Jessica Bagdanov; Juanita Treshinsky |
| **Subject:** | RE: |

Alan,

We will re-serve.

Jason



**Jason B. Komorsky**
Partner

(818) 827-9000  Main
(818) 827-9155  Direct / Text / Fax
jkomorsky@bg.law

 Jason B. Komorsky

21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

www.bg.law

The preceding e-mail message is subject to BG LAW's e-mail policies, which can be found at: https://www.bg.law/web-disclaimer

**From:** Alan G. Snipes <asnipes@pagescrantom.com>
**Sent:** Thursday, October 05, 2023 11:40 AM
**To:** Jason B. Komorsky <jkomorsky@bg.law>
**Subject:**

CAUTION: This email originated from an external source.

Please see attached.

**Alan G. Snipes**

 Page Scrantom

Synovus Centre | 1111 Bay Avenue, 3rd Floor | Columbus, Georgia 31901
P.O. Box 1199 | Columbus, GA 31902-1199 (mailing address)
Direct: 706-243-5636 | Main: 706-324-0251 | Fax: 706-323-7519
asnipes@pagescrantom.com

CIRCULAR 230 DISCLOSURE: To comply with Treasury Department regulations, we inform you that, unless otherwise expressly indicated, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the Internal Revenue Code or any other applicable tax law, or (ii) promoting, marketing or recommending to another party any transaction, arrangement, or other matter.

PRIVILEGE NOTICE: The information contained in this electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named.  If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at (706) 324-0251 or reply email and delete this message.

059

# EXHIBIT 5

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

NOV 0 2 2023

11:56 am

DEPUTY CLERK

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| In the Matter of Subpoena to Synovus Bank f/k/a Global One Financial, Inc. | : : : | Ex Parte Docket No.: 2023-225 |
| | : | |
| Philip M. Lawrence, et. al. | : : | |
| Plaintiff, | : : : | |
| v. | : : : | Los Angeles Superior Court Case No.: 21SMCV01770 |
| Life Insurance Company of the Southwest, et. al., | : : : | |
| Defendants. | : : : | |

## OBJECTION TO SUBPOENA AND MOTION FOR PROTECTIVE ORDER

COMES NOW Synovus Bank, and pursuant to O.C.G.A. § 9-11-26, O.C.G.A. § 9-11-45, and O.C.G.A. § 24-13-116 hereby files this objection to subpoena and Motion for Protective Order, respectfully showing the Court the following:

1.

Synovus Bank is a Georgia corporation with a principal place of business in Columbus, Muscogee County, Georgia. Global One Financial ("Global One") is a subsidiary of Synovus Bank.

2.

On October 23, 2023, Synovus Bank (named as Synovus Bank fka Global One Financial, Inc.) was served with a subpoena for the production of evidence (the "Subpoena") assigned to the *ex parte* docket as case number 2023-225. Although it does not state so on its face, the Subpoena was issued out of Muscogee County, Georgia purportedly as a foreign subpoena under the Uniform Foreign Depositions and Discovery Act, O.C.G.A. § 24-5-110, *et. seq.* A true and correct copy of the Supboena is attached hereto as Exhibit "1".

3.

The Subpoena seeks documents and information related to the case of *Philip M. Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*, Case Number 21SMCV01770, Los Angeles Superior Court, Case Number 21SMCV01770 (the "Lawrence Lawsuit"). Neither Synovus Bank nor its subsidiary Global One are parties to the Lawrence Lawsuit.

4.

Global One is engaged in the business of lending money to customers for the purpose of financing the customer's purchase of one or more life insurance policies. The Lawrence Lawsuit apparently arises out of a party's purchase of certain life insurance policies that were financed by Global One. While Mr.

2

Lawrence has sued the life insurance companies and others in the Lawrence Lawsuit, he has not sued Global One or Synovus Bank.

5.

The Subpoena has fifteen (15) separate definitions that are then incorporated into thirty-four (34) separate requests for documents. The document requests seek, *inter alia*:

(a)   All DOCUMENTS or COMMUNICATIONS related to the insurance policies at issue (Requests 1-4; 21-22);

(b)   All DOCUMENTS or COMMUNICATIONS related to any loans or financing of the policies at issue and any collateral associated therewith (Requests 5-8);

(c)   All DOCUMENTS or COMMUNICATIONS related to servicing of the loans at issue (Requests 9-10);

(d)   All DOCUMENTS or COMMUNICATIONS related to the Plaintiffs (Requests 11-13; 19-21);

(e)   All DOCUMENTS or COMMUNICATIONS related to the various brokers or other parties (Requests 14-18)[1];

(f)   All DOCUMENTS or COMMUNICATIONS related to any compensation earned by Global One related to the policies (Requests 23-30);

(g)   All DOCUMENTS with original signatures of Philip M. Lawrence, II or Urbana Chapa (Requests 31-32); and

---

[1]It should be noted that some or all of these persons or entities are parties to the Lawrence Lawsuit, yet there has been no indication that Mr. Lawrence has requested this same information from them in the Lawrence Lawsuit.

3

(h)    All DOCUMENTS related to underwriting guidelines for the years 2016 and 2017 (Requests 33-34).

6.

The term DOCUMENTS is defined in the Subpoena as meaning "in the broadest possible sense and includes, but is not limited to, any writings, as defined in California Evidence Code, section 250." The term COMMUNICATIONS is defined in the Subpoena as meaning "the transmittal of information (in the form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or any other means." Given the breadth of these definitions as applied to thirty-four (34) categories or information, the Subpoena seeks thousands of pages of documents related to the loan to Mr. Lawrence.

7.

The Subpoena further seeks underwriting guidelines that are wholly unrelated to any loan relationship initiated by Global One. Those underwriting guidelines constitute trade secrets within the meaning of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761, *et. seq.* ("Trade secret" "means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information: (A) Derives economic value, actual or

4

potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

8.

Given the breadth of the definitions, the Subpoena likewise seeks e-discovery in the form of potentially thousands of emails that may qualify as DOCUMENTS or COMMUNICATIONS that fall within one of the thirty-four categories propounded by Mr. Lawrence.

9.

O.C.G.A. § 24-13-116 provides that "[a]n application for a protective order or to enforce, quash, or modify a subpoena issued by the clerk of superior court under Code Section 24-13-112 or 24-13-113 shall comply with the statutes and court rules of this state and shall be submitted to the superior court of the county in which the subpoena was issued." Synovus Bank submits this Objection and Motion for Protective Order in the Superior Court of Muscogee County, which issued the Subpoena.

10.

While O.C.G.A. § 9-11-45 allows for the issuance of third party subpoenas in civil actions, the materials discoverable are limited by O.C.G.A. § 9-11-26(c),

5

and the Court, "upon motion made promptly but in any event at or before the time specified in the subpoena for compliance therewith may quash or modify the subpoena if it is unreasonable and oppressive, or condition denial of the motion upon the advance by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents or tangible things." This standard incorporates the protective order standard set forth in O.C.G.A. § 9-11-26(c) which provides that "[u]pon motion by a party or by the person from whom discovery is sought and for good cause shown, the court in which the action is pending or, alternatively, on matters related to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1)    That the discovery not be had;

(2)    That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3)    That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4)    That certain matters not be inquired into or that the scope of discovery be limited on certain matters;

(5)    That the discovery be conducted with no one present except persons designated by the court;

(6)    That a deposition, after being sealed, be opened only by order of the court;

6

065

(7)   That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; or

(8)   That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."

11.

The Subpoena is overbroad, unduly burdensome, and subjects Synovus Bank to enormous unnecessary trouble, burden, and expense. The Subpoena seeks thousands of pages of documents in a case pending in California in which Synovus Bank is not a party. Further, the Subpoena seeks underwriting materials that are plainly trade secrets within the meaning of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761, *et. seq.*

12.

In addition, the Subpoena is served merely as an attempt to annoy or oppress Synovus Bank. Synovus Bank previously responded to a subpoena from one of the defendants in the Lawrence Litigation and produced 2,519 pages of documents. When Synovus Bank was approached by Mr. Lawrence about the production of documents in the Lawrence Litigation, it offered to produce those same documents to Mr. Lawrence, and later did so at his request. Synovus Bank should not be

7

required to be put to the burden and expense of searching for and producing additional documents in a case in which it is not involved.[2]

## 13.

Pursuant to O.C.G.A. § 9-11-45, Synovus Bank accordingly objects to the Subpoena in its entirety and hereby moves for a protective order from the Court quashing the Subpoena pursuant to O.C.G.A. § 9-11-26(c). Alternatively, Synovus Bank submits that the Court should order that Mr. Lawrence be required to pay all costs of responding to the Subpoena *in advance of any search or production*, including, without limitation, costs of any e-discovery, computer experts, and reasonable attorney's fees and expenses. *See* O.C.G.A. § 9-11-45(a)(1)(C).

## 14.

Pursuant to O.C.G.A. § 9-11-45(a)(2), upon receipt of this objection, "the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to an order of the court from which the subpoena was issued." Synovus Bank accordingly will not be producing any documents sought by the Subpoena until a further order from the Court.

---

[2]Synovus Bank believed that its earlier production of documents to a defendant in the Lawrence Litigation had been provided to Mr. Lawrence. When Synovus Bank was informed that the documents had not been provided to Mr. Lawrence, they were promptly provided to him voluntarily.

8

15.

Pursuant to Uniform Superior Court Rule 6.4(B), the undersigned hereby certifies that he conferred with counsel for Mr. Lawrence regarding the scope of the Subpoena and no agreement was reached.

16.

Given that Synovus Bank has already produced over 2,500 pages of documents in the Lawrence Litigation in which it is not even a party, Synovus Bank submits that Mr. Lawrence's issuance of the Subpoena was not in good faith. Synovus Bank accordingly requests that this Court award it reasonable attorneys' fees and expenses pursuant to O.C.G.A. § 9-11-37(a)(3) in being forced to file the present objection and Motion for Protective Order. *See* O.C.G.A. § 9-11-26(c) (incorporating the sanctions standard in O.C.G.A. § 9-11-37 for Motions for Protective Order brought pursuant to O.C.G.A. § 9-11-26(c)).

WHEREFORE, Synovus Bank respectfully requests the following relief:

(a)    That the Court quash the Subpoena in his entirety or limit the scope of the Subpoena on reasonable and just terms with Mr. Lawrence being responsible for payment of all costs of complying therewith in advance of any search or production;

9

(b)    That the Court award attorney's fees and expenses necessary for bring

the present motion pursuant to O.C.G.A. § 9-11-26(c) and O.C.G.A. § 9-11-

37(a)(3); and

(c)    That the Court grant such other and further relief as deemed just and

appropriate.

Respectfully submitted, this 2nd day of November, 2023.

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By:    /s/ Alan G. Snipes
       Alan G. Snipes
       Georgia Bar No. 665781
       Thomas F. Gristina
       Georgia Bar No. 452454

1111 Bay Avenue
Post Office Box 1199
Columbus, Georgia  31902-1199
(706) 324-0251
asnipes@pagescrantom.com
tgristina@pagescrantom.com

10

069

Ex Parte #
2023-225

## SUBPOENA FOR PRODUCTION OF EVIDENCE

State of Georgia, _Muscogee_ County

TO:   COR of Synovus Bank fka Global One Financial, Inc.; c/o Deacon Services, LLC
      1111 Bay Avenue, Ste. 500
      Columbus, GA 31901

You are hereby commanded, that laying all other business aside, you be and appear at the
Superior Court before the presiding Judge in the _Muscogee_ County Courthouse,
_Columbia_, GA to be held on _November 15, 2023_ at
_10:00 am_ AM/PM in the _____ room and to bring with you into said Court certain matters
to be used as evidence by the _Plaintiff_ in the case of _Phillip M. Lawrence, et al._
vs _Life Insurance Company of the Southwest_, Case Number _21SMCV01770_.

The following are hereby subpoenaed: See Attachment "3"
Please produce records to ASAP Legal, LLC c/o Professional Legal Services and Investigations, LLC
1222 Broadway, Ste. 104, Columbus, GA 31901 (213) 249-9968

HEREIN FAIL NOT, under the penalty of law by authority of the Honorable
_Arthur L. Smith III_, Judge of said court this _17th Oct 2023_

Any Questions Contact:
Jason B. Komorsky, Esq./Plaintiff
21650 Oxnard St., Ste. 500,
Los Angeles, CA 91367

Phone No. (818) 827-9000

_Danielle F. Forte_
Clerk of Superior Court

/S/ Jason B. Komorsky

Subpoena Issued by Attorney of Record for Plaintiff

## RETURN OF SERVICE

I served the within witness _____ with this subpoena on _____
at _____ am/pm by: _____ delivering to him/her in person, or by _____ registered or certified
mail.

Served by: _____
Name and Title

*"Pursuant to OCGA 24-13-21(c-h), this subpoena form is being provided to the attorney of record and shall
be completed prior to service upon the witness. If an individual misuses a subpoena, he or she shall be
subject to punishment for contempt of court and shall be punished by a fine of not more than $300.00 or not
more than 20 days imprisonment, or both. A witness may contact the Clerk of Court's office to verify this
subpoena was issued for a valid case."*


EXHIBIT
1

<u>Phillip Lawrence, et al, v. Life Insurance Company of the Southwest, et al.</u>

<u>Los Angeles Superior Court Case No. 21SMCV01770</u>

<u>DEPOSITION SUPBOENA FOR PRODUCTION OF BUSINESS RECORDS</u>

<u>ATTACHMENT 3</u>

TO: THE CUSTODIAN OF RECORDS FOR GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK

YOU ARE ORDERED to produce the business records described below:

<u>DEFINITIONS</u>

The following specially defined terms shall have the following definitions wherever they appear:

1.     The term **"DOCUMENTS"** is meant in the broadest possible sense and includes, but is not limited to, any writings, as defined in California Evidence Code section 250.

2.     The term **"COMMUNICATIONS"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or any other means.

3.     The terms **"YOU"** and **"YOUR"** means the responding party, Global One Financial, a Division of Synovus Bank, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf and who finance premiums for the policies under its Loan No.: 400020.

4.     The term "NATIONAL" refers to National Life Group and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on its behalf.

5.     The term **"LSW"** means LIFE INSURANCE COMPANY OF THE SOUTHWEST, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf.  LSW also included NATIONAL.

071

6.    The term "**MAGNUS**" means Defendant Stan Magnus Insurance Agent, Inc., and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, representatives, or anyone purporting or actually authorized to act on its behalf, including Defendant Stanley Magnus.

7.    The term "**NKSF**" refers to Nigro Karlin Segal & Feldstein, LLP, and/or to any of its partners, members, employees, representatives, attorneys or anyone purporting or actually authorized to act on its behalf, including Larry Tyler.

8.    The term "**NORTHSTAR**" refers to Northstar Funding Partners and Northstar Brokerage and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on their behalf.

9.    The term "**PREMIUM FINANCING**" means and refers to any loan intended to pay or that did pay insurance premiums.

10.    The term "**LSW PREMIUM-FINANCED LIFE INSURANCE PROGRAM**" means and refers to **LSW's** offering of **PREMIUM FINANCING** and life insurance policies utilizing insurers in which **YOU** are or were an appointed agent/producer, and where lenders financed the **POLICIES** as defined below.

11.    The term "**PLAINTIFFS**" means Philip M. Lawrence, an individual, Philip M. Lawrence, in his capacity as Trustee of the PLII LIVING TRUST, and Urbana Chapa Lawrence, an individual, and any person acting or purporting to act on their behalf including attorneys, employees, agents, accountants, representatives, or anyone purporting or authorized to act on their behalf.

12.    The term "**POLICIES**" means and refers to the life insurance policies sold to **PLAINTIFFS**, including specifically 1) Life Insurance Company of the Southwest Policy No. LS0539064 Life Insurance Company of the Southwest Policy No. LS0539030, on the lives of Plaintiffs Philip Lawrence and Urbana Chapa Lawrence, respectively.

13.    The term "**COMMISSION**" means and refers to all compensation regardless of its label or source (i.e., commission, override, expense allowance, etc. from and whether from an

insurer, brokerage, producer group, or other entity or individual).

14.    The terms ""**DOCUMENTS**" shall mean and include any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original and each copy, regardless of origin and location, of any **CORRESPONDENCE** (including any written memorandum of a telephone conversation, other communication, discussion, agreement and any other act, transaction or activity), book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), contract, agreement, study, report, analysis, invoice, bill, time sheet, time cards, expense voucher, receipt, book of account (including cash disbursement journal, cash receipt journal, income statement or reconciliation statement), financial statement, order form, record, bond, requisition, plan, drawing, specification, sound recording, minutes, diary, bylaws, articles of incorporation, calendar, telegram, message, handwritten note, draft working paper, photostat, microfilm, film, photograph, comparison, print, graph, drawing, sketch, chart, summary, data sheet, data processing card, tape, advertisement, and any other written, recorded, transcribed, punched, taped, filmed or graphic, photographic or electronic matter of any kind or nature (including marginal comments appearing on any **WRITING** or any other **DOCUMENT**) however produced or reproduced, which is in **YOUR** possession, custody or control, or which **YOU** have a right or privilege to examine upon request or demand.

15.    The terms "**REFER, REFLECT, RELATE TO OR EVIDENCE,**" "**EVIDENCE**" "**RELATING TO**", or "**REFER, REFLECT OR RELATE TO**" shall mean referring to, recording, supporting, interpreting, prepared in connection with, used in preparation for, pertaining to, mentioning, comprising, consisting of, containing, having any relationship to, or being in any way legally, logically, or factually connected with the matter discussed, in whole or in part.

073

CATEGORIES TO PRODUCE

1.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

2.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

3.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

4.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

5.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

6.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

7.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral interest, and any other fees or charges RELATED TO the POLICIES.

8.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral posted, and/or requests for posting of collateral, for loans or financing obtained in connection with any or all of the POLICIES.

9.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the servicing of loans or financing obtained in connection with the POLICIES.

10.     All COMMUNICATIONS evidencing, reflecting, or pertaining to the servicing of loans or financing obtained in connection with the POLICIES.

11.     All DOCUMENTS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

12.     All COMMUNICATIONS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

13.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NKSF regarding PLAINTIFFS.

14.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding PLAINTIFFS.

15.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding the POLICIES.

16.    All COMMUNICATIONS between and/or among YOU, MAGNUS and NKSF relating to the POLICIES.

17.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NORTHSTAR regarding PLAINTIFFS.

18.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and LSW regarding PLAINTIFFS.

19.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

20.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

21.    All illustrations REFERRING or RELATING to the POLICIES, including "Quick View" and any other illustration, or projection.

22.    All COMMUNICATIONS that REFER, REFLECT, or RELATE TO illustrations REFERRING OR RELATING to the POLICIES.

23.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

24.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

25.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

26.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

27.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

28.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

29.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

30.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

31.    All DOCUMENTS with original signatures of Philip M. Lawrence II

32.    All DOCUMENTS with original signatures of Urbana Chapa

33.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE LSW's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

34.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

**SERVICE LIST**

| | |
|---|---|
| Fred A. Fenster<br><br>Greenberg Glusker LLP<br><br>2049 Century Park East, Suite 2600<br><br>Los Angeles, CA 90067 | Attorneys for Defendant<br><br>Nigro Karlin Segal & Feldstein, LLP<br><br>Telephone: (310) 553-3610<br><br>Facsimile:  (310) 553-0687<br><br>E-mail:    ffenster@greenbergglusker.com |
| Ophir Johna<br><br>Maynard Cooper & Gale<br><br>10100 Santa Monica Blvd., Suite 550<br><br>Los Angeles, CA 90067 | Attorneys for Defendant<br><br>Life Insurance Company of the Southwest<br><br>Telephone: (310) 596-4364<br><br>Facsimile:  (205) 254-1999<br><br>E-mail:    ojohna@maynardcooper.com<br><br>LBorys@maynardcooper.com<br><br>dseki@maynardcooper.com |
| Wendy Thomas<br><br>TTE Law Group LLP<br><br>6101 West Centinela Ave., Suite 270<br><br>Culver City, CA 90230 | Attorneys for Defendants<br><br>Stan Magnus, an individual and Stan Magnus Insurance Agent, Inc.<br><br>Telephone: (310) 362-4970<br><br>E-mail:    wendyt@ttelawgroup.com<br><br>irisr@ttelawgroup.com |

alexandriao@ttelawgroup.com

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>JASON B. KOMORSKY – Bar No. 155677; RONALD P. ABRAMS - Bar No. 140438<br>BG LAW LLP<br>21650 Oxnard Street, Suite 500, Los Angeles, CA 91367<br><br>    TELEPHONE NO: 818-827-9000      FAX NO.: 818-827-9099<br>    E-MAIL ADDRESS: jkomorsky@bg.law; rabrams@bg.law<br>    ATTORNEY FOR *(Name)*: Plaintiff Urbana Chapa Lawrence | FOR COURT USE ONLY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: Santa Monica Courthouse

| PLAINTIFF/ PETITIONER: Phillip M. Lawrence, an individual, et al.,<br>DEFENDANT/ RESPONDENT: Life Insurance Company of the Southwest, et al., | |
|---|---|
| **DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS** | CASE NUMBER:<br>21SMCV01770 |

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known)*:
COR of Synovus Bank fka Global One Financial, Inc.; c/o Deacon Services, LLC; 1111 Bay Avenue, Suite 500, Columbus, GA 31901

1.  **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS** described in item 3, as follows:

    To *(name of deposition officer)*: ASAP Legal, LLC c/o Professional Legal Services and Investigations, LLC

    On *(date)*: November 15, 2023                    At *(time)*: 10:00 am

    Location *(address)*: 1222 Broadway, Ste. 104, Columbus, GA 31901 (213) 249-9968

    **Do not release the requested records to the deposition officer prior to the date and time stated above.**

    a. [X] by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

    b. [X] by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

    c. [X] by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2.  *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3.  The records to be produced are described as follows *(if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified)*:
    See Attachment 3
    [X] Continued on Attachment 3.

4.  IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

    | DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY. |
    |---|

Date issued: October 6, 2023

Jason B. Komorsky
_____
    (TYPE OR PRINT NAME)

▶ _____
    (SIGNATURE OF PERSON ISSUING SUBPOENA)
    Attorneys for Plaintiff, Urbana Chapa Lawrence
    _____
    (TITLE)

(Proof of service on reverse)                                                                Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-010 [Rev. January 1, 2012] | **DEPOSITION SUBPOENA FOR PRODUCTION<br>OF BUSINESS RECORDS** | Code of Civil Procedure, §§ 2020.410–2020.440;<br>Government Code, § 68097.1<br>*www.courts.ca.gov* |
|---|---|---|

SUBP-010

| PLAINTIFF/PETITIONER: Phillip M. Lawrence, an individual, et al., | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Life Insurance Company of the Southwest, et al., | 21SMCV01770 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR
## PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name):*

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. (1) ☐ Witness fees were paid.
         Amount: . . . . . . . . . . . . . $ _____

      (2) ☐ Copying fees were paid.
         Amount: . . . . . . . . . . . . . $ _____

   f. Fee for service: . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date):*

3. Person serving:

   a. ☐ Not a registered California process server.

   b. ☐ California sheriff or marshal.

   c. ☐ Registered California process server.

   d. ☐ Employee or independent contractor of a registered California process server.

   e. ☐ Exempt from registration under Business and Professions Code section 22350(b).

   f. ☐ Registered professional photocopier.

   g. ☐ Exempt from registration under Business and Professions Code section 22451.

   h. Name, address, telephone number, and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
                    (SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
                    (SIGNATURE)

080

Phillip Lawrence, et al, v. Life Insurance Company of the Southwest, et al.

Los Angeles Superior Court Case No. 21SMCV01770

DEPOSITION SUPBOENA FOR PRODUCTION OF BUSINESS RECORDS

ATTACHMENT 3

TO: THE CUSTODIAN OF RECORDS FOR GLOBAL ONE FINANCIAL, A DIVISION
OF SYNOVUS BANK

YOU ARE ORDERED to produce the business records described below:

DEFINITIONS

The following specially defined terms shall have the following definitions wherever they
appear:

1.    The term **"DOCUMENTS"** is meant in the broadest possible sense and includes,
but is not limited to, any writings, as defined in California Evidence Code section 250.

2.    The term **"COMMUNICATIONS"** means the transmittal of information (in the
form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or
any other means.

3.    The terms **"YOU"** and **"YOUR"** means the responding party, Global One
Financial, a Division of Synovus Bank, and any person or entity acting or purporting to act on its
behalf including its attorneys, employees, agents, accountants, representatives, or anyone
purporting or actually authorized to act on its behalf and who finance premiums for the policies
under its Loan No.: 400020.

4.    The term **"NATIONAL"** refers to National Life Group and all agents, officers,
directors, attorneys, employees, servants, predecessors, successors, representatives, or all other
persons acting or purporting to act on its behalf.

5.    The term **"LSW"** means LIFE INSURANCE COMPANY OF THE
SOUTHWEST, and any person or entity acting or purporting to act on its behalf including its
attorneys, employees, agents, accountants, representatives, or anyone purporting or actually
authorized to act on its behalf. LSW also included NATIONAL.

6.      The term **"MAGNUS"** means Defendant Stan Magnus Insurance Agent, Inc., and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, representatives, or anyone purporting or actually authorized to act on its behalf, including Defendant Stanley Magnus.

7.      The term **"NKSF"** refers to Nigro Karlin Segal & Feldstein, LLP, and/or to any of its partners, members, employees, representatives, attorneys or anyone purporting or actually authorized to act on its behalf, including Larry Tyler.

8.      The term **"NORTHSTAR"** refers to Northstar Funding Partners and Northstar Brokerage and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on their behalf.

9.      The term **"PREMIUM FINANCING"** means and refers to any loan intended to pay or that did pay insurance premiums.

10.      The term **"LSW PREMIUM-FINANCED LIFE INSURANCE PROGRAM"** means and refers to **LSW's** offering of **PREMIUM FINANCING** and life insurance policies utilizing insurers in which **YOU** are or were an appointed agent/producer, and where lenders financed the **POLICIES** as defined below.

11.      The term **"PLAINTIFFS"** means Philip M. Lawrence, an individual, Philip M. Lawrence, in his capacity as Trustee of the PLII LIVING TRUST, and Urbana Chapa Lawrence, an individual, and any person acting or purporting to act on their behalf including attorneys, employees, agents, accountants, representatives, or anyone purporting or authorized to act on their behalf.

12.      The term **"POLICIES"** means and refers to the life insurance policies sold to **PLAINTIFFS**, including specifically 1) Life Insurance Company of the Southwest Policy No. LS0539064 Life Insurance Company of the Southwest Policy No. LS0539030, on the lives of Plaintiffs Philip Lawrence and Urbana Chapa Lawrence, respectively.

13.      The term **"COMMISSION"** means and refers to all compensation regardless of its label or source (i.e., commission, override, expense allowance, etc. from and whether from an

insurer, brokerage, producer group, or other entity or individual).

14.    The terms ""**DOCUMENTS**" shall mean and include any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original and each copy, regardless of origin and location, of any **CORRESPONDENCE** (including any written memorandum of a telephone conversation, other communication, discussion, agreement and any other act, transaction or activity), book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), contract, agreement, study, report, analysis, invoice, bill, time sheet, time cards, expense voucher, receipt, book of account (including cash disbursement journal, cash receipt journal, income statement or reconciliation statement), financial statement, order form, record, bond, requisition, plan, drawing, specification, sound recording, minutes, diary, bylaws, articles of incorporation, calendar, telegram, message, handwritten note, draft working paper, photostat, microfilm, film, photograph, comparison, print, graph, drawing, sketch, chart, summary, data sheet, data processing card, tape, advertisement, and any other written, recorded, transcribed, punched, taped, filmed or graphic, photographic or electronic matter of any kind or nature (including marginal comments appearing on any **WRITING** or any other **DOCUMENT**) however produced or reproduced, which is in **YOUR** possession, custody or control, or which **YOU** have a right or privilege to examine upon request or demand.

15.    The terms "**REFER, REFLECT, RELATE TO OR EVIDENCE,**" "**EVIDENCE**" "**RELATING TO**", or "**REFER, REFLECT OR RELATE TO**" shall mean referring to, recording, supporting, interpreting, prepared in connection with, used in preparation for, pertaining to, mentioning, comprising, consisting of, containing, having any relationship to, or being in any way legally, logically, or factually connected with the matter discussed, in whole or in part.

CATEGORIES TO PRODUCE

1.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

2.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

3.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

4.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

5.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

6.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

7.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral interest, and any other fees or charges RELATED TO the POLICIES.

8.      All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral posted, and/or requests for posting of collateral, for loans or financing obtained in connection with any or all of the POLICIES.

9.      All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the servicing of loans or financing obtained in connection with the POLICIES.

10.     All COMMUNICATIONS evidencing, reflecting, or pertaining to the servicing of loans or financing obtained in connection with the POLICIES.

11.     All DOCUMENTS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

12.     All COMMUNICATIONS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

13.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NKSF regarding PLAINTIFFS.

084

14.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding PLAINTIFFS.

15.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding the POLICIES.

16.    All COMMUNICATIONS between and/or among YOU, MAGNUS and NKSF relating to the POLICIES.

17.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NORTHSTAR regarding PLAINTIFFS.

18.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and LSW regarding PLAINTIFFS.

19.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

20.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

21.    All illustrations REFERRING or RELATING to the POLICIES, including "Quick View" and any other illustration, or projection.

22.    All COMMUNICATIONS that REFER, REFLECT, or RELATE TO illustrations REFERRING OR RELATING to the POLICIES.

23.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

24.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

25.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

26.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

27.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

28.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

29.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

30.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

31.    All DOCUMENTS with original signatures of Philip M. Lawrence II

32.    All DOCUMENTS with original signatures of Urbana Chapa

33.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE LSW's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

34.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

## CERTIFICATE OF SERVICE

I do hereby certify that I am counsel for Garnishee and that a true and exact copy of the foregoing has been served upon counsel of record in the within matter by STATUTORY ELECTRONIC SERVICE as follows:

Jason B. Komorsky
BG Law
jkomorsky@bg.law

Fred A. Fenster
Greenberg Glusker, LLC
ffenster@greenberggluster.com

Ophir Johna
Maynard, Cooper & Gale
ojohna@maynardcooper.com

Wendy Thomas
TTE Law Group, LLC
wendyt@ttelawgroup.com

This 2nd day of November, 2023.

/s/ Alan G. Snipes
Counsel for Synovus Bank

11

087

# EXHIBIT 6

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
FILED IN OFFICE

JAN 3 0 2024

A.M. 12:29 P.M.
DEPUTY CLERK

POSTED

# IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| In the Matter of Subpoena to Synovus Bank f/k/a Global One Financial, Inc. | : : : | Ex Parte Docket No.: 2023-225 |
| Philip M. Lawrence, et. al. | : : | |
| Plaintiff, | : : | |
| v. | : : | Los Angeles Superior Court Case No.: 21SMCV01770 |
| Life Insurance Company of the Southwest, et. al., | : : : | |
| Defendants. | : : | |

## **NOTICE OF HEARING**

Please take notice that Synovus Bank's Objection to Subpoena and Motion

for Protective Order will be heard by the Honorable Joe C. Bishop, Senior Judge,

Muscogee County Superior Court, on February 20, 2024, at 10:00 a.m., at 2100

Comer Avenue, Columbus, Georgia.

This 30th day of January, 2024.

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By:    /s/ Alan G. Snipes
Alan G. Snipes
Georgia Bar No. 665781
Thomas F. Gristina
Georgia Bar No. 452454

1

1111 Bay Avenue
Post Office Box 1199
Columbus, Georgia  31902-1199
(706) 324-0251
asnipes@pagescrantom.com
tgristina@pagescrantom.com

2

## CERTIFICATE OF SERVICE

I do hereby certify that I am counsel for Garnishee and that a true and exact copy of the foregoing has been served upon counsel of record in the within matter by STATUTORY ELECTRONIC SERVICE as follows:

Jason B. Komorsky
BG Law
jkomorsky@bg.law

Brian Hefferman
Engstrom Lipscomb & Lack
bhefferman@elllaw.com

Fred A. Fenster
Greenberg Glusker, LLC
ffenster@greenberggluster.com

Ophir Johna
Maynard, Cooper & Gale
ojohna@maynardcooper.com

Wendy Thomas
TTE Law Group, LLC
wendyt@ttelawgroup.com

This 30th day of January, 2024.

/s/ Alan G. Snipes
Counsel for Synovus Bank

3

090

# EXHIBIT 7

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| In the Matter of Subpoena to Synovus Bank f/k/a Global One Financial, Inc. | : : : | Ex Parte Docket No.: 2023-225 |
| Philip M. Lawrence, et. al. | : : | |
| Plaintiff, | : : | |
| v. | : : | Los Angeles Superior Court Case No.: 21SMCV01770 |
| Life Insurance Company of the Southwest, et. al., | : : : | |
| Defendants. | : : | |

## NOTICE OF FILING AFFIDAVIT

Synovus Bank hereby gives notice that it has filed the attached Affidavit of James J. McBrayer in Support of its Objection to Subpoena and Motion for Protective Order.

This 13th day of February, 2024.

PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C.

By:    /s/ Alan G. Snipes
Alan G. Snipes
Georgia Bar No. 665781
Thomas F. Gristina
Georgia Bar No. 452454

1

1111 Bay Avenue
Post Office Box 1199
Columbus, Georgia  31902-1199
(706) 324-0251
asnipes@pagescrantom.com
tgristina@pagescrantom.com

092

## CERTIFICATE OF SERVICE

I do hereby certify that I am counsel for Garnishee and that a true and exact copy of the foregoing has been served upon counsel of record in the within matter by STATUTORY ELECTRONIC SERVICE as follows:

Jason B. Komorsky
BG Law
jkomorsky@bg.law

Brian Hefferman
Engstrom Lipscomb & Lack
bhefferman@elllaw.com

Fred A. Fenster
Greenberg Glusker, LLC
ffenster@greenberggluster.com

Ophir Johna
Maynard, Cooper & Gale
ojohna@maynardcooper.com

Wendy Thomas
TTE Law Group, LLC
wendyt@ttelawgroup.com

This 13th day of February, 2024.

/s/ Alan G. Snipes
Counsel for Synovus Bank

3

093

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| In the Matter of Subpoena to | : | |
| Synovus Bank f/k/a Global One | : | Ex Parte Docket No.: 2023-225 |
| Financial, Inc. | : | |
| | : | |
| Philip M. Lawrence, et. al. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Los Angeles Superior Court |
| v. | : | Case No.: 21SMCV01770 |
| | : | |
| Life Insurance Company of | : | |
| the Southwest, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **AFFIDAVIT OF JAMES J. McBRAYER**

STATE OF GEORGIA
COUNTY OF ___Dekalb___

Personally appeared before the undersigned officer duly authorized to administer oaths, James J. McBrayer, who, after being duly sworn, states as follows:

1.

My name is James J. McBrayer. I am over the age of eighteen (18), have personal knowledge of the facts contained in this Affidavit, and am competent to testify as to these facts.

1

094

2.

I am the Chief Operating Officer of Global One Financial, a division of Synovus Bank. Synovus Bank is a Georgia corporation with a principal place of business and registered office in Columbus, Muscogee County, Georgia.

3.

On October 23, 2023, Synovus Bank (named as Synovus Bank fka Global One Financial, Inc.) was served with a subpoena for the production of evidence (the "Subpoena") assigned to the *ex parte* docket as case number 2023-225. The Subpoena was issued out of Muscogee County, Georgia. A copy of the Supboena is attached hereto as Exhibit "1".

4.

The Subpoena seeks documents and information related to the case of *Philip M. Lawrence, et. al. v. Life Insurance Company of the Southwest, et. al.*, Case Number 21SMCV01770, Los Angeles Superior Court, Case Number 21SMCV01770 (the "Lawrence Lawsuit"). Neither Synovus Bank nor its subsidiary Global One are parties to the Lawrence Lawsuit.

5.

Global One is engaged in the business of lending money to customers for the purpose of financing the customer's purchase of one or more life insurance policies. The Lawrence Lawsuit apparently arises out of a party's purchase of

2

certain life insurance policies that were financed by Global One.    While Mr.

Lawrence has sued the life insurance companies and others in the Lawrence

Lawsuit, he has not sued Global One or Synovus Bank.

6.

The Subpoena has fifteen (15) separate definitions that are then incorporated

into thirty-four (34) separate requests for documents.  The document requests seek:

(a)    All DOCUMENTS or COMMUNICATIONS related to the insurance policies at issue (Requests 1-4; 21-22);

(b)    All DOCUMENTS or COMMUNICATIONS related to any loans or financing of the policies at issue and any collateral associated therewith (Requests 5-8);

(c)    All DOCUMENTS or COMMUNICATIONS related to servicing of the loans at issue (Requests 9-10);

(d)    All DOCUMENTS or COMMUNICATIONS related to the Plaintiffs (Requests 11-13; 19-21);

(e)    All DOCUMENTS or COMMUNICATIONS related to the various brokers or other parties (Requests 14-18);

(f)    All DOCUMENTS or COMMUNICATIONS related to any compensation earned by Global One related to the policies (Requests 23-30);

(g)    All DOCUMENTS with original signatures of Philip M. Lawrence, II or Urbana Chapa (Requests 31-32); and

(h)    All DOCUMENTS related to underwriting guidelines for the years 2016 and 2017 (Requests 33-34).

3

7.

The term DOCUMENTS is defined in the Subpoena as meaning "in the broadest possible sense and includes, but is not limited to, any writings, as defined in California Evidence Code, section 250." The term COMMUNICATIONS is defined in the Subpoena as meaning "the transmittal of information (in the form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or any other means."

8.

Given the breadth of these definitions as applied to thirty-four (34) categories of information, the Subpoena seeks thousands of pages of documents related to the loan to Mr. Lawrence and many other documents that are not related to the loan. This would presumably also include emails, which can only be gathered by Synovus Bank IT personnel. That process is very time consuming and expensive. In my estimation, it would take hundreds of hours of research and gathering time to compile all of the documents requested. Those documents would then need to be reviewed by legal counsel for responsiveness and attorney-client privilege issues. In my estimation, the costs of compiling and producing the documents requested in the Subpoena could be more than $25,000.00.

4

9.

The Subpoena further seeks underwriting guidelines that are wholly unrelated to any loan relationship between Global One and Mr. Lawrence. Global One maintains underwriting guidelines that it utilizes internally to evaluate loans, price them, and provide them to prospective customers. Those underwriting guidelines are at the very heart of Global One's business as they provide criteria by which Global One qualifies potential loans. Global One considers its underwriting guidelines as material trade secrets and takes extensive steps to guard against their release to the general public. In the competitive environment in which Global One operates, a release of its internal underwriting criteria would be incredibly harmful to Global One's business interests.

10.

When Global One was first approached by Mr. Lawrence's counsel about producing documents in the Lawrence Lawsuit, Global One offered to compromise with counsel for Mr. Lawrence to avoid a discovery dispute. Global One had previously responded to a subpoena from one of the defendants in the Lawrence Litigation. Global One offered to produce these same documents to Mr. Lawrence. Counsel for Mr. Lawrence requested that these same documents be produced to Mr. Lawrence, and they were promptly produced to Mr. Lawrence by Global One's counsel.

5

11.

The document production to Mr. Lawrence consisted of 2,519 pages of documents. These documents included approximately 286 pages which contained the entire loan file maintained by Global One such as loan applications and loan documents. The remaining documents in the 2,519 page production consisted of various emails and attachments related to the Lawrence loan that were located by Global One.

12.

Even after receiving the 2,519 page production provided by Global One, Mr. Lawrence has insisted on receiving further documents through the Subpoena.

13.

I submit this Affidavit in Support of Synovus Bank's Objection to Subpoena and Motion for Protective Order filed in the Superior Court of Muscogee County, Georgia.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

6

This 13 day of February, 2024.

James J. McBrayer

Sworn and subscribed before me
This 13ᵗʰ day of February, 2024.

Notary Public
My commission expires: 1/16/26



7

100

Ex Parte #
2023-225

## *SUBPOENA FOR PRODUCTION OF EVIDENCE*

State of Georgia, _Muscogee_ County

TO:   COR of Synovus Bank fka Global One Financial, Inc.; c/o Deacon Services, LLC
1111 Bay Avenue, Ste. 500
Columbus, GA 31901

You are hereby commanded, that laying all other business aside, you be and appear at the Superior Court before the presiding Judge in the _Muscogee_ County Courthouse, Columbia _____, GA to be held on _November 15, 2023_ at _10:00 am_ AM/PM in the _____ room and to bring with you into said Court certain matters to be used as evidence by the _Plaintiff_ in the case of _Phillip M. Lawrence, et al._ vs _Life Insurance Company of the Southwest_, Case Number _21SMCV01770_.

The following are hereby subpoenaed:  See Attachment "3"
Please produce records to ASAP Legal, LLC c/o Professional Legal Services and Investigations, LLC
1222 Broadway, Ste. 104, Columbus, GA 31901 (213) 249-9968
_____
_____

HEREIN FAIL NOT, under the penalty of law by authority of the Honorable
_Arthur L. Smith III_, Judge of said court this _17th Oct 2023_

Any Questions Contact:
Jason B. Komorsky, Esq./Plaintiff
21650 Oxnard St., Ste. 500,
Los Angeles, CA 91367

_Danielle F. Forté_
Clerk of Superior Court

/S/ Jason B. Komorsky

Phone No. (818) 827-9000

Subpoena Issued by Attorney of Record for Plaintiff

### RETURN OF SERVICE

I served the within witness _____ with this subpoena on _____ at _____ am/pm by: _____ delivering to him/her in person, or by _____ registered or certified mail.

Served by: _____
Name and Title

"Pursuant to OCGA 24-13-21(c-h), this subpoena form is being provided to the attorney of record and shall be completed prior to service upon the witness. If an individual misuses a subpoena, he or she shall be subject to punishment for contempt of court and shall be punished by a fine of not more than $300.00 or not more than 20 days Imprisonment, or both. A witness may contact the Clerk of Court's office to verify this subpoena was issued for a valid case."


EXHIBIT

<u>Phillip Lawrence, et al, v. Life Insurance Company of the Southwest, et al.</u>

<u>Los Angeles Superior Court Case No. 21SMCV01770</u>

<u>DEPOSITION SUPBOENA FOR PRODUCTION OF BUSINESS RECORDS</u>

<u>ATTACHMENT 3</u>

**TO: THE CUSTODIAN OF RECORDS FOR GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK**

**YOU ARE ORDERED to produce the business records described below:**

<u>DEFINITIONS</u>

The following specially defined terms shall have the following definitions wherever they appear:

1.    The term **"DOCUMENTS"** is meant in the broadest possible sense and includes, but is not limited to, any writings, as defined in California Evidence Code section 250.

2.    The term **"COMMUNICATIONS"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or any other means.

3.    The terms **"YOU"** and **"YOUR"** means the responding party, Global One Financial, a Division of Synovus Bank, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf and who finance premiums for the policies under its Loan No.: 400020.

4.    The term "**NATIONAL**" refers to National Life Group and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on its behalf.

5.    The term "**LSW**" means LIFE INSURANCE COMPANY OF THE SOUTHWEST, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf.  LSW also included NATIONAL.

102

6.  The term **"MAGNUS"** means Defendant Stan Magnus Insurance Agent, Inc., and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, representatives, or anyone purporting or actually authorized to act on its behalf, including Defendant Stanley Magnus.

7.  The term **"NKSF"** refers to Nigro Karlin Segal & Feldstein, LLP, and/or to any of its partners, members, employees, representatives, attorneys or anyone purporting or actually authorized to act on its behalf, including Larry Tyler.

8.  The term **"NORTHSTAR"** refers to Northstar Funding Partners and Northstar Brokerage and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on their behalf.

9.  The term **"PREMIUM FINANCING"** means and refers to any loan intended to pay or that did pay insurance premiums.

10.  The term **"LSW PREMIUM-FINANCED LIFE INSURANCE PROGRAM"** means and refers to **LSW's** offering of **PREMIUM FINANCING** and life insurance policies utilizing insurers in which **YOU** are or were an appointed agent/producer, and where lenders financed the **POLICIES** as defined below.

11.  The term **"PLAINTIFFS"** means Philip M. Lawrence, an individual, Philip M. Lawrence, in his capacity as Trustee of the PLII LIVING TRUST, and Urbana Chapa Lawrence, an individual, and any person acting or purporting to act on their behalf including attorneys, employees, agents, accountants, representatives, or anyone purporting or authorized to act on their behalf.

12.  The term **"POLICIES"** means and refers to the life insurance policies sold to **PLAINTIFFS**, including specifically 1) Life Insurance Company of the Southwest Policy No. LS0539064 Life Insurance Company of the Southwest Policy No. LS0539030, on the lives of Plaintiffs Philip Lawrence and Urbana Chapa Lawrence, respectively.

13.  The term **"COMMISSION"** means and refers to all compensation regardless of its label or source (i.e., commission, override, expense allowance, etc. from and whether from an

insurer, brokerage, producer group, or other entity or individual).

14.     The terms ""**DOCUMENTS**" shall mean and include any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original and each copy, regardless of origin and location, of any **CORRESPONDENCE** (including any written memorandum of a telephone conversation, other communication, discussion, agreement and any other act, transaction or activity), book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), contract, agreement, study, report, analysis, invoice, bill, time sheet, time cards, expense voucher, receipt, book of account (including cash disbursement journal, cash receipt journal, income statement or reconciliation statement), financial statement, order form, record, bond, requisition, plan, drawing, specification, sound recording, minutes, diary, bylaws, articles of incorporation, calendar, telegram, message, handwritten note, draft working paper, photostat, microfilm, film, photograph, comparison, print, graph, drawing, sketch, chart, summary, data sheet, data processing card, tape, advertisement, and any other written, recorded, transcribed, punched, taped, filmed or graphic, photographic or electronic matter of any kind or nature (including marginal comments appearing on any **WRITING** or any other **DOCUMENT**) however produced or reproduced, which is in **YOUR** possession, custody or control, or which **YOU** have a right or privilege to examine upon request or demand.

15.     The terms "**REFER, REFLECT, RELATE TO OR EVIDENCE,**" "**EVIDENCE**" "**RELATING TO**", or "**REFER, REFLECT OR RELATE TO**" shall mean referring to, recording, supporting, interpreting, prepared in connection with, used in preparation for, pertaining to, mentioning, comprising, consisting of, containing, having any relationship to, or being in any way legally, logically, or factually connected with the matter discussed, in whole or in part.

## CATEGORIES TO PRODUCE

1.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

2.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

3.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

4.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

5.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

6.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

7.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral interest, and any other fees or charges RELATED TO the POLICIES.

8.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral posted, and/or requests for posting of collateral, for loans or financing obtained in connection with any or all of the POLICIES.

9.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the servicing of loans or financing obtained in connection with the POLICIES.

10.    All COMMUNICATIONS evidencing, reflecting, or pertaining to the servicing of loans or financing obtained in connection with the POLICIES.

11.    All DOCUMENTS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

12.    All COMMUNICATIONS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

13.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NKSF regarding PLAINTIFFS.

14.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any
COMMUNICATIONS between YOU and MAGNUS regarding PLAINTIFFS.

15.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any
COMMUNICATIONS between YOU and MAGNUS regarding the POLICIES.

16.    All COMMUNICATIONS between and/or among YOU, MAGNUS and NKSF relating
to the POLICIES.

17.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any
COMMUNICATIONS between YOU and NORTHSTAR regarding PLAINTIFFS.

18.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any
COMMUNICATIONS between YOU and LSW regarding PLAINTIFFS.

19.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE
spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the
PLAINTIFFS, including "Quick View" and any other illustration, or projection.

20.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE
spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the
PLAINTIFFS, including "Quick View" and any other illustration, or projection.

21.    All illustrations REFERRING or RELATING to the POLICIES, including "Quick View"
and any other illustration, or projection.

22.    All COMMUNICATIONS that REFER, REFLECT, or RELATE TO illustrations
REFERRING OR RELATING to the POLICIES.

23.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE
compensation YOU received with respect to the POLICIES.

24.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE
compensation YOU received with respect to the POLICIES.

25.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE
compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

26.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE
compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

27.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

28.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

29.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

30.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

31.    All DOCUMENTS with original signatures of Philip M. Lawrence II

32.    All DOCUMENTS with original signatures of Urbana Chapa

33.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE LSW's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

34.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

**SERVICE LIST**

| | |
|---|---|
| Fred A. Fenster<br><br>Greenberg Glusker LLP<br><br>2049 Century Park East, Suite 2600<br><br>Los Angeles, CA 90067 | Attorneys for Defendant<br><br>Nigro Karlin Segal & Feldstein, LLP<br><br>Telephone: (310) 553-3610<br><br>Facsimile: (310) 553-0687<br><br>E-mail:    ffenster@greenbergglusker.com |
| Ophir Johna<br><br>Maynard Cooper & Gale<br><br>10100 Santa Monica Blvd., Suite 550<br><br>Los Angeles, CA 90067 | Attorneys for Defendant<br><br>Life Insurance Company of the Southwest<br><br>Telephone: (310) 596-4364<br><br>Facsimile: (205) 254-1999<br><br>E-mail:    ojohna@maynardcooper.com<br><br>    LBorys@maynardcooper.com<br><br>    dseki@maynardcooper.com |
| Wendy Thomas<br><br>TTE Law Group LLP<br><br>6101 West Centinela Ave., Suite 270<br><br>Culver City, CA 90230 | Attorneys for Defendants<br><br>Stan Magnus, an individual and Stan Magnus Insurance Agent, Inc.<br><br>Telephone: (310) 362-4970<br><br>E-mail:    wendyt@ttelawgroup.com<br><br>    irisr@ttelawgroup.com |

alexandriao@ttelawgroup.com

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>JASON B. KOMORSKY – Bar No. 155677; RONALD P. ABRAMS - Bar No. 140438<br>BG LAW LLP<br>21650 Oxnard Street, Suite 500, Los Angeles, CA 91367<br><br>TELEPHONE NO.: 818-827-9000     FAX NO.: 818-827-9099<br>E-MAIL ADDRESS: jkomorsky@bg.law; rabrams@bg.law<br>ATTORNEY FOR *(Name):* Plaintiff Urbana Chapa Lawrence | *FOR COURT USE ONLY* |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 1725 Main Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Santa Monica, CA 90401 |
| BRANCH NAME: Santa Monica Courthouse |

| PLAINTIFF/ PETITIONER: Phillip M. Lawrence, an individual, et al., |
|---|
| DEFENDANT/ RESPONDENT: Life Insurance Company of the Southwest, et al., |

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER:<br>21SMCV01770 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
COR of Synovus Bank fka Global One Financial, Inc.; c/o Deacon Services, LLC; 1111 Bay Avenue, Suite 500, Columbus, GA 31901

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

   | To *(name of deposition officer):* ASAP Legal, LLC c/o Professional Legal Services and Investigations, LLC |
   |---|
   | On *(date):* November 15, 2023       At *(time):* 10:00 am |
   | Location *(address):* 1222 Broadway, Ste. 104, Columbus, GA 31901 (213) 249-9968 |
   | **Do not release the requested records to the deposition officer prior to the date and time stated above.** |

   a. [ x ] by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

   b. [ x ] by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

   c. [ x ] by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. The records to be produced are described as follows *(if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*
   See Attachment 3
   [ x ] Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

| **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.** |
|---|

Date issued: October 6, 2023

Jason B. Komorsky

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorneys for Plaintiff, Urbana Chapa Lawrence
(TITLE)

(Proof of service on reverse)                                               Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-010 [Rev. January 1, 2012] | **DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS** | Code of Civil Procedure, §§ 2020.410–2020.440;<br>Government Code, § 68097.1<br>www.courts.ca.gov |
|---|---|---|

SUBP-010

| PLAINTIFF/PETITIONER:  Phillip M. Lawrence, an individual, et al., | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Life Insurance Company of the Southwest, et al., | 21SMCV01770 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR
## PRODUCTION OF BUSINESS RECORDS

1.  I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

    a.  Person served *(name)*:

    b.  Address where served:

    c.  Date of delivery:

    d.  Time of delivery:

    e.  (1) ☐  Witness fees were paid.
            Amount: . . . . . . . . . . . . . $ _____

        (2) ☐  Copying fees were paid.
            Amount: . . . . . . . . . . . . . $ _____

    f.  Fee for service: . . . . . . . . . . . . . . . $ _____

2.  I received this subpoena for service on *(date)*:

3.  Person serving:

    a.  ☐  Not a registered California process server.

    b.  ☐  California sheriff or marshal.

    c.  ☐  Registered California process server.

    d.  ☐  Employee or independent contractor of a registered California process server.

    e.  ☐  Exempt from registration under Business and Professions Code section 22350(b).

    f.  ☐  Registered professional photocopier.

    g.  ☐  Exempt from registration under Business and Professions Code section 22451.

    h.  Name, address, telephone number, and, if applicable, county of registration and number:

| **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct. | **(For California sheriff or marshal use only)** **I certify** that the foregoing is true and correct. |
|---|---|
| Date: | Date: |
| ▶ _____ | ▶ _____ |
| (SIGNATURE) | (SIGNATURE) |

**DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

<u>Phillip Lawrence, et al, v. Life Insurance Company of the Southwest, et al.</u>

<u>Los Angeles Superior Court Case No. 21SMCV01770</u>

<u>DEPOSITION SUPBOENA FOR PRODUCTION OF BUSINESS RECORDS</u>

<u>ATTACHMENT 3</u>

TO: THE CUSTODIAN OF RECORDS FOR GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK

YOU ARE ORDERED to produce the business records described below:

<u>DEFINITIONS</u>

The following specially defined terms shall have the following definitions wherever they appear:

1.    The term **"DOCUMENTS"** is meant in the broadest possible sense and includes, but is not limited to, any writings, as defined in California Evidence Code section 250.

2.    The term **"COMMUNICATIONS"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise by any means), whether by oral, written, electronic, or any other means.

3.    The terms **"YOU"** and **"YOUR"** means the responding party, Global One Financial, a Division of Synovus Bank, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf and who finance premiums for the policies under its Loan No.: 400020.

4.    The term **"NATIONAL"** refers to National Life Group and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on its behalf.

5.    The term **"LSW"** means LIFE INSURANCE COMPANY OF THE SOUTHWEST, and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, accountants, representatives, or anyone purporting or actually authorized to act on its behalf. LSW also included NATIONAL.

6.    The term "**MAGNUS**" means Defendant Stan Magnus Insurance Agent, Inc., and any person or entity acting or purporting to act on its behalf including its attorneys, employees, agents, representatives, or anyone purporting or actually authorized to act on its behalf, including Defendant Stanley Magnus.

7.    The term "**NKSF**" refers to Nigro Karlin Segal & Feldstein, LLP, and/or to any of its partners, members, employees, representatives, attorneys or anyone purporting or actually authorized to act on its behalf, including Larry Tyler.

8.    The term "**NORTHSTAR**" refers to Northstar Funding Partners and Northstar Brokerage and all agents, officers, directors, attorneys, employees, servants, predecessors, successors, representatives, or all other persons acting or purporting to act on their behalf.

9.    The term "**PREMIUM FINANCING**" means and refers to any loan intended to pay or that did pay insurance premiums.

10.    The term "**LSW PREMIUM-FINANCED LIFE INSURANCE PROGRAM**" means and refers to **LSW's** offering of **PREMIUM FINANCING** and life insurance policies utilizing insurers in which **YOU** are or were an appointed agent/producer, and where lenders financed the **POLICIES** as defined below.

11.    The term "**PLAINTIFFS**" means Philip M. Lawrence, an individual, Philip M. Lawrence, in his capacity as Trustee of the PLII LIVING TRUST, and Urbana Chapa Lawrence, an individual, and any person acting or purporting to act on their behalf including attorneys, employees, agents, accountants, representatives, or anyone purporting or authorized to act on their behalf.

12.    The term "**POLICIES**" means and refers to the life insurance policies sold to **PLAINTIFFS**, including specifically 1) Life Insurance Company of the Southwest Policy No. LS0539064 Life Insurance Company of the Southwest Policy No. LS0539030, on the lives of Plaintiffs Philip Lawrence and Urbana Chapa Lawrence, respectively.

13.    The term "**COMMISSION**" means and refers to all compensation regardless of its label or source (i.e., commission, override, expense allowance, etc. from and whether from an

insurer, brokerage, producer group, or other entity or individual).

14.    The terms ""**DOCUMENTS**" shall mean and include any medium upon which intelligence or information can be recorded, maintained or retrieved, including, without limitation, the original and each copy, regardless of origin and location, of any **CORRESPONDENCE** (including any written memorandum of a telephone conversation, other communication, discussion, agreement and any other act, transaction or activity), book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), contract, agreement, study, report, analysis, invoice, bill, time sheet, time cards, expense voucher, receipt, book of account (including cash disbursement journal, cash receipt journal, income statement or reconciliation statement), financial statement, order form, record, bond, requisition, plan, drawing, specification, sound recording, minutes, diary, bylaws, articles of incorporation, calendar, telegram, message, handwritten note, draft working paper, photostat, microfilm, film, photograph, comparison, print, graph, drawing, sketch, chart, summary, data sheet, data processing card, tape, advertisement, and any other written, recorded, transcribed, punched, taped, filmed or graphic, photographic or electronic matter of any kind or nature (including marginal comments appearing on any **WRITING** or any other **DOCUMENT**) however produced or reproduced, which is in **YOUR** possession, custody or control, or which **YOU** have a right or privilege to examine upon request or demand.

15.    The terms "**REFER, REFLECT, RELATE TO OR EVIDENCE,**" "**EVIDENCE**" "**RELATING TO**", or "**REFER, REFLECT OR RELATE TO**" shall mean referring to, recording, supporting, interpreting, prepared in connection with, used in preparation for, pertaining to, mentioning, comprising, consisting of, containing, having any relationship to, or being in any way legally, logically, or factually connected with the matter discussed, in whole or in part.

CATEGORIES TO PRODUCE

1.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

2.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE the POLICIES.

3.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

4.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE loans or financing RELATED TO the POLICIES.

5.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

6.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE efforts to obtain any loans or financing in connection with any or all of the POLICIES.

7.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral interest, and any other fees or charges RELATED TO the POLICIES.

8.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE collateral posted, and/or requests for posting of collateral, for loans or financing obtained in connection with any or all of the POLICIES.

9.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE the servicing of loans or financing obtained in connection with the POLICIES.

10.    All COMMUNICATIONS evidencing, reflecting, or pertaining to the servicing of loans or financing obtained in connection with the POLICIES.

11.    All DOCUMENTS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

12.    All COMMUNICATIONS that REFER, REFLECT, OR RELATE TO PLAINTIFFS.

13.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NKSF regarding PLAINTIFFS.

14.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding PLAINTIFFS.

15.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and MAGNUS regarding the POLICIES.

16.     All COMMUNICATIONS between and/or among YOU, MAGNUS and NKSF relating to the POLICIES.

17.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and NORTHSTAR regarding PLAINTIFFS.

18.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE any COMMUNICATIONS between YOU and LSW regarding PLAINTIFFS.

19.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

20.     All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE spreadsheets, summaries, illustrations, and proposals REFERRING or RELATING to the PLAINTIFFS, including "Quick View" and any other illustration, or projection.

21.     All illustrations REFERRING or RELATING to the POLICIES, including "Quick View" and any other illustration, or projection.

22.     All COMMUNICATIONS that REFER, REFLECT, or RELATE TO illustrations REFERRING OR RELATING to the POLICIES.

23.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

24.     All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the POLICIES.

25.     All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

26.     All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others that in any way REFER OR RELATE to the POLICIES.

27.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

28.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU received with respect to the premium financing of the POLICIES.

29.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

30.    All COMMUNICATIONS that REFER, REFLECT, RELATE TO OR EVIDENCE compensation YOU paid others with respect to the premium financing of the POLICIES.

31.    All DOCUMENTS with original signatures of Philip M. Lawrence II

32.    All DOCUMENTS with original signatures of Urbana Chapa

33.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE LSW's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

34.    All DOCUMENTS that REFER, REFLECT, RELATE TO OR EVIDENCE GLOBAL ONE's underwriting guidelines, rules, policies, and procedures in effect when the POLICIES were being underwritten (years 2016 and 2017).

117

# EXHIBIT 8

## Brian Heffernan

| | |
|---|---|
| **From:** | Alan G. Snipes <asnipes@pagescrantom.com> |
| **Sent:** | Tuesday, February 20, 2024 12:36 PM |
| **To:** | Alexandra Newsom; Thomas F. Gristina |
| **Cc:** | Brian Heffernan; Ryan Farrell; Merlene Fletcher |
| **Subject:** | [EXTERNAL] RE: Lawrence v LICSW - Draft Joint IDC Brief |
| **Attachments:** | Lawrence Order.pdf |

External (asnipes@pagescrantom.com)

Attached is an Order from the Superior Court of Muscogee County granting Synovus Bank's Motion for Protective Order and quashing the subpoena issued by your client to Synovus Bank.  Given that the subpoena at issue in your Motion to Compel has been quashed by the Court that issued it, your motion is moot.

If you have any questions, please let me know.

Alan G. Snipes

**P|S** Page Scrantom

Synovus Centre | 1111 Bay Avenue, 3rd Floor | Columbus, Georgia 31901
P.O. Box 1199 | Columbus, GA  31902-1199 (mailing address)
Direct: 706-243-5636 | Main: 706-324-0251 | Fax: 706-323-7519
asnipes@pagescrantom.com

CIRCULAR 230 DISCLOSURE: To comply with Treasury Department regulations, we inform you that, unless otherwise expressly indicated, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the Internal Revenue Code or any other applicable tax law, or (ii) promoting, marketing or recommending to another party any transaction, arrangement, or other matter.

PRIVILEGE NOTICE: The information contained in this electronic mail message is attorney privileged and confidential information intended only for the use of the individual or entity named.  If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at (706) 324-0251 or reply email and delete this message.

**From:** Alexandra Newsom <anewsom@elllaw.com>
**Sent:** Monday, January 22, 2024 3:00 PM
**To:** Alan G. Snipes <asnipes@pagescrantom.com>; Thomas F. Gristina <tgristina@pagescrantom.com>
**Cc:** Brian Heffernan <bheffernan@elllaw.com>; Ryan Farrell <rfarrell@elllaw.com>; Merlene Fletcher <mfletcher@elllaw.com>
**Subject:** Lawrence v LICSW - Draft Joint IDC Brief

Mr. Snipes and Mr. Gristina,

1

Attached you will find a Word document containing Plaintiffs' portion of the IDC Brief. Please fill in Global One's portion and return it to Brian Heffernan for filing and service. February 28, 2014 is the last day to file this Joint Brief.

Regards,

Alexandra J. Newsom
Engstrom, Lipscomb & Lack
10100 Santa Monica Blvd., 12th Floor
Los Angeles, CA 90067
310-552-3800 ext. 380
310-552-9434 fax

***************************

*Confidentiality Notice*

***************************

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender and delete all copies of this email message along with all attachments. Thank you.

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY    FEB 2 0 2024
STATE OF GEORGIA

DEPUTY CLERK

| | | |
|---|---|---|
| In the Matter of Subpoena to | : | |
| Synovus Bank f/k/a Global One | : | Ex Parte Docket No.: 2023-225 |
| Financial, Inc. | : | |
| | : | |
| Philip M. Lawrence, et. al. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Los Angeles Superior Court |
| v. | : | Case No.: 21SMCV01770 |
| | : | |
| Life Insurance Company of | : | |
| the Southwest, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER GRANTING MOTION FOR PROTECTIVE ORDER
## AND QUASHING SUBPOENA

After being duly noticed, Synovus Bank's Objection to Subpoena and

Motion for Protective Order came on for hearing before the undersigned judge on

February 20, 2024. Having considered Synovus Bank's Objection to Subpoena

and Motion for Protective Order, all other materials of record, and having

considered the requirements of O.C.G.A. §§ 24-13-116, 9-11-45(a)(1)(C), and 9-

11-26(c), it is hereby ordered that Synovus Bank's Motion for Protective Order is

**GRANTED**. The subpoena issued by the Clerk of Court in this matter on or about

October 17, 2023, and served on Synovus Bank on or about October 23, 2023, is

hereby **QUASHED** in its entirety.

1

**SO ORDERED**, this _20th_ day of February, 2024.

_____

Honorable Joe C. Bishop
Senior Judge
Superior Court of Muscogee County, Georgia

Order Prepared By:

/s/ Alan G. Snipes
Alan G. Snipes
Georgia State Bar No.: 665781
PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.
1111 Bay Avenue
Post Office Box 1199
Columbus, Georgia  31902-1199
(706) 324-0251
asnipes@pagescrantom.com

2

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

On March 6, 2024, I served true copies of the following document(s) described as

**DECLARATION OF ALAN G. SNIPES IN SUPPORT OF NON-PARTY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SUBPOENAED NON-PARTY WITNESS-DEPONENT GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK TO PRODUCE DOCUMENTS PURSUANT TO A SUPERSEDED QUASHED SUBPOENA**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 6, 2024, at Los Angeles, California.


/s/ Cheryl Caldwell
Cheryl Caldwell

CC 57014700v1                                          1

1

**SERVICE LIST**

2

**Phillip M. Lawrence, et al, v. National Life Insurance Company, et al.**
**Case No. 21SMCV01770**

3

4

**Attorneys for Defendants**
**Stan Magnus Insurance Agent, Inc. and Stanley Magnus**
Wendy Thomas, Esq.

5

Tadjedin Thomas & Engbloom Law Group LLP
6101 W. Centinela Ave., Ste 270

6

Culver City, CA 90230-6359

7

**Attorneys for Defendant**
**Nigro Karlin Segal  & Feldstein, LLP**

8

Pierce O'Donnell, Esq.
Fred A. Fenster, Esq.

9

GREENBERG GLUSKER FIELDS CLAMAN
  & MACHTINGER LLP

10

2049 Century Park East, #2600
Los Angeles, CA 90067

11

12

**Attorneys for Defendant**
**Life Insurance Company of the Southwest**
Ophir Johna, Esq.

13

MAYNARDNEXEN
10100 Santa Monica Boulevard, Suite 550

14

Los Angeles, CA 90067

15

**Attorneys for Plaintiffs**
**Philip M. Lawrence, in his personal capacity and as Trustee of the**

16

**PLII LIVING TRUST, and Urbana Chapa Lawrence**

17

Steven C. Shuman, Esq.
Brian J. Heffernan, Esq.

18

ENGSTROM LIPSCOMB & LACK
11601 Wilshire Blvd., 14th Floor

19

Los Angeles, CA 90025

20

Jason B. Komorsky
Ronald P. Abrams

21

BG LAW LLP
21650 Oxnard Street, Suite 500

22

Woodland Hills, CA 91367

23

24

25

26

27

28

# EXHIBIT 7

Electronically Received 03/26/2024 11:07 AM

1   Elissa D. Miller (CA Bar No. 120029)
     elissa.miller@gmlaw.com
2   **GREENSPOON MARDER LLP**
     1875 Century Park East, Suite 1900
3   Los Angeles, California 90067
     Telephone: 213.626.2311
4   Facsimile: 954.771.9264

5   Attorneys for Specially Appearing Alleged
     Non-Party Witness - Deponent
6   Synovus Bank, Successor by Merger to
     Global One Financial, Inc.

7

**FILED**
Superior Court of California
County of Los Angeles

04/08/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ K. Neal _____ Deputy

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF LOS ANGELES – WEST DISTRICT**

10  Philip M. Lawrence, an individual, Philip
     M. Lawrence, in his capacity as Trustee of
11  the PLII Living Trust, and Urbana Chapa
     Lawerence, an individual,
12
                    Plaintiffs,
13
          vs.
14
     Life Insurance Company of the Southwest,
15  Stan Magnus Insurance Agent, Inc., a
     California corporation, Stanley Magnus, an
16  individual, Nigro Karlin Segal & Feldstien,
     LLP, a California limited liability
17  partnership, and DOES 1-20, inclusive,

18                 Defendants.

19

20

Case No. 21SMCV01770

**[PROPOSED] ORDER DENYING
MOTION TO COMPEL SUBPOENAED
NON-PARTY WITNESS GLOBAL ONE
FINANCIAL, A DIVISION OF SYNOVUS
BANK TO PRODUCE DOCUMENTS**

Date:     March 19, 2024
Time:    8:30 a.m.
Dept.:    O
Reservation ID: 478421039024

21          The "*Motion To Compel Subpoenaed Non-Party Witness-Deponent Global One*

22  *Financial, A Division Of Synovus Bank To Produce Documents*" (the "Motion") came on

23  regularly before the Court on March 19, 2024 in Department O, the Honorable Jay Ford

24  III, Los Angeles Superior Court Judge Presiding.

25          Elissa D. Miller of Greenspoon Marder LLP appeared on behalf of Synovus Bank,

26  successor by merger of Global One Financial, Inc. ("Global One") and Steven Shuman of

27  Engstrom, Lipscomb & Lack appeared on behalf of Plaintiff Philip M. Lawrence, an

28

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1   individual, Philip M. Lawrence, in his capacity as Trustee of the PLII Living Trust, and

2   Urbana Chapa Lawerence, an individual ("Plaintiffs").

3       The Court read and considered the Motion, the Opposition filed by Global One and

4   the Reply filed by Plaintiffs and considered the argument of counsel at the hearing.

5       Based on the reasons and findings as set forth on the record of the proceeding

6   and finding good cause therefore,

7       **IT IS HEREBY ORDERED that:**

8       The Motion is **Denied**.

9          04/08/2024

10  DATED: _____

             H. Jay Ford / Judge

11              Honorable Jay Ford III
            Judge of the Superior Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

# EXHIBIT 8

| | |
|---|---|
| **From:** | Elissa Miller |
| **Sent:** | Friday, October 31, 2025 1:50 PM |
| **To:** | Joseph M. Rothberg |
| **Cc:** | Ron Bender; Jeffrey S. Kwong; Jason B. Komorsky; 'Steve Shuman' |
| **Subject:** | RE: Rule 2004 Motion for Protective Order and to Quash Subpoena |
| **Attachments:** | RE: ; Pages from Bankr.C.D.Cal._1-23-bk-11082_405 (2).pdf |

Dear Joe - Please see responses below in red.  As agreed, if we cannot reach agreement on the production, Global One will intends to file its motion to quash and for a protective order by next Wednesday, November 5, 2025, 14 days before the November 19, 2025, production date.

Regards,

Elissa

**From:** Joseph M. Rothberg <jmr@lnbyg.com>
**Sent:** Tuesday, October 28, 2025 2:02 PM
**To:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Cc:** Ron Bender <RB@lnbyg.com>; Jeffrey S. Kwong <JSK@lnbyg.com>; Jason B. Komorsky <jkomorsky@bg.law>; 'Steve Shuman' <sshuman@elllaw.com>
**Subject:** RE: Rule 2004 Motion for Protective Order and to Quash Subpoena

**[External Sender]**

Hi Elissa,

Please see the attached subpoena, which was approved last week.  We are also serving personally on Global One today.  I am not trying to jam you at all on the subpoena response deadline, so let's agree to push the respond date out a week so that you don't have to file a Motion to Quash tomorrow.  Let me know if that is acceptable; it would mean that the Subpoena response would be due on **11/19.**  Please confirm that is acceptable and then lets discuss the below.

As for the rest of the meet and confer issues you raised, please see my responses below in **blue:**

1.  As we previously discussed, the Motion is too late. The 546 avoidance action deadline as to Global One is November 3 (reserving, of course, our objection to the first extension motion and all arguments regarding the statute of limitations), and the production is November 12. For this reason alone, the motion should be withdrawn.  **As we discussed with the Court at the hearing, there are other causes of action which are** *not* **avoidance actions, and not barred by §546.  The 2004 subpoena is part of the Trustee's duties to investigate any and all claims.  It may well be that that Trustee does not bring an avoidance action.  Of course, if the Trustee files an avoidance action before Monday Nov. 3, your rights are reserved to object we can deal with that, at that point.**

We will agree to disagree on this one.

2.  Global One has already produced documents to the Trustee's special counsel in response to a subpoena in the state court litigation. As you are aware, Special Counsel served Global One in 2023 with a Subpoena in the State Court Action and Global One filed a Motion to Quash that Subpoena which was granted by the Georgia Court. The

Declaration of James J. McBrayer in Support of the Georgia Motion to Quash is attached to Dkt. No. 405 filed yesterday at PDF page 112. Among other reasons, the Court granted the Motion is that 2,519 pages of documents had already been produced in response to a subpoena issued in the state court lawsuit by the Defendants. Those documents, which were also provided to the Trustee's special counsel, include approximately 286 pages comprised of the entire loan file maintained by Global One such as loan applications and loan documents. The remaining documents in the 2,519 page production consisted of various emails and attachments related to the Lawrence loan that were located by Global One. Those documents are the same documents requested in the 2004 subpoena. Requiring Global One to produce those documents again is overbroad, burdensome, oppressive, and harassing. Perhaps special counsel forgot he had already received these documents when he asked you to subpoena these same documents again? Please confirm. **Special counsel, Mr. Shuman, who is copied on this email, stated that the documents produced were only to LSW, and _not_ to the bankruptcy estate. The records produced were not shared with Special Counsel, and the only documents we have show a production starting with a Bates stamp of 286 and ending with 2,519, so it is not a 2,519-page production, and we don't know what the first 286 pages contain, and certainly do not have them. We also do not have several other documents such ledgers and breakdowns of interest, and principal and penalties that should have been attached to Global One's creditor's claim. In any event, our request included documents that LSW did not seek or receive, and encompasses later time frames as well. Global One should provide the updates you have requested, and produce everything, so we can be sure we have the entire production.**

Attached is an email string between Mr. Komorsky and Mr. Snipes in response to Mr. Snipes September 15, 2023, letter (also attached) wherein Mr. Snipes identifies the Bates Numbers produced. In an email dated September 15, 2023, Mr. Komorsky stated, "there seems to be a disconnect. LSW forwarded your productions. The first production on March 15, 2023, had 281 pages and the second production on April 25 had 3 pages for a total of 284 pages. I have not seen the thousands of pages identified in your letter." On September 18, 2023, Mr. Snipes responded, "I am showing we made a supplemental production to them (LSW) on or about April 10, 2023 with a couple thousand pages. My paralegal, Debra Guy (copied here), will send you a share file link to those documents."

At no time thereafter until Mr. Shuman indicated so during the meet and confer regarding this case, had either Mr. Shuman or Mr. Komorsky or anyone else on the Trustee's team indicated that there were bates numbered documents missing. Please confirm with Mr. Komorsky that he shared all the documents with Mr. Shuman including the first production from LSW. It appears he may not have.

As to your contention that you require additional documents, please advise what documents, other than the underwriting policies, you are requesting different from what was previously produced. We would prefer to not be put in a position to guess.

In the meantime, Global One will produce its loan ledgers for the two policies from the date of the first production through payoff.

3. The Subpoena further seeks Global One's underwriting guidelines, which is outside the scope of 2004 and is clearly requested in anticipation of litigation. Global One maintains underwriting guidelines that it utilizes internally to evaluate loans, price them, and provide them to prospective customers. Those underwriting guidelines are at the very heart of Global One's business as they provide criteria by which Global One qualifies potential loans. Global One considers its underwriting guidelines as material trade secrets and takes extensive steps to guard against their release. In the competitive environment in which Global One operates, a release of its internal underwriting criteria would be incredibly harmful to Global One's business interests. This also was one of the basis on which the Court granted the Georgia Motion to Quash. **Underwriting guidelines are not trade secrets. They likely have to be provided to reinsurers, and certainly are not protected and guarded for something like the classic example of a trade secret, such as the recipe for Coca-Cola, where there are very serious protective measures put in place to make sure that it stays secret, even from most of the employees**

who work there. It also is not clear how disclosure of the underlying underwriting guidelines would put Global One at a significant competitive disadvantage.  Can you please explain?  Can you also please explain how a protective order re: confidentiality would not address any "trade secret" concerns?
 Even more significantly, it's not like the Estate, or Mr. Lawrence is a competitor of Global One, or even remotely close to a competitor. If you have a case that says that information cannot be disclosed to a bankruptcy trustee in a 2004 subpoena because of trade secret protections, please forward that to me asap.

Global One's underwriting guidelines are its trade secrets.  Contrary to your statement above, they are not provided to insurers or reinsurers or to any other party.  At most Global One provides templated copies of promissory notes and closing documents, when requested, as well as the following general underwriting guidelines in its marketing materials.

- • Financing new and in-force policies
- • Refinancing of existing loans available (including policy loans)
- • No maximum loan amount
- • In-force cash value/cash-out lending
- • Credit extended to net worth as low as $3 million
- • Minimum first-year premium: $150,000
- • Interest rate management options are available (variable rate, caps, fixed rate, etc.)

However, it never discloses the actual guidelines or their contents.  Mr. McBrayer, in the Motion to Quash the 2023 subpoena filed in Georgia, testified as to Global One's protection of this information.  Unless you have evidence or law to the contrary, this will be a matter for the Court.  As for the Protective Order, see below.

4.  Finally, we understand that Special Counsel is working with an expert by the name of Steven Roth. Global One is familiar with Mr. Roth. Mr. Roth has previously served as an expert in cases where Global One produced documents pursuant to a protective order. Global One is informed and believes that Mr. Roth violated that protective order to use the information produced to attempt to fabricate new claims in unrelated litigation against Global One. As such, in the event the Court orders Global One to produce any information regarding its underwriting guidelines and policies, Global One will require that any protective order be for attorney's eyes only and specifically exclude Mr. Roth or any agent, representative or employee working with Mr. Roth from in any way being provided access or information regarding the contents of the documents or Global One's policies. **What evidence does Global One have that Mr. Roth violated a protective order to fabricate new claims in unrelated litigation?  That's a pretty serious accusation and we do not believe there is any basis for it.   Mr. Roth is very scrupulous about not using material obtained pursuant to a protective order for disallowed purposes and will abide by any / all protective orders that we enter into, either as an outside consultant or as an expert for counsel / the estate.  We can even name him specifically in a protective order if you want, or we can make it blanket for all retained experts.  "
Can you provide me with a case where a protective order prevented a party's expert from viewing documents?**

Following receipt of the above, I dug a bit deeper.  Global One is familiar with Mr. Roth due to his connection with the State Court Litigation in this case and a later case.  Mr. Roth was apparently provided access to the documents which were earlier produced by Global One in this case under a protective order.  Global One learned, after the fact, that Mr. Roth recorded a conference call without obtaining Global One's consent to do so, let along notify its attorneys, that the call was being recorded.  Needless to say,  the call was immediately ended.

In a later matter in which Global One was involved and where Mr. Roth was an expert witness, it is believed that Mr. Roth disclosed information he could have only learned from the documents produced in this case, which were subject to a protective order, and used the information to attempt to fabricate claims in that later matter against Global One.

As such, Global One will not and cannot agree to a protective order that does not exclude Mr. Roth as a person with the right to view the protected documents.

Thank you,

Joe

---

**From:** Joseph M. Rothberg
**Sent:** Monday, October 27, 2025 4:04 PM
**To:** 'Elissa Miller' <Elissa.Miller@gmlaw.com>; Jeffrey S. Kwong <JSK@lnbyg.com>
**Subject:** RE: Rule 2004 Motion for Protective Order and to Quash Subpoena

Elissa,

Sorry I've been tied up on an emergency.  Yes we intend to serve but I also intend to respond, in detail to your meet and confer email below.  I will have a response for you by tomorrow a.m..  regarding the timing, were you asking to meet and confer about a slightly later production deadline?  Please let me know.

Thanks,

Joe

---

**From:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Sent:** Monday, October 27, 2025 4:02 PM
**To:** Joseph M. Rothberg <jmr@lnbyg.com>; Jeffrey S. Kwong <JSK@lnbyg.com>
**Subject:** RE: Rule 2004 Motion for Protective Order and to Quash Subpoena

Joe – can you please know whether you intend to serve the subpoena with the current production date of November 12?  As I stated below, if so, the rules require that I file and serve the motion to quash and for a protective order by Wednesday.

I would very much appreciate the courtesy of a response.

Thank you,
Elissa

---

**From:** Elissa Miller <Elissa.Miller@gmlaw.com>
**Sent:** Friday, October 24, 2025 2:24 PM
**To:** Joseph M. Rothberg <jmr@lnbyg.com>; Jeffrey S. Kwong <jsk@lnbyg.com>
**Subject:** Rule 2004 Motion for Protective Order and to Quash Subpoena

Joe – I write to you to commence the meet and confer process on your 2004 order before I file a motion to quash and for a protective order pursuant to FRBP 26 made applicable by Rule 2004-1(f) and (g).  A

Although, to the best of my knowledge you have not yet served the subpoena, unless you agree to move the production to a later date if and when you finally serve the subpoena, and/or that we can file our motion by a later date, we must file our motion by next Wednesday, October 29, 2025 (i.e., not less than 12 days prior to the production date). Therefore, rather than wait until we can schedule a call to discuss the issues, I am putting our position in writing.

The grounds for our motion are as follows:

1.  As we previously discussed, the Motion is too late. The 546 avoidance action deadline as to Global One is November 3 (reserving, of course, our objection to the first extension motion and all arguments regarding the statute of limitations), and the production is November 12. For this reason alone, the motion should be withdrawn.

2.  Global One has already produced documents to the Trustee's special counsel in response to a subpoena in the state court litigation. As you are aware, Special Counsel served Global One in 2023 with a Subpoena in the State Court Action and Global One filed a Motion to Quash that Subpoena which was granted by the Georgia Court. The Declaration of James J. McBrayer in Support of the Georgia Motion to Quash is attached to Dkt. No. 405 filed yesterday at PDF page 112. Among other reasons, the Court granted the Motion is that 2,519 pages of documents had already been produced in response to a subpoena issued in the state court lawsuit by the Defendants. Those documents, which were also provided to the Trustee's special counsel, include approximately 286 pages comprised of the entire loan file maintained by Global One such as loan applications and loan documents. The remaining documents in the 2,519 page production consisted of various emails and attachments related to the Lawrence loan that were located by Global One. Those documents are the same documents requested in the 2004 subpoena. Requiring Global One to produce those documents again is overbroad, burdensome, oppressive, and harassing. Perhaps special counsel forgot he had already received these documents when he asked you to subpoena these same documents again? Please confirm.

3. The Subpoena further seeks Global One's underwriting guidelines, which is outside the scope of 2004 and is clearly requested in anticipation of litigation. Global One maintains underwriting guidelines that it utilizes internally to evaluate loans, price them, and provide them to prospective customers. Those underwriting guidelines are at the very heart of Global One's business as they provide criteria by which Global One qualifies potential loans. Global One considers its underwriting guidelines as material trade secrets and takes extensive steps to guard against their release. In the competitive environment in which Global One operates, a release of its internal underwriting criteria would be incredibly harmful to Global One's business interests. This also was one of the basis on which the Court granted the Georgia Motion to Quash.

4.  Finally, we understand that Special Counsel is working with an expert by the name of Steven Roth. Global One is familiar with Mr. Roth. Mr. Roth has previously served as an expert in cases where Global One produced documents pursuant to a protective order. Global One is informed and believes that Mr. Roth violated that protective order to use the information produced to attempt to fabricate new claims in unrelated litigation against Global One. As such, in the event the Court orders Global One to produce any information regarding its underwriting guidelines and policies, Global One will require that any protective order be for attorney's eyes only and specifically exclude Mr. Roth or any agent, representative or employee working with Mr. Roth from in any way being provided access or information regarding the contents of the documents or Global One's policies.

Notwithstanding the foregoing, Global One is willing to produce updated financial loan information from the date of the last production through foreclosure.  Please advise whether the Trustee will withdraw its request for any documents other than the updated documents as set forth herein.

Elissa Miller

# GreenspoonMarder LLP

Elissa D. Miller
Greenspoon Marder LLP
Partner
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Office – 213-617-5234– Cell:  818-519-2932
Email Address:  elissa.miller@gmlaw.com
www.gmlaw.com



GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that purpose if we are attempting to collect a debt from you.

# EXHIBIT 9

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| **CASE INFORMATION:** | 21SMCV01770 |
| Case Title: | PHILLIP M. LAWRENCE, AN INDIVIDUAL, ET AL. VS NATIONAL LIFE INSURANCE COMPANY, A VERMONT CORPORATION, ET AL. |
| Filing Courthouse: | Santa Monica Courthouse |
| Filing Date: | 11/5/2021 |
| Case Type: | Other Professional Malpractice (not medical or legal) (General Jurisdiction) |
| Status: | Request for Dismissal - Before Trial not following ADR or more than 60 days since ADR on 7/29/2025 |

Click here to access document images for this case.

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

🖨 Print     New Search

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| JOHNA OPHIR | Attorney for Cross-Defendant |
| KING JESSICA B | Attorney for Defendant |
| KOMORSKY JASON B. | Attorney for Plaintiff |
| LAWRENCE PHILLIP M. | Plaintiff |
| LAWRENCE URBANA CHAPA | Plaintiff |
| LIFE INSURANCE COMPANY OF THE SOUTHWEST | Defendant |
| LIFE INSURANCE COMPANY OF THE SOUTHWEST | Cross-Defendant |
| MAGNUS STANLEY | Defendant |
| MAGNUS STANLEY | Cross-Defendant |
| NIGRO KARLIN SEGAL & FELDSTEIN | Defendant |
| NIGRO KARLIN SEGAL & FELDSTEIN | Cross-Defendant |
| NIGRO KARLIN SEGAL & FELDSTEIN | Cross-Complainant |
| O'DONNELL PIERCE | Attorney for Defendant |
| PHILLIP M. LAWRENCE IN HIS CAPACITY AS TRUSTEE OF THE PLII LIVING TRUST | Plaintiff |

| STAN MAGNUS INSURANCE AGENT INC. | Cross-Complainant |
| STAN MAGNUS INSURANCE AGENT INC. | Defendant |
| STAN MAGNUS INSURANCE AGENT INC. | Cross-Defendant |
| THOMAS WENDY M. | Attorney for Cross-Defendant |

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| 7/29/2025 | Request for Dismissal | Filed by Phillip M. Lawrence (Plaintiff); Phillip M. Lawrence, in his capacity as Trustee of the PLII Living Trust (Plaintiff); Urbana Chapa Lawrence (Plaintiff) |
| 7/28/2025 | Clerks Certificate of Service By Electronic Service | Filed by Clerk |
| 7/28/2025 | Notice of Rejection - Request For Dismissal | Filed by Clerk |
| 6/25/2025 | Minute Order | Filed by Clerk |
| 6/10/2025 | Notice | Filed by Life Insurance Company of the Southwest (Defendant) |
| 2/21/2025 | Certificate of Mailing for | Filed by Clerk |
| 2/21/2025 | Minute Order | Filed by Clerk |
| 2/19/2025 | Notice of Settlement of Entire Case | Filed by Phillip M. Lawrence (Plaintiff); Phillip M. Lawrence, in his capacity as Trustee of the PLII Living Trust (Plaintiff); Urbana Chapa Lawrence (Plaintiff) |
| 2/14/2025 | Objection | Filed by Life Insurance Company of the Southwest (Defendant) |
| 2/14/2025 | Objection | Filed by Stan Magnus Insurance Agent, Inc. (Defendant); Stanley Magnus (Defendant) |
| 2/14/2025 | Reply | Filed by Stan Magnus Insurance Agent, Inc. (Defendant); Stanley Magnus (Defendant) |
| 2/14/2025 | Reply | Filed by Life Insurance Company of the Southwest (Defendant) |
| 2/14/2025 | Request for Judicial Notice | Filed by Stan Magnus Insurance Agent, Inc. (Defendant); Stanley Magnus (Defendant) |
| 2/14/2025 | Separate Statement | Filed by Life Insurance Company of the Southwest (Defendant) |
| 2/14/2025 | Separate Statement | Filed by Stan Magnus Insurance Agent, Inc. (Defendant); Stanley Magnus (Defendant) |
| 2/13/2025 | Compendium of Exhibits in Support of Opposition to Motion For Summary Judgment | Filed by Phillip M. Lawrence (Plaintiff); Phillip M. Lawrence, in his capacity as Trustee of the PLII Living Trust (Plaintiff); Urbana Chapa Lawrence (Plaintiff) |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **GLOBAL ONE FINANCIAL, A DIVISION OF SYNOVUS BANK NOTICE OF MOTION AND MOTION TO QUASH 2004 SUBPOENA AND FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF JAMES J. McBRAYER, ALAN G. SNIPES AND ELISSA D. MILLER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 5, 2025  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 5, 2025 | Cheryl Caldwell | */s/ Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Ron Bender**    rb@lnbyg.com
- **Debra Brand**    brandlawcorp@gmail.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **David Keith Gottlieb (TR)**    dkgtrustee@dkgallc.com,
  dgottlieb@iq7technology.com,rjohnson@dkgallc.com,akuras@dkgallc.com;ecf.alert+Gottlieb@titlexi.com
- **Alan A Greenberg**    AGreenberg@GGTrialLaw.com, LRodriguez@GGTrialLaw.com
- **Eric P Israel**    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Sheryl K Ith**    sith@cookseylaw.com
- **Lance N Jurich**    ljurich@loeb.com,
  pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
- **Jason B Komorsky**    ecf@bg.law, jkomorsky@bg.law
- **Jeffrey S Kwong**    jsk@lnbyg.com, jsk@ecf.inforuptcy.com
- **Steven Todd Lowe**    steven@lowelaw.com
- **Elissa Miller**    elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Steven A Morris**    morris@quantumlawgroup.com,
  gsuchniak@quantumlawgroup.com,mbigaud@quantumlawgroup.com,deer@quantumlawgroup.com
- **Lorenzo Nunez**    CSBK@GMFINANCIAL.COM
- **David L Oberg**    david@oberglawapc.com
- **Madison B Oberg**    madison@oberglawapc.com
- **Matthew D. Resnik**    matt@rhmfirm.com,
  roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebec
  a@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com
- **Joseph M Rothberg**    jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- **Gregory A Rougeau**    grougeau@brlawsf.com
- **Charles Shamash**    cs@locs.com, generalbox@locs.com
- **Zev Shechtman**    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- **Wendy Thomas**    wendyt@ttelawgroup.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Herlinda Rebeca Vasquez**    rebecavasquezesq@gmail.com
- **Robert M Yaspan - SUSPENDED BK -**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                        **F 9013-3.1.PROOF.SERVICE**